1  LAW OFFICE OF KEVIN M. WELCH
2  Kevin M. Welch, Esq. (SBN 254565)
   *Kevin@kmwlawoffice.com*
3  P.O. Box 494
   Hermosa Beach CA 90254-0494
4  Tel.: (310) 929-0553 Fax: (310) 698-1626

5  LAW OFFICE OF DAVID L. GERNSBACHER
6  David L. Gernsbacher, Esq. (SBN 089596)
   *dgernsbacher@dlglaw.com*
7  9107 Wilshire Boulevard Suite 450
8  Beverly Hills CA 90210-5535
   Tel.: (310) 550-0125 Fax: (310) 550-0608
9
10 Attorneys for the Plaintiffs, Max Kleven and Rin, Inc.

11                UNITED STATES DISTRICT COURT
12              CENTRAL DISTRICT OF CALIFORNIA
13                     WESTERN DIVISION
14

15 MAX KLEVEN, an individual; RIN,   Case No. CV 13-02783-ABC
16 INC., a California corporation,                    (AGRx)

17            Plaintiffs,              **COMPLAINT FOR DAMAGES AND
                                       INJUNCTIVE RELIEF FOR:**
18      v.
                                       1.  **COPYRIGHT INFRINGEMENT**
19 DAPHNE HEREFORD, an                     **[17 U.S.C. §§101,** *et seq.***];**
20 individual; RIN TIN TIN, INC., a
   Texas Corporation; BELLEAIR        2.  **FEDERAL UNFAIR
21 TRADING INTERNATIONAL,                 COMPETITION [Lanham Act
   LLC, a Florida limited liability       §43(a)];**
22 company DOES 1 through 20,
   inclusive,                          3.  **FALSE ASSOCIATION [Lanham
23                                         Act §43(a)];**
24            Defendants.
                                       4.  **FALSE ENDORSEMENT [Lanham
25                                         Act §43(a)];**

26                                     5.  **FALSE REPRESENTATION
                                          [Lanham Act §43(a)];**
27
28                                     6.  **COMMON LAW TRADEMARK
                                          INFRINGEMENT [Lanham Act**

         COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 1

§43(a)];

7. **FEDERAL ANTI-CYBERSQUATTING ACT [Lanham Act §43(c)];**

8. **FEDERAL TRADEMARK DILUTION [Lanham Act 43(c];**

9. **CANCELLATION OF UNITED STATES FEDERAL TRADEMARK REGISTRATION [Trademark Act §2(a)];**

10. **CANCELLATION OF UNITED STATES FEDERAL TRADEMARK REGISTRATIONS [Trademark Act §14(3), *et seq.*];**

11. **CANCELLATION OF UNITED STATES FEDERAL TRADEMARK REGISTRATION [Fraud - *Torres v. Cantine Torresella*];**

12. **UNFAIR COMPETITION [Cal. Bus. & Prof. Code §17200, *et seq.*];**

13. **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT [Cal. Civ. Code § 1750, *et seq.*];**

14. **COMMON LAW UNFAIR COMPETITION;**

15. **COMMON LAW INFRINGEMENT;**

16. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

17. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**

18. **BREACH OF SETTLEMENT**

AGREEMENT;

19. **SPECIFIC PERFORMANCE OF SETTLEMENT  AGREEMENT;**

20. **RESCISSION - FAILURE OF CONSIDERATION, FRAUD, PROMISSORY FRAUD AND, ESTOPPEL;**

21. **ELDER FINANCIAL ABUSE [Cal. Welfare & Institutions Code § 15610.30].**

**DEMAND FOR JURY TRIAL**

Plaintiffs Max Kleven ("Kleven") and RIN, Inc. (collectively, "Plaintiffs") allege on personal knowledge as to their own actions, and upon information and belief as to the actions of others, as follows:

**INTRODUCTION**

1.      This is an action in law and equity for, *inter alia*, Copyright Infringement, Federal Unfair Competition, False Association, False Endorsement, False Representation, Common Law Trademark Infringement, Federal Anti-Cybersquatting, Federal Trademark Dilution, California Unfair Competition, California Consumer Remedies Act, and the Cancellation of United States Federal Trademark Registrations regarding the intellectual property rights associated with the American television series and movie icon named Rin Tin Tin.

2.      The sole source or "basis" of the multiple attempts to unlawfully exploit the name and fame of the character Rin Tin Tin is the purchase by the grandmother of Defendant Daphne Hereford ("Hereford") of a German Shepherd dog which <u>may</u> have been a descendant of the dog Rin Tin Tin. That – <u>and that alone</u> – is the sum total of the "basis" for Defendants' hijacking of this icon of American television, film and culture.

///

## PLAINTIFFS' RIN TIN TIN HISTORY

3.      The story of Rin Tin Tin began in September of 1918, when a Lieutenant Lee Duncan ("Duncan") discovered a litter of newborn German Shepherd puppies on a World War I battlefield in Flirey, France. Duncan rescued the litter and kept one male and one female for himself whom he named Rin Tin Tin and Nanette, respectively.  Throughout the remainder of his deployment, Duncan grew hopelessly devoted to his puppies, spending the majority of his free time caring for them and training them. Upon Duncan's return to the states, he brought Rin Tin Tin and Nanette on the fifteen day journey across the Atlantic and was lucky enough to find a German Shepherd breeder in New York who agreed to board them both during the ten days of re-entry camp where troops were debriefed and deloused.

4.      Unfortunately, the travel was too much for Nanette who caught pneumonia and died during this time, but the breeder provided Duncan with another female puppy, whom Duncan also named Nanette, and who would eventually become known as Rin Tin Tin's wife. Duncan continued his journey home to California where, like many soldiers returning home, he faced the challenge of reintegrating into civilian life.

5.      Duncan returned to the job he had before the war in the gun department of a sporting-goods store, but the war had left him with a distaste for guns, and his focus continued to be his passion for his dogs and demonstrating Rin Tin Tin's training at dog shows. Duncan met other German Shepherd enthusiasts in the Los Angeles area and founded the Shepherd Dog Club of California.

6.      One day, Duncan and Rin Tin Tin, whom Duncan nicknamed "Rinty," were accompanied to a dog show by a friend who brought with him a newly developed slow motion camera. That day Rin Tin Tin competed in the "working dog" part of the show and took first place by cleanly jumping a wall made of wooden planks nearly twelve feet tall. Duncan's friend caught the act on film.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 4

1 | After this day Duncan became increasingly interested in getting Rinty on film.

2 |      7.     Hollywood movies at this time had no sound track or dialog, so

3 | everything had to be conveyed by action and facial expressions. Duncan was

4 | convinced that Rin Tin Tin would be perfect for this media so he brought him

5 | down to "Poverty Row" where all the movie studios were located and tried to meet

6 | with anyone who would give him a moment of their time.

7 |      8.     Rin Tin Tin eventually got a few bit parts playing a wolf or a wolf-

8 | hybrid and was able to demonstrate that he was well-trained and easy to work with.

9 | Meanwhile, Duncan began writing a screenplay called "*Where the North Begins*"

10 | in which Rin Tin Tin would play the leading role. Adding fuel to his new plan,

11 | about this time, a newsreel company contacted Duncan and offered to pay three

12 | hundred and fifty dollars for the film of Rinty jumping over the wall to play in

13 | theaters around the Los Angeles area. This was equivalent to about three months of

14 | salary for Duncan.

15 |      9.     After Duncan finished his screenplay, he began trying to find a

16 | director and producer to make his movie. Duncan and Rinty returned to Poverty

17 | Row for hours each day knocking on doors and pitching the screenplay to anyone

18 | who would listen. Finally, a small studio owned by four brothers, the Warner

19 | brothers, agreed to make the picture.

20 |      10.    1923's *Where the North Begins* was an enormous success often

21 | credited with saving Warner Bros. from bankruptcy. Warner Bros. made twenty-

22 | four more movies starring Rin Tin Tin, each of which was enormously popular,

23 | earning Rin Tin Tin the nickname "The Mortgage Lifter" by Jack Warner. He had

24 | become a household name throughout the country as a true movie star. In 1927 the

25 | Academy Awards were presented for the first time and Rinty received the most

26 | votes for "Best Actor," but the members of the Academy decided that the Oscar

27 | should go to a human so the votes were recalculated. Rin Tin Tin was not only

28 | recognized in America, he quickly gained recognition internationally.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 5

11.     Jack Warner once reminisced that when seated next to the countess at a dinner in Vienna in 1927, it was not until he mentioned that he produced the Rin Tin Tin films that he received any recognition. That same year film enthusiasts recognized Rin Tin Tin as the most popular actor in Berlin. Rin Tin Tin had become one of the world's first international movie stars.

12.     All the while Duncan was breeding Rin Tin Tin and Nanette. They had several puppies, most of which Duncan either sold or gave away to prominent people such as Greta Garbo, W.H. Kellogg and Jean Harlow. As Rin Tin Tin began to show signs of age, Duncan began carefully selecting a few puppies and training them to follow in their father's footsteps. The general consensus seems to be that none of Rinty's progeny were as talented as their father but nonetheless several had successful acting careers.

13.     By this time, Rin Tin Tin had transitioned from the name of a single dog to a fictional character and a legacy; so when the younger generations made their film debuts, they played the part of Rin Tin Tin and no introduction was made and no attention was drawn to the succession. Duncan used to famously say, "There will always be a Rin Tin Tin!"

14.     When the original Rin Tin Tin died in 1932, America treated his death as a national event. Regularly scheduled broadcasting was interrupted coast to coast to report the event, the next day there was an hour long tribute to the life of Rin Tin Tin, and newspapers throughout the country ran long and detailed obituaries. The *Chicago Tribune* wrote "the greatest of all dog actors became a memory and a tradition."

15.     Throughout the 1930's and 1940's Rinty's progeny, Rin Tin Tin, Jr. and Rin Tin Tin III, continued to play the part of Rin Tin Tin in movies and even radio broadcasts, although the "barking" on the radio broadcasts was generally done by a human leaving a very small role for a dog to play.

16.     The popularity of Rin Tin Tin experienced a second surge upon the

1    advent of television. Several television producers had approached Duncan for the
2    rights to produce a Rin Tin Tin television program but it was not until a young
3    producer named Herbert Leonard ("Leonard") approached him that Duncan agreed.
4    The television show was called *The Adventures of Rin-Tin-Tin* (Leonard
5    hyphenated the name) and featured a young boy and his dog who were orphaned
6    by an Apache Indian raid and adopted by a U.S. Cavalry unit.

7         17.    It was originally supposed to star Duncan's Rin Tin Tin IV. However,
8    Rin Tin Tin IV, who may or may not have been related to the original Rinty, did
9    not audition well. Accordingly, the part of Rin Tin Tin was primarily played by
10   another trainer's dog, named Flame, Jr. *The Adventures of Rin-Tin-Tin* was
11   extremely successful and ran from October 1954 to May 1959, and reruns were
12   broadcast from October 1959 until September 1964. In 1960, Rin Tin Tin was
13   honored with a star on the Hollywood Walk of Fame, one of only three stars ever
14   awarded to animals (Lassie and Strongheart were the others).

15        18.    Leonard and Duncan also successfully merchandized the television
16   show. Almost as soon as the *The Adventures of Rin-Tin-Tin* was on the air, you
17   could buy a Rin-Tin-Tin cavalry mess kit, uniform, hat, bugle, gun, and holster, as
18   well as a recording of the 101st Cavalry bugle calls, cavalry belt-and-suspender
19   sets, a Rin-Tin-Tin branded pocket knife, a telescope, a walkie-talkie, a beanie, a
20   pennant, a 3-D color viewer with viewer cards, a brass magic ring, a pinback
21   button, a Wonder Scope, a lunch box, a thermos bottle, a wallet, slippers, jigsaw
22   puzzles, and all sorts of mechanical games. Many of these items are still on the
23   market today, being sold on eBay and similar internet sites.

24        19.    Cheerios cereal included premiums for *The Adventures of Rin-Tin-Tin*
25   plastic totem poles; Nabisco Wheat Honeys offered coupons for six different Rin-
26   Tin-Tin masks; you could even buy a Chrysler that was endorsed by "the best
27   mounted cavalry in the world."

28        20.    In 1975, Leonard recycled *The Adventures of Rin-Tin-Tin* by

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 7

1   scrubbing it of offensive language and racial references to Native Americans and

2   filming "wraparound" scenes to introduce the episodes where the original actors

3   would appear in a rustic setting and explain the old days of the Cavalry to a group

4   of multicultural children. The press release for the scrubbed-up version stated

5   "After Coca-Cola and IBM, Rin-Tin-Tin is the most widely known and

6   immediately identifiable name in the world today…." By the end of 1976, the

7   show was airing five days a week in more than 85 percent of the country.

8       21.   By 1978, video rental stores had popped up across the country and the

9   market for children's shows grew more competitive. A method of adding color to

10  black and white film had been invented and Leonard became convinced that he

11  should colorize the Rin Tin Tin films to keep them marketable. The process cost a

12  fortune but people trusted Leonard. Eva Duncan, the wife of the late Duncan,

13  turned over all the Copyrights that were in her name to Leonard and Leonard

14  borrowed against everything that he had. Unfortunately, the gamble was a disaster

15  because the colorized and scrubbed versions still did not compete well with

16  contemporary programming.

17      22.   However, Leonard, who was one of the most prolific television

18  producers that ever existed, continued to pitch programming featuring Rin Tin Tin.

19  He wrote a script called *Rin Tin Tin the Tracker*, in which a dog worked with fish

20  and wildlife agents; *Rin Tin Tin the Ultimate Weapon* about a canine who receives

21  superpowers through a horde of flees that escaped from a science lab; *Rin Tin Tin*

22  *Private Investigator*; and *Rin Tin Tin Secret Agent* about a 14-year-old whiz kid

23  who owns the smartest dog in the world.

24      23.   In 1984, the Christian Broadcasting Network ("CBN") ordered

25  twenty-two episodes of a show called *Rin Tin Tin K-9 Cop* which was also called

26  *Katts and Dog* in Canada but the deal ended in litigation because Leonard was

27  newly remarried and didn't want to relocate to the production site in Canada.

28      24.   In 1994, Disney paid Leonard one hundred thousand dollars for a first

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 8

1   look at a script called *River of Gold* featuring the struggles and adventures of a

2   farm family in the 1960's with their dog Rin Tin Tin. The deal included a promise

3   of one million dollars if the studio decided to buy it. Unfortunately, Frank Wells,

4   the Disney executive that had been championing the project, died in a helicopter

5   crash in April of that year and the project died as well.

6          25.    Leonard was liked and trusted by most everyone that knew him but at

7   this time in his life his luck had turned and he owed large amounts of money to

8   many people. In 2002, he was diagnosed with cancer and shortly thereafter moved

9   in with his longtime friend Kleven who was one of the stuntmen in *The Adventures*

10  *of Tin-Tin-Tin*. In resolution of a large debt owed to Kleven, in 2005 Leonard

11  assigned all of intellectual property rights in Rin Tin Tin to Kleven. Kleven

12  became the legal owner of all of the copyrights and common law trademarks rights

13  in and to the Rin Tin Tin legacy.

14         26.    Beginning with Duncan in 1923, then Duncan and Leonard, then

15  Leonard, alone, then Leonard and Kleven, then Kleven, alone, and now Kleven and

16  Rin, Inc., the originator of the Rin Tin Tin legacy and his lawful successors have

17  continuously created, pitched, marketed and promoted Rin Tin Tin for almost a

18  century.

19  **DEFENDANTS' "RIN TIN TIN HISTORY"**

20         27.    The story of Hereford and her company, Defendant Rin Tin Tin, Inc.,

21  and Belleair Trading International, LLC ("Belleair") (collectively, "Defendants")

22  begins some 50 years after Duncan discovered the litter of German Shepherd

23  puppies on a World War I battlefield, and long after the name and character Rin

24  Tin Tin had become known world-wide through movies, television shows, books

25  and merchandise.

26         28.    In 1956, in his usual pile of fan mail and puppy requests, Duncan

27  received a letter from a woman named Jannettia Propps Brodsgaard

28  ("Brodsgaard"). Brodsgaard explained to Duncan that she had wanted a dog like

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 9

1    Rin Tin Tin ever since she saw *Where the North Begins* in 1923.

2       29.    In 1957, Duncan sold Brodsgaard a German Shepherd puppy which

3 he represented as being one of Rin Tin Tin IV's puppies. This was the first of four

4 puppies that he sold to her. Brodsgaard and eventually her granddaughter,

5 Hereford, began to breed and sell the puppies with the apparent intent of

6 preserving the purported Rin Tin Tin bloodline. This in itself was not an issue, but

7 Hereford began to confuse her ownership of dogs which purportedly shared the

8 bloodline of the dog Duncan found in France in 1918 with the ownership of the

9 Rin Tin Tin legacy – and the unlawful exploitation of the iconic Rin Tin Tin

10 character, name and fame.

11       30.    In 1993, Hereford sent Leonard a letter stating *"Your dedication to*

12 *Rin Tin Tin over the years is to be commended....Like you, my dedication has*

13 *lasted for many years....I am very interested in a revitalization of Rin Tin Tin and*

14 *would like to discuss with you the possibilities. I understand that Lassie and Benji*

15 *are presently working on feature films and a Rin Tin Tin film would certainly*

16 *attract a larger audience . . . "*

17       31.    Having spent the better part of his life producing Rin Tin Tin films

18 and television shows and realizing that Hereford had filed for a federal trademark

19 registration for the mark RIN TIN TIN, Leonard found this letter more ominous

20 than friendly, and he replied with a six-page cease & desist letter. By 1994 the

21 situation had devolved into the filing of an action entitled *Herbert B. Leonard v.*

22 *Daphne Hereford, et al.* 2:94-cv-02281-CBN-JR, which dragged on for more than

23 two years before it was dropped pursuant to a purported settlement agreement that

24 was placed on the record in open court (the <u>Leonard v. Hereford</u> Settlement").

25       32.    After days of negotiations, on January 8, 1996, Leonard and Hereford

26 and their respective attorneys appeared before The Honorable Consuelo B.

27 Marshall, United States District Judge, to place the <u>Leonard v. Hereford</u> Settlement

28 on the record. A true and correct copy of the transcript of the January 8, 1996-

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 10

1  Leonard v. Hereford Settlement hearing is attached hereto as Exhibit A and
2  incorporated herein by this reference.

3      33.   In the Leonard v. Hereford Settlement, Hereford stipulated to the
4  following findings:

5      a.   "Herbert B. Leonard has common law trademark rights in Rin
6  Tin Tin." Transcript at 4:1 8-19.

7      b.   "Herbert B. Leonard was assigned rights in the Rin Tin Tin mark
8  and character by Lee Duncan in the 1950s." Transcript at 5:1-3.

9      c.   "Herbert B. Leonard acquired all residual rights from Ima [sic]
10  Duncan in the Rin Tin Tin mark and character pursuant to certain agreements dated
11  April 4, 1978." Transcript at 5:4-6.

12      d.   "[S]o long as Daphne Hereford's use of the Rin Tin Tin mark is
13  limited to identifying her dogs as descendants of Rin Tin Tin IV in connection with
14  the breeding, raising, training, and selling of German Shepherd dogs, such use is
15  not likely to cause confusion with Herbert B. Leonard's use of the Rin Tin Tin
16  mark and character." Transcript at 5: 7-12.

17      34.   In the Leonard v. Hereford Settlement, Hereford received a limited
18  right to use the Rin Tin Tin mark solely "in connection with fan club services,
19  provided that she identifies such fan club as being under license from Herbert B.
20  Leonard." Transcript at 6:14-16. Hereford was also allowed to continue selling
21  German Shepherd dogs with the indication that such dogs were descendants of Rin
22  Tin Tin IV. Id. at 8. However, Hereford agreed that "Daphne Hereford may not use
23  the Rin Tin Tin mark, except with a Roman Numeral to describe her dogs as line-
24  bred descendants of Rin Tin Tin IV." Id. at 8:20-24.

25      35.   Upon inquiry by the Court, Hereford declared that she "had an
26  understanding of the terms and conditions of the settlement." Transcript at 30:9-12.
27  Hereford further assured the Court that she would abide by the terms and
28  conditions of the settlement. Id. at 31:6-7.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 11

36.     The <u>Leonard v. Hereford</u> Settlement, including the stipulations of fact and law and the negotiated terms and conditions, are binding on Hereford and her assigns.

37.     Unfortunately, despite the <u>Leonard v. Hereford</u> Settlement, there were other lawsuits to follow, including *Kleven et al v. Daphne Hereford et al*, 2:06-cv-00785-CBM-JTL (filed 2/10/2006) and *Rin Tin Tin Incorporated, et al. v. Herbert B. Leonard, et al*, 2:06-cv-03699-CAS-JWJ (filed in Texas on 6/14/2006), the latter ordered transferred to California, and which was subsequently the subject of a purported settlement agreement that long ago was rendered a nullity due to Hereford's fraud and wholesale breach and, ultimately, complete disregard by Hereford and her company Defendant Rin Tin Tin, Inc.

38.     Defendants' infringing behavior has persisted to this day. Defendants' continued efforts to commandeer the Rin Tin Tin legacy include, without limitation, the fraudulent filing of federal trademark applications for the mark Rin Tin Tin, marketing for sale merchandise clearly – but falsely – advertised and depicted as being part of the Rin Tin Tin legacy, and falsely representing to others that they and they alone are the rightful holders of that legacy.  Despite having absolutely no connection to the creation or ownership of any original or authorized film or television works featuring – and which created – the Rin Tin Tin icon, Defendants are attempting to profit off the creative efforts of the true owners of the RIN TIN TIN trademark and copyrights in the works that feature the fictional character Rin Tin Tin.

39.     This is not the first time the Courts have addressed the issue of unrelated third parties attempting to register names of well-known characters in copyrighted works. Similar cases have arisen regarding the trademarks KING KONG, ARCHIE, ARTHUR the AARDVARK, JAMES BOND, THE CHIPMUNKS, CONAN THE BARBARIAN, E.T., the Extra-Terrestrial, GODZILLA, FRANK MERRIWELL, MICKEY and MINNIE MOUSE,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 12

1  PLASTIC MAN, SUPERMAN and TARZAN.

2      40.    Although somewhat varied in their precise reasoning, Courts have

3  consistently found that attempting to profit from the popularity of another's fictional

4  character is unlawful. (See *Tristar Pictures, Inc. v. Del Taco, Inc.*, 59 U.S.P.Q.2d

5  1091, 1999 WL 33260839 (C.D. Cal. 1999) (When the public associates a

6  character, such as ZORRO, with visual images in a popular movie, then the party

7  who claims ownership of merchandising trademark rights should own a copyright or

8  be licensed to use a copyright in the motion picture visual image.). *Edgar Rice*

9  *Burroughs, Inc. v. Charlton Publications, Inc.*, 243 F. Supp. 731, 145 U.S.P.Q.

10  655 (S.D. N.Y. 1965); *Edgar Rice Burroughs, Inc. v. Manns Theatres*, 195

11  U.S.P.Q. 159, 1976 WL 20994 (C.D. Cal. 1976) (Famous character names, such as

12  TARZAN, in copyrighted works may not be used by others during the life of the

13  copyright without the authorization of the copyright owner) – what Defendants have

14  done is no different than an ARCHIE comic book collector buying a vintage Archie

15  comic and then laying claim to the exploitation of the ARCHIE character the

16  collector neither created nor lawfully acquired.

17      41.    Plaintiffs, and their predecessors-in-interest, have continually and

18  consistently to this day utilized the RIN TIN TIN intellectual property including,

19  without limitation, all copyrights and the trade name, in the stream of commerce –

20  in entertainment, literature, consumer products, merchandising and licensing –

21  since Duncan wrote and Warner Bros. produced "Where the North Begins" in

22  1923, a span of 90 years.

**THE PARTIES**

23

24      42.    Kleven is an individual and resident of the state of California, and

25  currently resides in the County of Los Angeles, California.

26      43.    Rin, Inc. is a California corporation, licensed to do business and

27  doing business in the County of Los Angeles, California.

28      44.    Plaintiffs are informed and believe, and on that basis allege, that

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 13

1   Hereford is an individual and resident of the state of Texas with a mailing address
2   of P.O. Box 27, Crockett, TX 75835.

3        45.   Plaintiffs are informed and believe, and on that basis allege, that Rin
4   Tin Tin, Inc. is a corporation organized under the laws of the state of Texas with a
5   mailing address of P.O. Box 27, Crockett, TX 75835.

6        46.   Plaintiffs are informed and believe, and on that basis allege, that
7   Belleair is a limited liability company organized under the laws of the state of
8   Florida with a mailing address of 8 Belleview Boulevard, Suite 508, Belleair,
9   Florida 33756.

10       47.   The true names, and identities or capacities, whether individual,
11  associate, corporate or otherwise of DOES 1 through 20, inclusive, are unknown to
12  Plaintiffs, who therefore sue said defendants by fictitious names. Plaintiffs are
13  informed and believe, and on that basis allege, that each of the defendants sued
14  herein as a DOE are legally responsible in some manner for the events and
15  happenings referred to herein. When the true names, identities and capacities of
16  such fictitiously designated defendants are ascertained, Kleven will ask leave of
17  the Court to amend this complaint to insert said true names, identities and
18  capacities, together with proper charging allegations.

19                 **JURISDICTION AND VENUE**

20       48.   This is an action seeking permanent injunctive relief, trademark
21  cancellation, monetary remedies, other equitable remedies, and attorneys' fees
22  based on the, *inter alia*, copyright infringement, common law trademark
23  infringement, and stated and federal unfair competition and anti-cybersquatting of
24  Defendants in connection with the unauthorized use of the Rin Tin Tin Intellectual
25  Property rights. These unlawful acts have occurred in the State of California, and
26  more specifically in the Central District of California.

27       49.   This Court has subject matter jurisdiction over this lawsuit pursuant to
28  15 U.S.C. §§ 1121 and 1125(a), 17 U.S.C. §§101 *et seq.*, and 28 U.S.C. §§1331,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 14

1    1338, and 1367, and pursuant to the Court's pendent jurisdiction.

2        50.    This Court has personal jurisdiction over Hereford because, *inter alia*,

3    Hereford, through her advertising and sales to customers located in California and

4    in this district, is present in this judicial district, transacts business in this judicial

5    district, and has committed acts in this judicial district upon which the claims

6    asserted in this lawsuit are based.

7        51.    This Court has personal jurisdiction over Rin Tin Tin, Inc. because,

8    *inter alia*, Rin Tin Tin, Inc., through its advertising and sales to customers located

9    in California and in this district, is present in this judicial district, transacts

10   business in this judicial district, and has committed acts in this judicial district

11   upon which the claims asserted in this lawsuit are based.

12       52.    Venue is proper in the Central District of California pursuant to 28

13   U.S.C. §§1391(b), (c), (d), and 1400(a) and (b).

14                     **PLAINTIFFS AND THEIR BUSINESS**

15       53.    By assignment on or about December 10, 2005, Kleven became the

16   sole owner of the copyrights, in the United States and worldwide, to all of the

17   works featuring the iconic fictional German Shepherd character named Rin Tin Tin

18   that were owned by Rin Tin Tin's owner and creator, Duncan.

19       54.    Kleven received all common law trademark rights to the name and

20   image of the iconic fictional German Shepherd character named Rin Tin Tin

21   owned by Leonard in the United States and worldwide by assignment executed

22   December 10, 2005.

23       55.    The common law trademark rights to the name and image of the

24   fictional German Shepherd character named Rin Tin Tin that Kleven received by

25   assignment executed December 10, 2005 inured through use that began decades

26   before Hereford or Rin Tin Tin, Inc. ever used the mark RIN TIN TIN in United

27   States commerce.

28       56.    The Rin Tin Tin copyright and common law trademarks rights in and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 15

1  to the iconic fictional German Shepherd character named Rin Tin Tin are
2  collectively referred to herein as the "Rin Tin Tin Rights."

3       57.    On or about February 1, 2013, Kleven assigned Fifty percent (50 %)
4  of the Rin Tin Tin Rights to Sasha Jenson ("Jenson"), Casey La Scala ("La Scala")
5  and Jeff Miller ("Miller") in equal shares. Miller, Jenson and La Scala
6  subsequently assigned their 50% interest in the Rin Tin Tin Rights to Rin, Inc.

7       58.    Kleven and Rin, Inc., Plaintiffs herein, are the owners of the
8  copyrights in multiple works registered with the United States Copyright Office
9  that feature the iconic fictional German Shepherd character named Rin Tin Tin.

10      59.    Many of the multiple copyrighted works featuring the iconic fictional
11 German Shepherd character named Rin Tin Tin have been available for purchase
12 and/or viewing in one form or another continuously, since their very creation for
13 decades. This continuous and exclusive use inures to the benefit of Plaintiffs via
14 the assignment from Duncan to Leonard, from Leonard to Kleven and from Kleven
15 to Kleven and Rin, Inc. Accordingly, Plaintiffs have been using the common law
16 trademark in the name and image of the iconic fictional German Shepherd
17 character named Rin Tin Tin continuously in United States (and international)
18 commerce from the date of the creation of the various works, beginning in 1923
19 and continuing to this very day.

20      60.    The multiple copyrighted works owned by Plaintiffs that feature the
21 iconic fictional German Shepherd character named Rin Tin Tin will remain live
22 and enforceable for many years to come.

23      61.    Plaintiffs are interested in and continue to pursue the production of
24 more movies and/or television shows featuring the iconic fictional German
25 Shepherd character named Rin Tin Tin.

26      62.    Plaintiffs are also interested in and continue to pursue the exploitation
27 the merchandizing, licensing and other opportunities related to and featuring the
28 iconic fictional German Shepherd character named Rin Tin Tin.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 16

63.     Defendants' unlawful claim to intellectual property rights in the name of the iconic fictional German Shepherd character Rin Tin Tin significantly interferes with Plaintiffs' ability to attract and secure movie production investment funding.

64.     Defendants' unlawful claim to intellectual property rights in the name of the iconic fictional German Shepherd character Rin Tin Tin significantly interferes with Plaintiffs' ability to effectively license and merchandize his intellectual property rights in the name and image of the iconic fictional German Shepherd character named Rin Tin Tin.

65.     Plaintiffs very conservatively estimate that Defendants' unlawful actions have, to date, damaged Plaintiffs monetarily in an amount of no less than Five Million Dollars ($5,000,000).

66.     Defendants' unlawful claim to the intellectual property rights in the name of the iconic fictional German Shepherd character named Rin Tin Tin poses a serious threat to the continued growth and proliferation of the Rin Tin Tin legacy.

## DEFENDANTS' WRONGFUL ACTS RELATED TO
## THE INTELLECTUAL PROPERTY AT ISSUE

67.     Defendants hold a false and misguided belief that because they purchased puppies purportedly sired by Rin Tin Tin IV, which may not even be related by blood to the original Rin Tin Tin, that Defendants have somehow also acquired an ownership or custodial interest in the legacy of the character Rin Tin Tin.

68.     Defendants hold the false and misguided belief that receiving a federal trademark registration through fraud and omission confers upon them legally enforceable trademark rights.

69.     At all times relevant to this Complaint, Defendants were aware of Kleven's, or his predecessor Leonard's, ownership of the copyrights in multiple works featuring the fictional German Shepherd character named Rin Tin Tin.

70.     Defendants' choice to begin using the mark RIN TIN TIN was not

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 17

independent or coincidental, but rather a deliberate and intentional reference to and pirating of the iconic fictional German Shepherd character named Rin Tin Tin featured in the many copyrighted works owned by Plaintiffs.

71.     Defendants were in no way involved in or related to the authorship or production of the multiple works that created or contributed to the legacy of the iconic fictional German Shepherd character named Rin Tin Tin, but instead have attempted to commandeer the legacy of that famous character, and profit from it through aggressive and fraudulent acquisitions of federal trademark registrations.

72.     Defendants have no ownership in any of the multiple works that created or contributed to the legacy of the iconic fictional German Shepherd character named Rin Tin Tin that exists today.

73.     Defendant have never received authorization from any owner of one or more of the multiple copyrighted works that created or contributed to the legacy of the iconic fictional German Shepherd character named Rin Tin Tin to create a derivative work. Therefore, Defendants cannot have legally acquired any copyrights in any works created by Defendants that feature the iconic fictional German Shepherd character named Rin Tin Tin.

74.     Defendants have deliberately and willfully attempted to profit from creating a false association between themselves and the source of the popular and successful copyrighted fictional works featuring the iconic fictional German Shepherd character named Rin Tin Tin that are now owned by Plaintiffs.

75.     Defendants make multiple false and unlawful representations in connection with the commercial sale, or the offer to sell, goods that are likely to lead consumers to believe that Defendants are associated or affiliated with the source of the multiple copyrighted works that feature the iconic fictional German Shepherd character named Rin Tin Tin.

76.     Hereford, Rin Tin Tin, Inc., and/or Belleair are currently listed as the owners of the following federal trademark registrations (collectively, "Defendants'

Federal Trademark Registrations"):

| Reg. No. | Mark | Good/Services |
|---|---|---|
| 4263551 | RIN TIN TIN | *Entertainment services in the field of motion pictures featuring a German Shepherd dog* in international class 041. |
| 3215700 | RIN TIN TIN | *Dog clothing; Dog collars; Dog leashes; Dog shoes; Handbags; Purses; Tote bags* in international class 018; *Bowls; Brushes for pets; Cups; Mugs; Pet brushes; Pet feeding dishes* in international class 021; *Hats; Jackets; Muffs; Scarves; Slippers; Sweat shirts; T-shirts* in international class 025; *Board games; Dog toys; Plush toys; Puzzles; Soft sculpture plush toys* in international class 028. |
| 3111161 | RIN TIN TIN | *Printed publications, namely, children's books* in international class 016. |
| 2969852 | RIN TIN TIN | *Printed publications, namely, magazines, pamphlets, books and comic books about German Shepherd dogs; activity and coloring books, posters, stickers, business cards, and cards in the nature of greeting cards and trading cards* in international class 016; *Playing cards* in international class 028; and *Entertainment services in the nature of an ongoing television series in the field of variety and motion pictures featuring a German Shepherd dog as a live or animated character* in international 041. |

| 3582436 | RIN TIN TIN | *live German Shepherd dogs of Rin Tin Tin lineage* in international class 031. |
|---|---|---|
| 3380788 | RIN TIN TIN | *Dog food* in international class 031. |
| 2538312 | RIN TIN TIN | *mail order fan club service providing materials promoting the breeding, training, raising and showing of the authentic RIN TIN TIN German Shepherd dog lineage* in international class 041. |
| 2384745 | RIN TIN TIN CANINE AMBASSADOR CLUB | *EDUCATION AND ENTERTAINMENT; NAMELY promotion of responsible dog ownership through programs presented to schools and groups* in international class 041. |
| 1763135 | RIN TIN TIN (Stylized) | *live German Shepherd puppies* in international class 031. |

## COUNT I

### [Copyright Infringement - 17 U.S.C. §§101, *et seq.*]

77.　Plaintiffs repeat and incorporate by reference the allegations of paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.　Plaintiffs are the owners of multiple works registered with the United States Copyright office that feature the iconic fictional German Shepherd character named Rin Tin Tin.

79.　Defendants have had access to and are very familiar with the multiple copyrighted works that feature the iconic fictional German Shepherd character named Rin Tin Tin.

80.　Defendants are currently offering for sale and selling books, cards, clothing, collars, leashes, films, dog food and treats, jewelry, photographs, plush toys, games, slippers, training and grooming supplies featuring the iconic fictional German Shepherd character named Rin Tin Tin *without authority, permission, or license.*

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 20

81.     Defendants are currently offering for sale and selling books, cards, clothing, collars, leashes, films, dog food and treats, games, jewelry, photographs, plush toys, slippers, training and grooming supplies that feature an image of a German Shepherd and the name Rin Tin Tin in manner that evokes a substantial similarity to the iconic fictional German Shepherd character named Rin Tin Tin *without authority, permission, or a license.*

82.     Defendant did not independently choose to sell goods that feature an original image of German Shepherd named Rin Tin Tin, but rather they have copied the name and image from the iconic fictional German Shepherd character named Rin Tin Tin that was introduced to the world in the nineteen-twenties and gained popularity through the multiple copyrighted works owned by Plaintiffs.

83.     Defendants are well aware that Plaintiffs are the owners of multiple works that are registered with the United States Copyright office featuring the iconic fictional German Shepherd character named Rin Tin Tin and that Plaintiffs *do not approve of or authorize* Defendants' actions.

84.     Defendant's actions in relation to offering for sale and selling goods featuring a German Shepherd and the name Rin Tin Tin in manner that evokes a substantial similarity to the iconic fictional German Shepherd character named Rin Tin Tin is *with full knowledge* that such action violates United States copyright laws, and the intent to infringe the copyrighted works.

85.     Defendants' websites, (www.rintintin.com) and (www.bellairtrading.com), are used, *inter alia*, to conduct commerce throughout the United States and the world in goods that feature a German Shepherd and the name Rin Tin Tin in a manner that evokes a substantial similarity to the iconic fictional German Shepherd character named Rin Tin Tin featured in the multiple registered copyrighted works owned by Plaintiffs.

86.     As a direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have suffered damage and injury including, without

limitation, loss of use, exploitation and commercialization of the RIN TIN TIN intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of reputation and goodwill, professional acknowledgment and credits, and public fame, all according to proof.

87.    As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Kleven has suffered injury to Plaintiffs' persons and psyches including, without limitation, great and severe emotional distress, according to proof.

88.    As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys' fees and costs, which Plaintiffs are entitled to recover from Defendants as damages under the third party/tort of another theory, according to proof.

89.    Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address Defendants' continuing infringement of Plaintiffs' multiple registered copyrighted works that feature the iconic fictional German Shepherd character named Rin Tin Tin. Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

## COUNT II

### [Federal Unfair Competition - 15 U.S.C. §1125(a), *et seq.* (Lanham Act §43(a))]

90.    Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91.    The Rin Tin Tin legacy was created by the hours of dedicated and tireless work and creative genius by many who wrote, directed, and produced the multiple television episodes and movies that brought the iconic fictional German Shepherd character named Rin Tin Tin to popularity throughout the United States

1 | of America and around the world.

2 |     92.    Without investing the time, effort, and money to create the works that
3 | led to people throughout the world to know and love the iconic fictional German
4 | Shepherd character named Rin Tin Tin, Defendants are attempting to appropriate
5 | and profit from the Rin Tin Tin legacy and claim it as their own.

6 |     93.    Defendants' actions can only be described as an effort to reap what
7 | they have not sown, and such behavior is below the accepted threshold of
8 | commercial morality and fair play.

9 |     94.    Through aggressive and unlawful actions, Defendants are attempting
10 | to profit from the misappropriation of the Rin Tin Tin legacy.

11 |     95.    Defendants are conducting business in a manner that violates United
12 | States copyright law, and such behavior also constitutes federal unfair competition.

13 |     96.    Defendants' actions are inhibiting the true owners of the copyrighted
14 | works that feature the iconic fictional German Shepherd character named Rin Tin
15 | Tin from effectively merchandizing the famous fictional character.

16 |     97.    Because Defendants are using the mark RIN TIN TIN in commerce in
17 | an unauthorized manner, Defendants have caused and are causing substantial and
18 | irreparable harm to the goodwill associated with Plaintiffs' common law mark RIN
19 | TIN TIN and will continue to damage Plaintiffs and to deceive consumers unless
20 | enjoined by this Court.

21 |     98.    As a direct, proximate and foreseeable result of Defendants' conduct
22 | as alleged herein, Plaintiffs have suffered damage and injury including, without
23 | limitation, loss of use, exploitation and commercialization of the RIN TIN TIN
24 | intellectual property, diminution in value of the RIN TIN TIN intellectual property,
25 | loss of earnings, earning capacity and profits, loss of reputation and goodwill,
26 | professional acknowledgment and credits, and public fame, all according to proof.

27 |     99.    As a further direct, proximate and foreseeable result of Defendants'
28 | conduct as alleged herein, Plaintiffs have incurred and continues to incur attorneys'

1 | fees and costs, which Plaintiffs are entitled to recover from Defendants as damages
2 | under the third party/tort of another theory, according to proof.

3 |     100.   Defendants' unlawful conduct, as alleged herein, is continuing, as is
4 | the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to
5 | address the continuing harm to the reputation and goodwill of the Rin Tin Tin
6 | legacy caused by Defendants' ongoing wrongful and unlawful use of the mark RIN
7 | TIN TIN in commerce, as alleged herein.  Plaintiffs are therefore entitled to
8 | injunctive relief, on statutory, common law and/or equitable grounds, to enjoin
9 | Defendants' continuing unlawful conduct.

10 | **COUNT III**

11 | **[False Association - 15 U.S.C. §1125(a), *et seq.* (Lanham Act §43(a))]**

12 |     101.   Plaintiffs repeat and incorporate by reference the allegations of
13 | Paragraphs 1 through 100 of this Complaint as if fully set forth herein.

14 |     102.   Defendants' website, (www.rintintin.com), claims to be the "Official
15 | Rin Tin Tin" site; a statement that directly implies that Defendants and their
16 | website are associated or affiliated with those who created or own the multiple
17 | copyrighted works that feature the iconic German Shepherd character Rin Tin Tin.
18 | (See Exhibit B, attached hereto and incorporated herein by this reference.)

19 |     103.   Defendants' website, (www.rintintin.com), features a "Licensing
20 | Resource Center" where consumers are invited to learn about licensing, invest in
21 | RIN TIN TIN licensing, learn the steps to obtain a licensing agreement, and initiate
22 | the licensing process (See Exhibit C, attached hereto and incorporated herein by
23 | this reference); such statements and information are likely to lead consumers to
24 | believe that Defendants are associated or affiliated with those who created or own
25 | the multiple copyrighted works that feature the iconic German Shepherd character
26 | Rin Tin Tin.

27 |     104.   The unlawful conduct of Defendants is likely to continue to cause
28 | confusion, to cause mistake, and/or deceive consumers as to the origin, source,

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 24

affiliation, or sponsorship of the goods provided by Defendants in connection with the mark RIN TIN TIN.

105.  Consumers who are familiar with one or more of the multiple copyrighted works that feature the iconic German Shepherd character named Rin Tin Tin are likely to assume that goods provided by Defendants are of the same high quality as the cinematography with which they are familiar.

106.  Defendants are likely to attract consumers who are familiar with one or more of the multiple copyrighted works that feature the iconic fictional German Shepherd character named Rin Tin Tin and benefit financially from sales that are, at least in part, influenced by these consumers' appreciation of the quality of the copyrighted works with which they are familiar, as well as a false assumption that Defendants are authorized by or affiliated with the creators or owners of the copyrighted works.

107.  As a direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have suffered damage and injury including, without limitation, loss of use, exploitation and commercialization of the RIN TIN TIN intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of reputation and goodwill, professional acknowledgment and credits, and public fame, all according to proof.

108.  As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys' fees and costs, which Plaintiffs are entitled to recover from Defendants as damages under the third party/tort of another theory, according to proof.

109.  Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continuing harm to Plaintiffs' business, reputation and goodwill caused by Defendants' ongoing false associations, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable

1  grounds, to enjoin Defendants' continuing unlawful conduct.

2  <u>**COUNT IV**</u>

3  **[False Endorsement - 15 U.S.C. §1125(a) *et seq.* (Lanham Act §43(a))]**

4  110.   Plaintiffs repeat and incorporate by reference the allegations of
5  Paragraphs 1 through 109 of this Complaint as if fully set forth herein.

6  111.   Defendants sell a variety of goods that feature the image and name of
7  the iconic fictional German Shepherd character featured in multiple copyrighted
8  works in a manner that is likely to lead consumers to believe that the quality of the
9  goods <u>are endorsed</u> by the creator or owner of the multiple copyrighted works that
10  feature the iconic fictional German Shepherd character Rin Tin Tin.

11  112.   Defendants' websites, (www.rintintin.com) and
12  (www.belleairtrading.com), make multiple direct references to the
13  cinematographic history and legacy of the iconic fictional German Shepherd
14  character named Rin Tin Tin, thereby directly implying that their use of the mark
15  RIN TIN TIN is an endorsement by the iconic fiction German Shepherd character
16  named Rin Tin Tin rather than a separate, subsequently founded, and
17  independently created brand by the name of RIN TIN TIN.

18  113.   Defendants' website advertises the ability to grant licenses in the RIN
19  TIN TIN mark without owning any copyrighted works that feature the iconic
20  fictional German Shepherd character named Rin Tin Tin.

21  114.   The name Rin Tin Tin is inseparably associated with the iconic
22  fictional German Shepherd character featured in multiple copyrighted works, and
23  therefore, any license or endorsement granted by Defendants would inevitably
24  cause consumers to falsely believe that such license or endorsement was associated
25  with the creator or owner of the multiple copyrighted works.

26  115.   As a direct, proximate and foreseeable result of Defendants' conduct
27  as alleged herein, Plaintiffs have suffered damage and injury including, without
28  limitation, loss of use, exploitation and commercialization of the RIN TIN TIN

1  intellectual property, diminution in value of the RIN TIN TIN intellectual property,
2  loss of earnings, earning capacity and profits, loss of reputation and goodwill,
3  professional acknowledgment and credits, and public fame, all according to proof.

4      116.  As a further direct, proximate and foreseeable result of Defendants'
5  conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys'
6  fees and costs, which Plaintiffs are entitled to recover from Defendants as damages
7  under the third party/tort of another theory, according to proof.

8      117.  Defendants' unlawful conduct, as alleged herein, is continuing, as is
9  the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to
10 address the continuing harm to Plaintiffs' business, reputation and goodwill caused
11 by Defendants' ongoing false endorsements, as alleged herein.  Plaintiffs are
12 therefore entitled to injunctive relief, on statutory, common law and/or equitable
13 grounds, to enjoin Defendants' continuing unlawful conduct.

14                              **COUNT V**
15      **[False Representation - 15 U.S.C. §1125(a), *et seq.* (Lanham Act §43(a))]**

16      118.  Plaintiffs repeat and incorporate by reference the allegations of
17 Paragraphs 1 through 117 of this Complaint as if fully set forth herein.

18      119.  Plaintiffs are informed and believe, and on that basis allege, that
19 Defendants' representations to the public and their potential customers that
20 Defendants produce the world's only linebred Rin Tin Tin descendants are false,
21 and cannot be established as fact by Defendants.

22      120.  On Defendants' website, they represent that they have the authority to
23 grant licenses in the mark RIN TIN TIN and entice their customers to "Maximize
24 the appeal and demand for your products or service by incorporating this famous
25 Hollywood icon!" thus making it unequivocally clear that they are referring to an
26 association with the iconic fictional German Shepherd character named Rin Tin
27 Tin that is the central character in several currently copyrighted works in which
28 Defendants hold no ownership interest.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 27

121.   As a direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have suffered damage and injury including, without limitation, loss of use, exploitation and commercialization of the RIN TIN TIN intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of reputation and goodwill, professional acknowledgment and credits, and public fame, all according to proof.

122.   As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys' fees and costs, which Plaintiffs are entitled to recover from Defendants as damages under the third party/tort of another theory, according to proof.

123.   Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continued harm to Plaintiffs' business, reputation and goodwill caused by Defendants' ongoing false representations, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

## COUNT VI

### [Common Law Trademark Infringement - 15 U.S.C. §1125(a), *et seq.*

### (Lanham Act §43(a))]

124.   Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 123 of this Complaint as if fully set forth herein.

125.   The iconic fictional German Shepherd character named Rin Tin Tin is a famous and immediately recognizable character throughout the United States and the world, and as such the mark RIN TIN TIN (especially when used in conjunction with a German Shepherd) has gained secondary meaning as to the source that has provided the multiple copyrighted television shows and movies owned by Plaintiffs that feature the iconic fictional German Shepherd character named Rin Tin Tin.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 28

126.   Consumers assume that goods and services that feature the mark RIN TIN TIN are associated or affiliated with the creators or owners of the multiple copyrighted works that feature the famous and iconic fictional German Shepherd character named Rin Tin Tin.

127.   Kleven received ownership of the common law trademark RIN TIN TIN via an assignment from Leonard that was executed on December 10, 2005, and Rin, Inc. received 50% of Kleven's ownership on or about February 1, 2013.

128.   The multiple copyrighted television episodes and movies featuring the iconic fictional German Shepherd character named Rin Tin Tin have been available for sale or viewing, in one form or another, continuously and exclusively for decades; therefore, the common law rights in the mark RIN TIN TIN have been used continuously and exclusively and have never been abandoned.

129.   Defendants make multiple references to Hollywood, the movies, and the cinematographic history of the iconic fictional German Shepherd character named Rin Tin Tin; therefore, consumers are likely to incorrectly assume that the goods and services provided by Defendants in conjunction with the mark RIN TIN TIN are associated or affiliated with the source of the multiple popular copyrighted works--an assumption that will cause a likelihood of confusion as to source and affiliation.

130.   Because Defendants have made every effort to associate themselves with the iconic fictional German Shepherd character named Rin Tin Tin featured in the many copyrighted works owned by Plaintiffs, Defendants could not have acquired independent secondary meaning in the mark RIN TIN TIN.

131.   Defendants' continued use of the mark RIN TIN TIN is deceiving the consuming public, misrepresenting the source of Defendants' goods, and presenting a substantial likelihood of confusion as to source or affiliation.

132.   Defendants' use of the mark RIN TIN TIN is destroying the goodwill that has been acquired through the years of hard work and dedication on behalf of those who produced the multiple copyrighted works featuring the iconic fictional

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 29

1     German Shepherd character named Rin Tin Tin.

2          133.   As a direct, proximate and foreseeable result of Defendants' conduct

3     as alleged herein, Plaintiffs have suffered damage and injury including, without

4     limitation, loss of use, exploitation and commercialization of the RIN TIN TIN

5     intellectual property, diminution in value of the RIN TIN TIN intellectual property,

6     loss of earnings, earning capacity and profits, loss of reputation and goodwill,

7     professional acknowledgment and credits, and public fame, all according to proof.

8          134.   As a further direct, proximate and foreseeable result of Defendants'

9     conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys'

10     fees and costs, which Plaintiffs are entitled to recover from Defendants as damages

11     under the third party/tort of another theory, according to proof.

12          135.   Defendants' unlawful conduct, as alleged herein, is continuing, as is

13     the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to

14     address the continued harm to Plaintiffs' business, reputation and goodwill caused

15     by Defendants' ongoing trademark infringement, as alleged herein.  Plaintiffs are

16     therefore entitled to injunctive relief, on statutory, common law and/or equitable

17     grounds, to enjoin Defendants' continuing unlawful conduct.

18                         **<u>COUNT VII</u>**

19     **[Federal Anti-Cybersquatting Act - 15 U.S.C. §1125(c), *et seq.* (Lanham Act**

20                             **§43(c))]**

21          136.   Plaintiffs repeat and incorporate by reference the allegations of

22     Paragraphs 1 through 136 of this Complaint as if fully set forth herein.

23          137.   Defendants purchased the Internet domain name <u>www.rintintin.com</u>

24     on or about December 1, 1999.

25          138.   The domain name purchased by Defendants is identical to the name of

26     the iconic fictional German Shepherd character featured in the multiple

27     copyrighted works owned by Plaintiffs.

28          139.   Rin Tin Tin, the name of the iconic fictional German Shepherd

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 30

1 character featured in the multiple copyrighted works owned by Plaintiffs, was a
2 famous and distinctive trademark for several decades at the time Defendants
3 registered the Internet domain name, www.rintintin.com.

4     140. Defendants have used the domain name, www.rintintin.com, to gain
5 financially from the fame and reputation of the iconic fictional German Shepherd
6 character named Rin Tin Tin featured in the multiple copyrighted works owned by
7 Plaintiffs by creating a false association with and affiliation between themselves
8 and the popular copyrighted works to sell a variety of goods.

9     141. Defendants have used the domain name, www.rintintin.com, to gain
10 financially from the fame and reputation of the iconic fictional German Shepherd
11 character named Rin Tin Tin featured in the multiple copyrighted works owned by
12 Plaintiffs by selling goods featuring the name and image of the iconic fictional
13 German Shepherd character without authorization or permission.

14     142. Defendants have used the domain name, www.rintintin.com, to gain
15 financially from the fame and reputation of the iconic fictional German Shepherd
16 character named Rin Tin Tin featured in the multiple copyrighted works owned by
17 Plaintiffs by misappropriating the goodwill associated with the common law
18 trademark in the image and name of the iconic fictional German Shepherd character.

19     143. As a direct, proximate and foreseeable result of Defendants' conduct
20 as alleged herein, Plaintiffs have suffered damage and injury including, without
21 limitation, loss of use, exploitation and commercialization of the RIN TIN TIN
22 intellectual property, diminution in value of the RIN TIN TIN intellectual property,
23 loss of earnings, earning capacity and profits, loss of reputation and goodwill,
24 professional acknowledgment and credits, and public fame, all according to proof.

25     144. As a further direct, proximate and foreseeable result of Defendants'
26 conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys'
27 fees and costs, which Plaintiffs are entitled to recover from Defendants as damages
28 under the third party/tort of another theory, according to proof.

145.   Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continued harm to Plaintiffs' business, reputation and goodwill caused by Defendants' ongoing bad faith attempts to profit from Plaintiffs' common law trademark RIN TIN TIN, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

## COUNT VIII

### [Federal Trademark Dilution - 15 U.S.C.  §1125(c), *et seq*.  (Lanham Act §43(c))]

146.   Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 146 of this Complaint as if fully set forth herein.

147.   The name of the iconic fictional German Shepherd character named Rin Tin Tin featured in the multiple popular copyrighted works owned by Plaintiffs is a famous and distinctive trademark.

148.   Plaintiffs are the senior user of the famous and distinctive mark RIN TIN TIN.

149.   Defendants' use of the identical mark RIN TIN TIN diminishes the distinctiveness, uniqueness, and the crispness of the association in the minds of consumers between Plaintiffs' mark RIN TIN TIN and the source of goods and services which it represents.

150.   Defendants' use of the identical mark RIN TIN TIN erodes the strength of Plaintiffs' mark RIN TIN TIN by blurring its ability to serve as an indicator of a <u>single source</u>.

151.   Defendants' use of the identical mark RIN TIN TIN erodes the strength of the Plaintiffs' mark RIN TIN TIN by tarnishing and degrading the positive associations and reputation of the mark.

152.   As a direct, proximate and foreseeable result of Defendants' conduct

as alleged herein, Plaintiffs have suffered damage and injury including, without limitation, loss of use, exploitation and commercialization of the RIN TIN TIN intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of reputation and goodwill, professional acknowledgment and credits, and public fame, all according to proof.

153.   As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have incurred and continues to incur attorneys' fees and costs, which Plaintiffs are entitled to recover from Defendants as damages under the third party/tort of another theory, according to proof.

154.   Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continuing dilution of Plaintiffs' famous and distinctive mark caused by Defendants' ongoing wrongful and unlawful use of the identical mark, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

## COUNT IX

### [Cancellation of United States Federal Trademark Registrations - Trademark Act §2(a), *et seq.*]

155.   Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 154 of this Complaint as if fully set forth herein.

156.   Defendants' Federal Trademark Registrations are for the same name as the iconic fictional German Shepherd character featured in multiple copyrighted works owned by Plaintiffs.

157.   The iconic fictional German Shepherd character named Rin Tin Tin featured in multiple copyrighted works owned by Plaintiffs was famous well before Defendants filed the trademark applications that matured into Defendants' Federal Trademark Registrations for the mark RIN TIN TIN.

158.   Defendants' Federal Trademark Registrations point uniquely and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 33

1  unmistakably to the iconic fictional German Shepherd character featured in
2  multiple copyrighted works owned by Plaintiffs.

3      159.   The iconic fictional German Shepherd character named Rin Tin Tin
4  featured in multiple copyrighted works owned by Plaintiffs is sufficiently famous
5  that the use of Defendants' Federal Registrations for the mark RIN TIN TIN would
6  uniquely point to and create an association with the iconic fictional German
7  Shepherd character.

8      160.   Defendants make several references to the iconic fictional German
9  Shepherd character featured in the multiple copyrighted works owned by Plaintiffs
10  on the website, www.rintitntin.com, making it unequivocal that Defendants are, in
11  fact attempting to reference the iconic fictional German Shepherd character
12  featured in the multiple copyrighted works owned by Plaintiffs.

13      161.   Plaintiffs, the owners of the multiple copyrighted works that feature
14  the iconic fictional German Shepherd character Rin Tin Tin, are not associated
15  with Defendants or the goods Defendants sell or offer to sell.

16      162.   Due to the fame of the iconic fictional German Shepherd character
17  Rin Tin Tin, when Defendants use Defendants' fraudulently acquired Federal
18  Trademark Registrations, consumers are highly likely to presume there is a
19  connection between Defendants and the iconic fictional German Shepherd character
20  Rin Tin Tin. Indeed, Defendants clearly intend that such connection be made.

21      163.   Defendants' unlawful conduct, as alleged herein, is continuing, as is
22  the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to
23  address the continuing harm caused by Defendants' ongoing wrongful and
24  unlawful Federal Registrations for the mark RIN TIN TIN, as alleged herein.
25  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law
26  and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.
27  ///
28  ///

<u>COUNT X</u>

**[Cancellation of United States Federal Trademark Registrations - Trademark Act §14(3),** *et seq.***]**

164.    Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 163 of this Complaint as if fully set forth herein.

165.    Defendants are using Defendants' Federal Registrations for the mark RIN TIN TIN in a manner that misrepresents the source of the associated goods.

166.    Defendants' website claims to be the "Official Site of Rin Tin Tin" and features a scene of the famous Hollywood sign and a slide show of photographs of Rinty and movie posters from old Rin Tin Tin movies, thus making the representation that Defendants are associated or affiliated with the iconic fictional German Shepherd character featured in multiple copyrighted works owned by Plaintiffs, which is a material and <u>deceptive misrepresentation of the source of Defendants' goods</u>.

167.    Defendants' website advertises the licensing of the mark RIN TIN TIN to third parties by saying "*Build your brand with RIN TIN TIN and maximize the appeal and demand for your product or service by incorporating this famous Hollywood icon!*" Such language is an unequivocal attempt to misrepresent the source or affiliation of their goods with the iconic fictional German Shepherd character named Rin Tin Tin featured in multiple copyrighted works owned by Plaintiffs.

168.    Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continuing harm caused by Defendants' wrongful and unlawful Federal Registrations for the mark RIN TIN TIN, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

///

## COUNT XI

### [Cancellation of United States Federal Trademark Registration - Fraud-
### *Torres v. Cantine Torresella*]

169.    Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 168 of this Complaint as if fully set forth herein.

170.    When filing each federal trademark application, Defendants swore an oath:

> "*that he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.*"

171.    Defendants knew this representation was untrue at the time Defendants made this representation to the United States Patent and Trademark Office.

172.    Defendants made this misrepresentation for the explicit purpose of deceiving the United States Patent and Trademark Office into granting a federal trademark registration.

173.    The United States Patent and Trademark Office materially relied on Defendants' misrepresentations when it granted Defendants United States federal trademark registrations.

174.    Defendants United States Federal Trademark registrations will harm consumers by creating source and affiliation confusion.

175.    Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to

1  address the continuing harm caused by Defendants' wrongful and unlawful Federal

2  Registrations for the mark RIN TIN TIN, as alleged herein.  Plaintiffs are therefore

3  entitled to injunctive relief, on statutory, common law and/or equitable grounds, to

4  enjoin Defendants' continuing unlawful conduct.

## COUNT XII

### [Unfair Competition - Cal. Bus. & Prof. Code §17200]

7      176.  Plaintiffs repeat and incorporate by reference the allegations of

8  Paragraphs 1 through 175 of this Complaint as if fully set forth herein.

9      177.  The unlawful conduct of Defendants, as alleged herein, constitutes

10  unfair, unlawful, and fraudulent business practices in violation of California

11  Business and Professions Code § 17200, *et seq.*

12      178.  The wrongful acts of Defendants proximately caused, and will

13  continue to cause, substantial injury to Plaintiffs, including confusion of potential

14  customers, injury to reputation, and diminution of the goodwill associated with

15  Plaintiffs' common law trademarks. These actions, if allowed to continue, will

16  cause irreparable harm and injury to Plaintiffs, the full amount of which has not

17  been ascertained, but is no less than $5,000,000.

18      179.  As a direct, proximate and foreseeable result of Defendants' conduct

19  as alleged herein, Plaintiffs have suffered damage and injury including, without

20  limitation, loss of use, exploitation and commercialization of the RIN TIN TIN

21  intellectual property, diminution in value of the RIN TIN TIN intellectual property,

22  loss of earnings, earning capacity and profits, loss of reputation and goodwill,

23  professional acknowledgment and credits, and public fame, all according to proof.

24      180.  As a further direct, proximate and foreseeable result of Defendants'

25  conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys'

26  fees and costs, which Plaintiffs are entitled to recover from Defendants as damages

27  under the third party/tort of another theory, according to proof.

28      181.  Defendants' unlawful conduct, as alleged herein, is continuing, as is

the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continuing harm to Plaintiffs and the public caused by Defendant's ongoing unfair, unlawful, and fraudulent business practices in violation of California Business and Professions Code § 17200, *et seq.*, as alleged herein. Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

## COUNT XIII

### [Violation of California's Consumer Legal Remedies Act - Cal. Civ. Code § 1750, *et seq.*]

182.  Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 181 of this Complaint as if fully set forth herein.

183.  Defendants' use of the mark RIN TIN TIN and their exploitation of the iconic fictional German Shepherd character named Rin Tin Tin are unfair and deceptive, misrepresent the source of Defendants' goods, and misrepresent the affiliation and sponsorship of Defendants' goods.

184.  Specifically, Defendants' conduct as alleged herein includes, without limitation, the following:

a.  Misrepresenting the source and approval of Defendants' goods or services [Cal. Civ. Code § 1770 (a) (2)];

b.  Misrepresenting the affiliation, connection, or association with, or certification by, another [Cal. Civ. Code § 1770 (a) (3)];

c.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have [Cal. Civ. Code § 1770 (a) (5)].

185.  Plaintiffs have given Defendants adequate warning to cease Defendants unfair, deceptive, and misleading practices and Defendants have failed and refused to do so.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 38

186.   As a direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have suffered damage and injury including, without limitation, loss of use, exploitation and commercialization of the RIN TIN TIN intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of reputation and goodwill, professional acknowledgment and credits, and public fame, all according to proof.

187.   As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys' fees and costs, which Plaintiffs are entitled to recover from Defendants as damages under the third party/tort of another theory, according to proof.

188.   Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continuing harm to Plaintiffs and the public caused by Defendant's unfair, deceptive, and misleading practices, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

## COUNT XIV

### [Common Law Unfair Competition]

189.   Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 188 of this Complaint as if fully set forth herein.

190.   By their acts as alleged herein including, without limitation, Defendants' misappropriation of Plaintiff's exclusive right to exploit the iconic fictional German Shepherd character named Rin Tin Tin and their unauthorized use of the mark RIN TIN TIN, Defendants have engaged in common law unfair competition.

191.   As a direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have suffered damage and injury including, without limitation, loss of use, exploitation and commercialization of the RIN TIN TIN

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 39

1  intellectual property, diminution in value of the RIN TIN TIN intellectual
2  property, loss of earnings, earning capacity and profits, loss of reputation and
3  goodwill, professional acknowledgment and credits, and public fame, all
4  according to proof.

5       192.  As a further direct, proximate and foreseeable result of Defendants'
6  conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys'
7  fees and costs, which Plaintiffs are entitled to recover from Defendants as damages
8  under the third party/tort of another theory, according to proof.

9       193.  Plaintiffs are informed and believe, and on that basis allege, that
10  Defendants' unlawful conduct as alleged herein, was deliberate, despicable and
11  malicious, undertaken with a conscious and utter disregard of Defendants'
12  statutory and common law obligations to Plaintiffs, in complete disregard of
13  Plaintiffs' intellectual property rights and with a clear intention of depriving
14  Plaintiffs of the value and use of such rights, all to Defendants' own benefit.
15  Defendants' despicable conduct has subjected and continues to subject Plaintiffs to
16  cruel and unjust hardship in conscious disregard of Plaintiffs' rights so as to justify
17  an award of exemplary and punitive damages, according to proof. Plaintiffs are
18  informed and believe, and on that basis allege, that the unlawful conduct of each
19  Defendant was authorized and/or ratified by the remaining Defendants.

20       194.  Defendants' unlawful conduct, as alleged herein, is continuing, as is
21  the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to
22  address the continuing harm to Plaintiffs and the public caused by Defendant's
23  unfair, deceptive, and misleading practices, as alleged herein. Plaintiffs are
24  therefore entitled to injunctive relief, on statutory, common law and/or equitable
25  grounds, to enjoin Defendants' continuing unlawful conduct.

26  **COUNT XV**
27  **[Common Law Infringement]**
28       195.  Plaintiffs repeat and incorporate by reference the allegations of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 40

1   Paragraphs 1 through 194 of this Complaint as if fully set forth herein.

2       196.   By their acts as alleged herein including, without limitation,

3   Defendants' misappropriation of Plaintiff's exclusive right to exploit the iconic

4   fictional German Shepherd character named Rin Tin Tin, Defendants have engaged

5   in common law trademark infringement under California law.

6       197.   Plaintiffs are informed and believe, and on that basis allege, that

7   Defendants' unlawful conduct as alleged herein, was deliberate, despicable and

8   malicious, undertaken with a conscious and utter disregard of Defendants'

9   statutory and common law obligations to Plaintiffs, in complete disregard of

10  Plaintiffs' intellectual property rights and with a clear intention of depriving

11  Plaintiffs of the value and use of such rights, all to Defendants' own benefit.

12  Defendants' despicable conduct has subjected and continues to subject Plaintiffs to

13  cruel and unjust hardship in conscious disregard of Plaintiffs' rights so as to justify

14  an award of exemplary and punitive damages, according to proof. Plaintiffs are

15  informed and believe, and on that basis allege, that the unlawful conduct of each

16  Defendant was authorized and/or ratified by the remaining Defendants.

17      198.   Defendants' unlawful conduct, as alleged herein, is continuing, as is

18  the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to

19  address the continuing harm caused to Plaintiffs and the public by Defendant's

20  infringement, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief,

21  on statutory, common law and/or equitable grounds, to enjoin Defendants'

22  continuing unlawful conduct.

## COUNT XVI

### [Intentional Interference with Prospective Economic Advantage]

25      199.   Plaintiffs repeat and incorporate by reference the allegations of

26  Paragraphs 1 through 198 of this Complaint as if fully set forth herein.

27      200.   Plaintiffs are informed and believe, and on that basis allege, that

28  Defendants had knowledge of Plaintiffs' prospective economic advantage in the

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 41

1  exploitation of the iconic fictional German Shepherd character named Rin Tin Tin
2  and the mark RIN TIN TIN.

3      201.   Defendants intentionally interfered with said opportunities by various
4  acts including, but not limited to, the following:

5          a.   Defendants' prior and continuing misappropriation of Plaintiff's
6  exclusive right to exploit the iconic fictional German Shepherd character named
7  Rin Tin Tin, as alleged herein;

8          b.   Defendants' prior and continuing unauthorized use of the mark
9  RIN TIN TIN, as alleged herein;

10         c.   Defendants' prior and continuing copyright infringement, as
11 alleged herein;

12         d.   Defendants' prior and continuing false association, as alleged
13 herein;

14         e.   Defendants' prior and continuing false endorsement, as alleged
15 herein;

16         f.   Defendants' prior and continuing trademark infringement, as
17 alleged herein.

18     202.   Plaintiffs are informed and believe, and on that basis allege, that
19 Defendants' conduct as alleged herein was intentional and/or was committed with
20 a reckless disregard to the consequences of their conduct; and/or with specific
21 intent to further their own pecuniary interest and to reap unfair financial gains in
22 violation of the trust placed in them by the public, knowing all the while of the
23 damage that would be sustained by Plaintiffs.

24     203.   The aforementioned acts of Defendants were wrongful and tortuous
25 independent of the interference itself for the reasons alleged above.

26     204.   As a direct, proximate and foreseeable result of Defendants' conduct
27 as alleged herein, Plaintiffs have suffered damage and injury including, without
28 limitation, loss of use, exploitation and commercialization of the RIN TIN TIN

intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of reputation and goodwill, professional acknowledgment and credits, and public fame, all according to proof.

205.   As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Plaintiffs have incurred and continues to incur attorneys' fees and costs, which Plaintiffs are entitled to recover from Defendants as damages under the third party/tort of another theory, according to proof.

206.   Plaintiffs are informed and believe, and on that basis allege, that Defendants' unlawful conduct as alleged herein, was deliberate, despicable and malicious, undertaken with a conscious and utter disregard of Defendants' statutory and common law obligations to Plaintiffs, in complete disregard of Plaintiffs' intellectual property rights and with a clear intention of depriving Plaintiffs of the value and use of such rights, all to Defendants' own benefit. Defendants' despicable conduct has subjected and continues to subject Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights so as to justify an award of exemplary and punitive damages, according to proof. Plaintiffs are informed and believe, and on that basis allege, that the unlawful conduct of each Defendant was authorized and/or ratified by the remaining Defendants.

207.   Defendants' unlawful conduct, as alleged herein, is continuing, as is the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to address the continuing harm caused to Plaintiffs by Defendant's ongoing wrongful and unlawful interference, as alleged herein.  Plaintiffs are therefore entitled to injunctive relief, on statutory, common law and/or equitable grounds, to enjoin Defendants' continuing unlawful conduct.

## COUNT XVII

### [Negligent Interference with Prospective Economic Advantage]

208.   Plaintiffs repeat and incorporate by reference the allegations of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 43

1 | Paragraphs 1 through 198 of this Complaint as if fully set forth herein.

2 | 209. Plaintiffs are informed and believe, and on that basis allege, that
3 | Defendants knew or should have known of Plaintiffs' prospective economic
4 | advantage in the exploitation of the iconic fictional German Shepherd character
5 | named Rin Tin Tin and the mark RIN TIN TIN.

6 | 210. Defendants negligently interfered with said opportunities by various
7 | acts including, but not limited to, the following:

8 | a. Defendants' prior and continuing misappropriation of Plaintiff's
9 | exclusive right to exploit the iconic fictional German Shepherd character named
10 | Rin Tin Tin, as alleged herein;

11 | b. Defendants' prior and continuing unauthorized use of the mark
12 | RIN TIN TIN, as alleged herein;

13 | c. Defendants' prior and continuing copyright infringement, as
14 | alleged herein;

15 | d. Defendants' prior and continuing false association, as alleged
16 | herein;

17 | e. Defendants' prior and continuing false endorsement, as alleged
18 | herein;

19 | f. Defendants' prior and continuing trademark infringement, as
20 | alleged herein.

21 | 211. Plaintiffs are informed and believe, and on that basis allege, that
22 | Defendants' conduct was committed with specific intent to further their own
23 | pecuniary interest and to reap unfair financial gains in violation of the trust placed
24 | in them by the public, and Defendants should have known all the while of the
25 | damage that would be sustained by Plaintiffs.

26 | 212. The aforementioned acts of Defendants were wrongful and tortuous
27 | independent of the interference itself for the reasons alleged above.

28 | 213. As a direct, proximate and foreseeable result of Defendants' conduct

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 44

1   as alleged herein, Plaintiffs have suffered damage and injury including, without
2   limitation, loss of use, exploitation and commercialization of the RIN TIN TIN
3   intellectual property, diminution in value of the RIN TIN TIN intellectual property,
4   loss of earnings, earning capacity and profits, loss of reputation and goodwill,
5   professional acknowledgment and credits, and public fame, all according to proof.

6       214.   As a further direct, proximate and foreseeable result of Defendants'
7   conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys'
8   fees and costs, which Plaintiffs are entitled to recover from Defendants as damages
9   under the third party/tort of another theory, according to proof.

10      215.   Defendants' unlawful conduct, as alleged herein, is continuing, as is
11  the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to
12  address the continuing harm caused to Plaintiffs by Defendant's ongoing wrongful
13  and unlawful interference, as alleged herein.  Plaintiffs are therefore entitled to
14  injunctive relief, on statutory, common law and/or equitable grounds, to enjoin
15  Defendants' continuing unlawful conduct.

16                              **COUNT XVIII**
17                  **[Breach of Contract – Settlement Agreement]**

18      216.   Plaintiffs repeat and incorporate by reference the allegations of
19  Paragraphs 1 through 215 of this Complaint as if fully set forth herein.

20      217.   Plaintiffs and their predecessors-in-interest have performed all acts,
21  covenants and conditions required of them under the <u>Leonard v. Hereford</u>
22  Settlement except those, if any, excused and/or made impossible or impracticable
23  by the unlawful and wrongful acts of Hereford and her successors-in-interest.

24      218.   By their acts as alleged hereinabove, Defendants have breached – and
25  continue to breach – the <u>Leonard v. Hereford</u> Settlement.

26      219.   As a direct, proximate and foreseeable result of Defendants' conduct
27  as alleged herein, Plaintiffs have suffered damage and injury including, without
28  limitation, loss of use, exploitation and commercialization of the RIN TIN TIN

1   intellectual property, diminution in value of the RIN TIN TIN intellectual property,

2   loss of earnings, earning capacity and profits, loss of reputation and goodwill,

3   professional acknowledgment and credits, and public fame, all according to proof.

4      220.   As a further direct, proximate and foreseeable result of Defendants'

5   conduct as alleged herein, Plaintiffs have incurred and continue to incur attorneys'

6   fees and costs, which Plaintiffs are entitled to recover from Defendants as damages

7   under the third party/tort of another theory, according to proof.

8      221.   Defendants' unlawful conduct, as alleged herein, is continuing, as is

9   the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to

10  address the continuing harm caused to Plaintiffs by Defendant's ongoing wrongful

11  and unlawful interference, as alleged herein.  Plaintiffs are therefore entitled to

12  injunctive relief, on statutory, common law and/or equitable grounds, to enjoin

13  Defendants' continuing unlawful conduct.

## COUNT XX

### [Specific Performance of Settlement Agreement]

16     222.   Plaintiffs repeat and incorporate by reference the allegations of

17  Paragraphs 1 through 221 of this Complaint as if fully set forth herein.

18     223.   Hereford received legally adequate consideration for her promises

19  under the Leonard v. Hereford Settlement, which settlement and agreement were

20  just and reasonable to the parties thereto.

21     224.   Plaintiffs and their predecessors-in-interest have performed all acts,

22  covenants and conditions required of them under the Leonard v. Hereford

23  Settlement except those, if any, excused and/or made impossible or impracticable

24  by the unlawful and wrongful acts of Hereford and her successors-in-interest.

25     225.   By their acts as alleged hereinabove, Defendants have breached – and

26  continue to breach – the Leonard v. Hereford Settlement.

27     226.   Defendants' breach, as alleged herein, is continuing, as is the harm to

28  Plaintiffs caused thereby.  Plaintiffs have no sufficient or adequate remedy at law

to address the past and continuing harm caused to Plaintiffs by Defendant's ongoing wrongful and unlawful breach, and the consequences thereof. Plaintiffs are therefore entitled to specific performance of the terms of <u>Leonard v. Hereford</u> Settlement, and hereby request that the court issue an Order requiring Defendants, and each of them, to perform the terms of the <u>Leonard v. Hereford</u> Settlement.

## COUNT XX

**[Rescission - Failure of Consideration, Fraud, Promissory Fraud, Estoppel]**

227.   Plaintiffs repeat and incorporate by reference the allegations of Paragraphs 1 through 226 of this Complaint as if fully set forth herein.

228.   To the extent that one or more Defendants may assert that the purported <u>Kleven v. Hereford</u> Settlement is relevant to or affects any or all of Plaintiffs' claims herein, such agreement is a nullity and of no force or effect for the reasons set forth below.

229.   Defendants have so wholly breached and disregarded the purported <u>Kleven v. Hereford</u> Settlement agreement the consideration for the obligation has failed, in whole or in part, through the fault of Defendants.

230.   In addition, Defendants, by and through Hereford, expressly and materially represented to Kleven that Defendants held a registered trademark in the name of Rin Tin Tin for entertainment services in the field of motion pictures featuring a German Shepherd dog in class 041 (the "Motion Picture Trademark Rights"), and that Defendants would surrender and transfer said Motion Picture Trademark Rights to Kleven.

231.   The representation was false and Defendants knew it was false at the time the representation was made.

232.   In truth and in fact, Defendants held no such Motion Picture Trademark Rights, and thus, could not surrender and transfer same to Kleven.

233.   Kleven was ignorant of the falsity of said representation and relied upon said representation to his detriment. Kleven's reliance upon Defendants'

1  representation was reasonable and justified based upon the assurances of
2  Defendants.

3      234.   In addition, Defendants, by and through Hereford, made a promise to
4  Kleven to surrender and transfer to Kleven the Motion Picture Trademark Rights
5  without any intention of performing said promise.

6      235.   Such promise was made by Defendants, by and through Hereford,
7  with intent to deceive or with intent to induce Kleven to enter into such agreement.

8      236.   Kleven reasonably and justifiably relied on such promise, to his
9  detriment.

10     237.   Defendants did not, in fact, perform (as they had all the while secretly
11 intended) and Kleven suffered damage and injury as a proximate result thereof.

12     238.   Furthermore, by Defendants' conduct subsequent to the purported
13 Kleven v. Hereford Settlement agreement, including, without limitation, agreeing
14 to and purporting to surrender and transfer to Kleven Motion Picture Trademark
15 Rights which rights Defendants did not hold and knew they did not hold, and
16 subsequently purporting to formally register with the United States Patent and
17 Trademark Office such rights in their own name, Defendants are estopped,
18 equitably and judicially, from asserting that any such agreement exists, or is in
19 effect or is binding in any manner or otherwise asserting anything with regard to
20 such an agreement other than it is a nullity, unenforceable and of no force and
21 effect.

22     239.   Moreover, To the extent that one or more Defendants may assert that
23 the purported Kleven v. Hereford Settlement is relevant to or affects any or all of
24 Plaintiffs' claims herein, Plaintiffs hereby declare such purported settlement and
25 the purported agreement rescinded and of no force and effect.  Plaintiffs intend the
26 service of this Complaint to constitute notice of such rescission.

27 ///
28 ///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 48

## COUNT XXI

### [Elder Financial Abuse – Cal. Welfare & Institutions Code § 15610.30]

240. Kleven repeats and incorporates by reference the allegations of Paragraphs 1 through 239 of this Complaint as if fully set forth herein.

241. Kleven in 80 years old. By reason of the conduct of Defendants as alleged hereinabove, Defendants, and each of them, have committed financial elder abuse against Kleven, as defined and enumerated in California Welfare & Institutions Code § 15610.30.

242. As a direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Kleven has suffered damage and injury including, without limitation, loss of use, exploitation and commercialization of the RIN TIN TIN intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of reputation and goodwill, professional acknowledgment and credits, and public fame, all according to proof.

243. As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Kleven has suffered injury to Kleven's person and psyche including, without limitation, great and severe emotional distress, according to proof.

244. As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Kleven has incurred and continues to incur attorneys' fees and costs, which Kleven is entitled to recover from Defendants as damages under the third party/tort of another theory, according to proof.

245. As a further direct, proximate and foreseeable result of Defendants' conduct as alleged herein, Kleven has incurred and continues to incur attorneys' fees and costs, which Kleven is entitled to recover from Defendants pursuant to Welfare & Institutions Code § 15657.5, according to proof.

246. Kleven is informed and believes, and on that basis alleges, that

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 49

1  Defendants' unlawful conduct as alleged herein, was deliberate, despicable and
2  malicious, undertaken with a conscious and utter disregard of Defendants'
3  statutory and common law obligations to Kleven, in complete disregard of
4  Kleven's intellectual property rights and with a clear intention of depriving Kleven
5  of the value and use of such rights, all to Defendants' own benefit. Defendants'
6  despicable conduct has subjected and continues to subject Kleven to cruel and
7  unjust hardship in conscious disregard of Kleven's rights so as to justify an award
8  of exemplary and punitive damages, according to proof. Kleven is informed and
9  believes, and on that basis alleges, that the unlawful conduct of each Defendant
10 was authorized and/or ratified by the remaining Defendants.

11     247.   Defendants' unlawful conduct, as alleged herein, is continuing, as is
12 the harm to Plaintiffs caused thereby. Plaintiffs have no adequate remedy at law to
13 address the continuing harm caused to Plaintiffs by Defendant's ongoing wrongful
14 and unlawful interference, as alleged herein.  Plaintiffs are therefore entitled to
15 injunctive relief, on statutory, common law and/or equitable grounds, to enjoin
16 Defendants' continuing unlawful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

### As to all Plaintiffs

1.     Injunctive relief prohibiting all Defendants including, without
limitation, Hereford, Rin Tin Tin, Inc. and Belleair, their officers, directors, agents,
principals, divisions, representatives, servants, employees, associates, subsidiaries,
affiliates, attorneys, successors and assigns, and all persons acting by, through,
under or in active concert or in participation with or controlled, either directly or
indirectly, by any of them, from using the mark RIN TIN TIN, or any confusingly
similar variation thereof, as, or as a component of, a trademark, trade name or
otherwise, in conjunction with the advertising, promoting, marketing, offering, or
selling of goods and/or services in the United States, and from otherwise infringing

1   the marks;

2        2.    Injunctive relief prohibiting all Defendants including, without

3   limitation, Hereford, Rin Tin Tin, Inc. and Belleair, their officers, directors, agents,

4   principals, divisions, representatives, servants, employees, associates, subsidiaries,

5   affiliates, attorneys, successors and assigns, and all persons acting by, through,

6   under or in active concert or in participation with or controlled, either directly or

7   indirectly, by any of them, from copying or displaying the name or likeness of the

8   iconic fictional German Shepherd character named Rin Tin Tin, or any

9   substantially version of the same, in conjunction with the advertising, promoting,

10   marketing, offering, or selling of goods and/or services in and from the United

11   States;

12        3.    Injunctive relief requiring all Defendants including, without

13   limitation, Hereford, Rin Tin Tin, Inc. and Belleair  , their officers, directors,

14   agents, principals, divisions, representatives, servants, employees, associates,

15   subsidiaries, affiliates, attorneys, successors and assigns, and all persons acting by,

16   through, under or in active concert or in participation with or controlled, either

17   directly or indirectly, by any of them, to remove all appearances of the mark RIN

18   TIN TIN from any and all Internet Websites, advertisements, and other marketing

19   or promotional materials;

20        4.    The transfer of the Internet website www.rintintin.com, and any

21   other Internet website featuring the mark RIN TIN TIN, from Defendants to

22   Plaintiffs;

23        5.    Cancellation of all United States trademark applications and

24   registrations for the mark RIN TIN TIN held by Defendants;

25        6.    Issuance of an Order requiring Defendants, and each of them, to

26   perform the terms of the Leonard v. Hereford Settlement;

27        7.    An accounting for all profits acquired by Defendants through the sales

28   of goods or apparel sold in conjunction with the unlawful use of the mark RIN TIN

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF – Page 51

1  TIN;

2      8.    An award of such monetary remedies as the Court finds appropriate to
3  compensate Plaintiffs for the damages Plaintiffs have suffered as a consequence of
4  Defendants' unlawful acts, including, without limitation, loss of use, exploitation
5  and commercialization of the RIN TIN TIN intellectual property, diminution in
6  value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity
7  and profits, loss of business, reputation and goodwill, loss and diminution of
8  professional acknowledgments, industry and public credits and acclaim, all
9  according to proof, as well as all of Defendants' profits attributable to such
10  unlawful acts, according to proof;

11      9.    An award of monetary damages in the amount of no less than five
12  million dollars ($5,000,000.00);

13      10.    An award of treble damages or other enhanced monetary remedies to
14  Plaintiffs, according to proof;

15      11.    A finding that the infringement by Defendants was intentional and
16  willful;

17      12.    A finding that to the extent that parties have, at any time, reached an
18  agreement that is relevant to any or all of the above-mentioned subject matter, such
19  agreement has been and is rescinded and of no force and effect, by reason of a
20  failure of consideration, according to proof;

21      13.    A finding that to the extent that parties have, at any time, reached an
22  agreement that is relevant to any or all of the above-mentioned subject matter, such
23  agreement has been and is rescinded and of no force and effect, by reason of
24  Defendants' fraud;

25      14.    An award of attorneys' fees and costs as damages under the third
26  party/tort of another theory, according to proof;

27      15.    An award of attorneys' fees and costs to Plaintiffs, according to
28  proof;

16.     An award of punitive damages in the amount the Court deems just and appropriate;

17.     Such further relief as the Court may deem just and appropriate.

### As to Plaintiff Kleven Only (Count XX)

18.     An award of such monetary remedies as the Court finds appropriate to compensate Kleven for the damages Kleven has suffered as a consequence of Defendants' unlawful acts, including, without limitation, loss of use, exploitation and commercialization of the RIN TIN TIN intellectual property, diminution in value of the RIN TIN TIN intellectual property, loss of earnings, earning capacity and profits, loss of business, reputation and goodwill, loss and diminution of professional acknowledgments, industry and public credits and acclaim, all according to proof, as well as all of Defendants' profits attributable to such unlawful acts, according to proof;

19.     An award of damages sufficient to compensate Kleven for injury to Kleven's person and psyche including, without limitation, great and severe emotional distress, according to proof;

20.     An award of attorneys' fees and costs as damages under the third party/tort of another theory, according to proof;

21.     An award of attorneys' fees and costs to Kleven pursuant to California Welfare & Institutions Code § 15657.5, according to proof;

22.     An award of attorneys' fees and costs to Plaintiffs, according to proof;

23.     An award of punitive damages in the amount the Court deems just and appropriate;

24.     Such further relief as the Court may deem just and appropriate.

///

///

///

1

## DEMAND FOR JURY TRIAL

2   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demand is

3   hereby made for trial by jury on all issues triable to a jury.

4        Dated: April 19, 2013        LAW OFFICE OF KEVIN M.  WELCH

5

6                                     By: _____

7                                         Kevin M.  Welch

8                                     LAW OFFICE OF KEVIN M.  WELCH
9                                     Kevin M.  Welch, Esq.  (SBN 254565)
                                      *kevin@kmwlawoffice.com*
10                                    P.O.  Box 494
11                                    Hermosa Beach CA 90254-0494
                                      Tel.: 310-929-0553   Fax: 310-698-1626
12
13                                    LAW OFFICE OF DAVID L.  GERNSBACHER
                                      David L.  Gernsbacher, Esq.  (SBN 089596)
14                                    *dgernsbacher@dlglaw.com*
15                                    9107 Wilshire Boulevard Suite 450
                                      Beverly Hills CA 90210-5535
16                                    Tel.: 310-550-0125   Fax: 310-550-0608

17                                    Attorneys for Plaintiffs Max Kleven and Rin, Inc.

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3

4

5  HERBERT D. LEONARD,       )  Case No. CV94-2281 CBM
                       )
6             Plaintiff,  )  Los Angeles, California
                       )
7  vs.                    )  Monday,
                       )  January 8, 1996
8  DAPHNE HEREFORD, et al.,   )
                       )
9            Defendants. )

10

11      TRANSCRIPT OF EXCERPTED PORTION OF PROCEEDINGS
        BEFORE THE HONORABLE CONSUELO B. MARSHALL
12            UNITED STATES DISTRICT JUDGE

13  APPEARANCES:

14  For the Plaintiff:        JAMES P. TIERNEY, ESQ.
                      MALCOLM LOEB, ESQ.
15                    100 Wilshire Boulevard
                      Suite 1200
16                    Santa Monica, California
                        90401
17

  For the Defendants:       MARC E. HANKIN, ESQ.
18                    CHRISTOPHER C. LARKIN, ESQ.
                      801 South Figueroa Street
19                    14th Floor
                      Los Angeles, California
20                      90017-5554

21                    DAVID M. O'BRIAN, ESQ.
                    Lam, Camarillo & Moore
22                    4 Houston Center
                    1331 Lamar, Suite 1160
23                    Houston, Texas  77010

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

ii

1    Court Recorder:              Carmen Reyes
                                  United States District Court
2                                 312 North Spring Street
                                  Room 442A
3                                 Los Angeles, California   90012

4    Transcriber:                 Karen S. Johanson
                                  Echo Reporting, Inc.
5                                 225 Broadway, Suite 350
                                  San Diego, California   92101
6                                 (619) 238-5173

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1  <u>LOS ANGELES, CALIFORNIA   MONDAY, JANUARY 8, 1996</u>

2                          --oOo--

3      (Call to order of the Court.)

4      (Portion of proceedings omitted.)

5           MR. TIERNEY:  James Tierney and Malcolm Loeb for

6  the Plaintiff.

7           THE COURT:  Good afternoon.

8           MR. LOEB:  Good afternoon, your Honor.  Malcolm

9  Loeb on behalf of Plaintiff, Herbert B. Leonard.

10          THE COURT:  Good afternoon.

11     (Pause.)

12          MR. HANKIN:  Good afternoon, your Honor.  Marc

13 Hankin, Chris Larkin, and David O'Brian, on behalf of

14 Defendants Rin Tin Tin, Inc. and Daphne Hereford.

15          THE COURT:  Good afternoon.

16          MR. HANKIN:  Your Honor, we are down to one very

17 minor provision in a settlement agreement.  We have -- we

18 intended to come here and read to you six proposed findings

19 and five or six or seven elements of a consent judgment that

20 we would enter, with a confidential settlement agreement to

21 be entered at a later time.  We would present the findings

22 to your Honor today.  Plaintiff's counsel would then

23 stipulate to them.

24          We'd ask you to ask Ms. Hereford to stipulate to

25 them because, of course, the motion to withdraw as counsel

2

1   sheds some light on whether our advice would be, you know,
2   satisfactory. So this way if she agrees in court that would
3   get by that issue.

4          In any event, we are down to one very minor issue
5   which we may or may not be able to resolve, but what I'd
6   like to do is I would like to read everything into the
7   record, and then put that one issue at play and we'll either
8   get Plaintiffs to agree to keep that until the confidential
9   settlement agreement, we or you will get our client to agree
10  to it at this time, or the whole deal will be off and we'll
11  go to trial in February or whenever your Honor can hear it.

12         But it would be a shame for us to have spent all
13  day here and taken as much of your time as we have to not
14  come through with the settlement that we've worked so hard
15  to do because of this one sub-A provision.

16         So, with your Honor's permission, I'd like to read
17  this into the record and then ask for stipulations to each
18  part separately, and ask if your Honor would agree to it.
19      (Pause.)

20         THE COURT: Do you expect that as to the findings
21  that you want to read in the record that you will get
22  stipulations as to those from the opposing counsel, and
23  you're just asking if the Court will accept those
24  stipulations?

25         MR. HANKIN: Yes, your Honor. We worked them out

1   around the table in the table in the attorneys' lounge
2   together so that the specific language was proposed by
3   Defendants' counsel, but modified in certain respect by
4   Plaintiff's counsel.
5          THE COURT:  And then you would plan to reduce it
6   to writing at some point and file it with the Court?
7       (Pause.)
8          MR. HANKIN:  Yes, your Honor, we would do it in a
9   stipulation for request of entry of final judgment by
10  consent, which would have proposed findings, including the
11  ones that I'm not going to read today regarding
12  jurisdiction, et cetera, you know, the boilerplate findings
13  which are very important in the interest of justice, but not
14  to the negotiation itself.
15         Of course, there would be the general releases,
16  the waiver of section 1542, all those other provisions, you
17  know, no appeal, this sort of thing, continuing jurisdiction
18  of your Honor to enforce the consent judgment.
19         In any event, we've worked out the proposed
20  findings.  We've worked out the terms of the consent
21  judgment with the one still to be worked out, and we've
22  worked out additional terms which would not be put on the
23  record in public, but rather reduced to writing as part of a
24  confidential settlement agreement that would be the
25  cornerstone to the entire entry of consent judgment, and

4

1   that that would be worked out by the lawyers in their
2   offices.

3           In fact, Defendants' counsel has volunteered to do
4   the first draft of that.

5           THE COURT:  Okay.  All right.  Excuse me for a
6   moment.

7       (Pause.)

8           THE COURT:  All right, counsel may proceed.

9           MR. HANKIN:  Okay.  The confidential settlement
10  agreement that we would enter would authorize the entry of
11  final judgment, would grant the standard mutual general
12  leases, would provide for Daphne Hereford's participation in
13  royalty licensing only upon certain agreed terms, and would
14  acknowledge that Herbert B. Leonard has all merchandising
15  rights, except as otherwise agreed to in the settlement
16  agreement.

17          The six proposed findings would be as follows,
18  your Honor.  One, Herbert B. Leonard has common law
19  trademark rights in Rin Tin Tin.

20          Two, Daphne Hereford has bred, raised, trained,
21  and sold German Shepherd dogs descended from Rin Tin Tin IV
22  since at least as early as 1977.

23          Three, Rin Tin Tin IV was sired by Rin Tin Tin 2
24  and is not a genetic descendant of the original Rin Tin Tin
25  brought back from Europe by Lee Duncan.

5

1      Four, Herbert B. Leonard was assigned rights in

2  the Rin Tin Tin mark and character by Lee Duncan in the

3  1950s.

4      Five, Herbert B. Leonard acquired all residual

5  rights from Ima Duncan in the Rin Tin Tin mark and character

6  pursuant to certain agreements dated April 4, 1978.

7      And, six, so long as Daphne Hereford's use of the

8  Rin Tin Tin mark is limited to identifying her dogs as

9  descendants of Rin Tin Tin IV in connection with the

10  breeding, raising, training, and selling of German Shepherd

11  dogs, such use is not likely to cause confusion with Herbert

12  B. Leonard's use of the Rin Tin Tin mark and character.

13      And that is the conclusion of the proposed

14  findings, with, of course, the additions I mentioned

15  earlier, jurisdiction, et cetera.

16      THE COURT:  Okay.  And the Plaintiffs would so

17  stipulate that it would be appropriate for the Court to make

18  those findings?

19      MR. TIERNEY:  Yes, your Honor.

20      THE COURT:  And the Court then would accept the

21  stipulation and would, in fact, make those findings so that

22  they do become the Court's factual findings.

23      MR. HANKIN:  Thank you, your Honor.  The terms of

24  the consent judgment -- again, there would be the separate

25  confidential settlement agreement which would have

1  additional terms. The terms of the consent judgment would

2  be:

3         One, Plaintiff dismisses the complaint with

4  prejudice.

5         Two, Defendant dismisses the counter claims with

6  prejudice.

7         Three, Daphne Hereford assigns the Rin Tin Tin fan

8  club service mark in class 42 to Herbert B. Leonard.

9         Four, Herbert B. Leonard grants Daphne Hereford a

10  royalty-free, non-exclusive license in perpetuity. And, of

11  course, in the written agreement there would be the heirs,

12  assigns, et cetera, language on both Herbert B. Leonard and

13  Daphne Hereford -- in perpetuity for use of the Rin Tin Tin

14  mark in connection with fan club services, provided that she

15  identifies such fan club as being under license from Herbert

16  B. Leonard.

17         And, then five -- and I think I'm going to break

18  this up into three separate ones, which would be provisions,

19  again, in writing. It may be A, B, and C. But, in any

20  event, these three are all part of consent to a permanent

21  injunction which would have the following two agreed-upon

22  points, and then the third point which is as of yet not

23  quite worked out.

24         For lack of a better way of saying it, A, Daphne

25  Hereford shall not state or imply that her dogs are

7

1    affiliated with any of Herbert B. Leonard TV shows or movies
2    without written permission of Herbert B. Leonard, other than
3    to state that Rin Tin Tin IV was one of four dog actors in
4    the Rin Tin Tin series of the 1950s.

5          B, Daphne Hereford may not represent that any dogs
6    bred, raised, trained, or sold by her were used in any Rin
7    Tin Tin TV show or Rin Tin Tin movie, unless it becomes true
8    in the future.

9          And at that point I think our client would agree
10   to those provisions.  There's an additional provision that
11   Plaintiff's counsel would like that Ms. Hereford has not
12   agreed to that we're trying to work out.  The sense of
13   dispute stems to one over stationery, your Honor.  In the
14   declaration of Daphne Hereford you have some examples of her
15   stationery as Exhibits 1 and 2, where she talks about the
16   Rin Tin Tin with a circle R, which, of course, if her
17   trademark that she's retaining and not assigning to Mr.
18   Leonard.

19         And then there's three other statements, Rin Tin
20   Tin circle R German Shepherds, Rin Tin Tin circle R fan
21   club, Rin Tin Tin, Incorporated.

22         She has a corporation under Texas law, Rin Tin
23   Tin, Incorporated, and there's no reason why she should have
24   to change the name of her corporation.  She has a mark in
25   connection with the breeding, raising, training, and selling

8

1   line German Shepherd dogs of Rin Tin Tin and she doesn't
2   feel there's any reason why she has to change that.

3          But as far as Rin Tin Tin German Shepherds, as
4   part of the settlement agreement she has agreed to state
5   either with a comma or dashes -- we will work out the
6   specific punctuation -- something to the effect of, "Selling
7   line-bred descendants of Rin Tin Tin IV."  In other words,
8   making it very clear these are not the, quote, "original Rin
9   Tin Tin" from the 19-teens and 1920s, but Rin Tin Tin IV.

10         And, as far as the fan club, because it's a
11  license, a non-exclusive license, from Mr. Leonard, it would
12  be something to the effect of, "Rin Tin Tin circle R fan
13  club, under license from Herbert B. Leonard."

14         However, the provision that Plaintiff's counsel is
15  insisting upon would be inconsistent with certain respects
16  with her doing that in terms of her stationery.  She's got a
17  few boxes of this sitting at her house where she would print
18  stuff up and the specific language they had asked for is as
19  follows:

20              "Daphne Hereford may not use the Rin Tin
21              Tin mark, except with a Roman Numeral to
22              describe her dogs as line-bred
23              descendants of Rin Tin Tin IV."

24         Now, she has agreed that in commerce she's only
25  going to sell Rin Tin Tin IV descendants.  And she's agreed

1  to assign the trademark -- excuse me, I misspoke    the
2  service mark for fan clubs to Mr. Leonard with a non-
3  exclusive license back so that she puts in the -- I don't
4  know if it's a disclaimer or statement of affiliation, but,
5  in any event, "Under license from Herbert B. Leonard."

6          But she has maintained her trademark right in the
7  class 37 live German Shepherd mark and she is of the opinion
8  that she need not put a IV every time she uses the word Rin
9  Tin Tin.

10         For example, as your Honor surely knows, the
11  trademark office would not accept this as a specimen of
12  trademark use, because you cannot claim that letterhead,
13  stationery, business cards are evidence of trademark use.
14  It must be a hang tag, a label, a promotional material,
15  something used in connection with the provision of the sale
16  of goods or services in commerce in the U.S.

17         So, trademark use doesn't come out of stationery
18  and she doesn't want to have to modify her stationery with
19  the disclaimer for the German Shepherds being Rin Tin Tin IV
20  and the disclaimer for the fan club being under license from
21  Herbert B. Leonard.

22         She doesn't want to have to modify everything.
23  She feels she's given up one of her trademarks, her service
24  mark.  She feels she's given up a lot of other rights.  She
25  understands that she's Defendant, but whether she would have

10

1   won any motion or won a trial -- these issues are part of a
2   settlement and the bottom line is she just doesn't think
3   that she needs to go that one extra step until the
4   negotiation of the confidential settlement agreement, at
5   which point the lawyers can negotiate proper language for
6   the stationery.

7          But she would like to have it entered as I've
8   read, stopping after A and B, and not continuing with C.  I
9   would ask, your Honor, to confirm with Ms. Hereford that
10  that is, in fact, her intention and her wishes, if your
11  Honor would be so inclined.

12         (Pause.)

13         THE COURT:  All right, can I hear from the Defense
14  just on this one issue that you're not able to -- I mean,
15  the Plaintiffs -- just on this one issue that you aren't
16  able to resolve.

17         MR. TIERNEY:  Yes, your Honor.  Your Honor, to put
18  this discussion in context, we sat upstairs for an hour and
19  we all agreed to A, B, and C.

20         A is an integral part of the agreement because
21  what it does is says that Ms. Hereford cannot use Rin Tin
22  Tin as a stand alone.  When she uses Rin Tin Tin it has to
23  be coupled with Roman Numeral IV and she's got to put in
24  like a disclaimer to explain that it means that she's got
25  the rights to -- the breeding rights to Rin Tin Tin the

11

1   fourth.

2           So, the parties -- the counsel had agreed.  We all

3   had an agreement.  Now, to say that I'm suggesting it is not

4   true.  We came downstairs and Ms. Hereford says, "I've got

5   two boxes of stationery.  What am I going to do?"

6           Well, we have an agreement.  The touchstone is you

7   can't use Rin Tin Tin as a stand alone, and that's what

8   she's been doing and that's what we've been objecting to.

9       (Pause.)

10          THE COURT:  All right.  And so to resolve the C

11  you wish to have the Court either issue an order thereon,

12  or, if the Court is not so inclined, then it would be to

13  effect the agreement that the parties have entered into to?

14          MR. TIERNEY:  Yes, your Honor.  It was A, and it

15  was the -- it was the benefit -- the essence of the

16  agreement that we had entered into.

17          THE COURT:  Okay.  What is the language that the

18  Plaintiff's seek be included in C, because it's not clear to

19  me now?  The A and B I understand not to be a problem.  It's

20  the C language.  What is the language that Plaintiff's want?

21          MR. HANKIN:  The specific language, your Honor,

22  is, "Daphne Hereford may not use the Rin Tin Tin mark,

23  except with a Roman Numeral to describe her dogs" --

24          MR. TIERNEY:  Roman Numeral IV.

25          MR. HANKIN:  -- "with Roman Numeral IV, with a

12

1   Roman Numeral, to describe her dogs as line-bred descendants

2   of Rin Tin Tin IV", IV being, of course, I-V, the Roman

3   Numeral capitals.

4          THE COURT:  Okay.

5          MR. HANKIN:  Now, your Honor, I don't want to take

6   too much time, just one --

7          THE COURT:  Well, I don't have any more time.

8          MR. HANKIN:  Thank you, your Honor.

9     (Pause.)

10         THE COURT:  And the Court would say this, that

11  that is consistent with the order that the Court would have

12  made.  Had the Court ruled on the motion for summary

13  judgment, the Court would have restricted the use under

14  circumstances when the IV, the Roman Number IV, is used with

15  the Rin Tin Tin mark.  That's consistent with what the

16  Defendant was doing and it's consistent, in the opinion,

17  with what the Defendant now wants to continue doing.

18        It's just a question of stationery and what do you

19  do about the stationery?  The Defendant has the choice.  She

20  can either start all over again with new stationery, or use

21  the stationery that she has by marking some modification

22  thereto.  And so that would be the Court's order.

23        Now, the Court should inquire of the Defendant as

24  to whether she understands the terms and conditions.  The

25  Court understands that she doesn't agree to the last item

13

1  that we've discussed, but as to everything else --

2      MR. TIERNEY:  Your Honor, I do have one comment to

3  another provision.  It will just take a second.

4      (Pause.)

5      THE COURT:  Could I -- I would really just ask to

6  be excused so I can go up to Judge Tashima's ceremony and

7  then come back.  I don't want to rush the parties.  I think,

8  as you said, you've been here quite a long time and you've

9  worked diligently on this.  So I'd be inclined to just take

10  15 or 20 minutes, go upstairs, come back, and we could

11  finish this when I come back, unless you think we can do it

12  just really quickly.

13      MR. HANKIN:  Fine, your Honor, thank you.  We'll

14  see you after you're done with Judge Tashima's swearing in.

15      THE COURT:  Okay.  We'll be in recess.  It will be

16  about 20 minutes.

17      MR. HANKIN:  Thank you, your Honor.

18      (Proceedings recessed from 4:26 p.m. to 5:11 p.m.)

19      THE COURT:  We can go back on the record.  First,

20  I just apologize to the parties and to counsel, but we did

21  have an event that only takes place once in a lifetime.  So

22  it's not the kind of thing that you can miss and make it up

23  another time.  So thank you very much for extending me that

24  courtesy.

25      MR. HANKIN:  Only once in his lifetime, your

14

1    Honor.  Maybe your Honor will be so blessed one day.

2         THE COURT:  Well, I'll only be able to attend his

3    ceremony once in a lifetime.

4         MR. HANKIN:  Right.

5         MR. TIERNEY:  Well, your Honor, we needed every

6    minute, as a matter of fact.  We just, within the last two

7    minutes, worked out the final language of our stipulation.

8         THE COURT:  All right.  So now are we ready to put

9    some other things on the record before the Court makes

10   inquiry of the Defendant?

11        MR. HANKIN:  Your Honor, there's an additional

12   provision that I did not read.  I thought we'd put it in the

13   confidential settlement agreement, but we'd like to put it

14   in part of the consent judgment on the record.  And we've

15   worked out the language, I believe, on this disputed C.

16        THE COURT:  Okay.

17        MR. HANKIN:  But before I continue with that, or

18   before the lawyers do anything, Ms. Hereford would like to

19   speak to your Honor, if that's possible, and ask a question

20   and explain what she believes to be a problem with this.

21   She's asked for that right and I have no reason why she

22   shouldn't, but if your Honor will entertain that, I'd like

23   to let her do that.

24        THE COURT:  Well, what I thought I might do is

25   I'll let counsel finish.  And, of course, the Court does

15

1   plan to make inquiry of Ms. Hereford about her understanding

2   of the arrangements that have been reached and the

3   statements that have been made to the Court just to make

4   sure that she understands this and that she's in agreement

5   with it.  And so, of course, if she had some question or

6   some statement that she wished to make at that time, that

7   would be the appropriate time to do so.

8        As she probably knows, the attorneys talk a lot.

9   So I'm trying to let them finish their words before I

10  inquire of you or before you're heard.  So let's let them

11  finish and then we'll give you an opportunity to be heard.

12       MR. HANKIN:  Thank you, your Honor.  To do this in

13  as few words as possible, I'm going to restate the provision

14  that I previously designated as C.

15       THE COURT:  All right.

16       MR. HANKIN:  "Daphne Hereford may not

17            use the Rin Tin Tin mark, except with

18            the Roman Numeral IV, I-V, to describe

19            her dogs as line-bred descendants of Rin

20            Tin Tin IV; acceptable uses are Rin Tin

21            Tin, R in a circle, IV German Shepherds,

22            and/or Rin Tin Tin, R in a circle, under

23            license from Herbert B. Leonard."

24       And that, your Honor -- that's a period, but then

25  that's all separate from the separate issue of Rin Tin Tin

16

1    fan clubs, under license of Herbert B. Leonard, which is a

2    different provision, and there's no dispute amongst anyone,

3    including any clients.

4            So that would be the either/or, and this really

5    relates to the stationery.

6            MR. TIERNEY:  Can you repeat that again,

7    please -- the stationery?

8            MR. HANKIN:  The acceptable uses?

9            MR. TIERNEY:  Yes.

10           THE COURT:  Do you wish to have it just played

11   back or do you want counsel to state it?

12           MR. TIERNEY:  Yeah, I just didn't know whether he

13   had put in everything.  Can you just repeat it for the

14   record?

15           MR. HANKIN:  I'll just re-read it off the exact

16   thing I read it off.  "Acceptable uses are Rin Tin Tin, R in

17   a circle [the trademark symbol], IV German Shepherds,

18   and/or" -- in other words, there's two different approved

19   acceptable uses.

20           MR. TIERNEY:  No, stop, stop.  You forgot the,

21   "Line-bred descendants of Rin Tin Tin the fourth."

22           MR. HANKIN:  Oh, okay.  So, "Rin Tin Tin, R in a

23   circle, IV German Shepherds", in connection with a statement

24   that says --

25           MR. TIERNEY:  No, "and" -- it's just not a stand

17

1   alone.  You have to also say, "Line-bred descendants of Rin
2   Tin Tin IV."
3        MR. HANKIN:  Okay.  "Or, alternatively", in other
4   words, it could be different stationery, it could be on the
5   same stationery differently, "Rin Tin Tin, circle R", with
6   the additional statement, "Under license from Herbert B.
7   Leonard."
8        Then, your Honor, that concludes C.  And I'd like
9   to add this additional provision that I had here and I
10  skipped because I misunderstood that it would be part of the
11  confidential settlement agreement, and that provision,
12  agreed by both lawyers and I believe by Ms. Hereford,
13  although you can ask her:
14            "Daphne Hereford consents that Herbert
15            B. Leonard may name dog actors as Rin
16            Tin Tin for any and all entertainment
17            vehicles, including personal
18            appearances, so long as he does not
19            attempt to sell the live German Shepherd
20            dogs as, quote, 'Rin Tin Tin', close
21            quote."
22        And, of course, that will be part of the consent
23  judgment, but as part of the confidential settlement
24  agreement it will be made clear that these cross licenses
25  are all in perpetuity, heirs and assigns, and all royalty

18

1   free, so that there's no money exchanging hands for either

2   this or the Herbert B. Leonard assigning the fan club, or

3   licensing the fan club, or any of those.

4           So that would go in the confidential settlement

5   agreement, but basically that would be that.

6           So, with those two additional provisions, your

7   Honor, I think that concludes the lawyers' work and I would,

8   with your Honor's permission, turn the podium over to Daphne

9   Hereford.

10          MR. TIERNEY:   We heard a mistake in terms

11  of -- you were limiting the films to Herbert B. Leonard

12  and --

13          MR. HANKIN:   Oh, I'm sorry, your Honor.   Prior to

14  C I read an A and a B and I'm going to, I think, re-read A

15  with language that Plaintiff prefers.

16          "Daphne Hereford shall not state or

17          imply that her dogs are affiliated with

18          any Rin Tin Tin TV shows or movies

19          without written permission of Herbert B.

20          Leonard, other than to state that Rin

21          Tin Tin IV was one of the four dog

22          actors in the Rin Tin Tin series in the

23          1950s."

24          Earlier, your Honor -- the only change in that is

25  earlier I had said, "Any of Herbert B. Leonard's TV shows or

19

1   movies", and Plaintiffs have correctly pointed out it should
2   be, "Rin Tin Tin TV shows and movies."  So that's the only
3   change to that part of A.
4            THE COURT:  All right.  The Defendants
5   so -- strike that, I'm sorry.  The Plaintiffs so stipulate?
6            MR. TIERNEY:  Yes, your Honor.
7            THE COURT:  Okay.  And the Court would accept the
8   stipulation as stated on the record and the Court will make
9   some inquiry of Ms. Hereford since she's here.
10           My suggestion is that you might want to just
11  obtain a copy of this transcript for purposes of reducing
12  this to writing.
13           Ms. Hereford, first, I would just congratulate you
14  and congratulate the attorneys on trying to resolve this
15  today.  As I said before I left the bench at lunch time, my
16  feeling was this is a case that needed to be resolved.  I
17  had said that some time ago.  The attorneys had come into
18  the chambers and tried to resolve it, but just were not
19  successful.
20           Your being here today probably assisted in getting
21  this resolved and I know that you came at some inconvenience
22  to yourself, some expense that you would rather have not
23  incurred, but I think it was important that you be here and
24  I'm glad that you have been here to watch the attorneys at
25  work, to see what they were trying to do, to listen to the

20

1  comments of the Court, all directed toward trying to resolve

2  this without having to go through a trial, which, as I

3  indicated before, would be very costly for all involved.

4          You have some questions, so why don't I let you

5  ask your questions first, and then I will ask you some

6  questions?

7          MS. HEREFORD:  Yes, ma'am.  Concerning the Roman

8  Numeral IV issue, while you were gone I tried explaining to

9  the attorneys that I don't think that they really

10  understood, part of them, clearly.

11          When you breed dogs you're governed by the

12  American Kennel Club.  They are the ones that actually issue

13  Roman Numerals.  You can have several dogs bearing the same

14  name in the American Kennel Club that begin with the

15  original name.  Then they will issue a Roman Number II, III,

16  IV, et cetera.

17          By putting the Roman Numeral IV behind Rin Tin

18  Tin, circle R -- excuse me -- yes, ma'am -- "Rin Tin Tin,

19  circle R, IV German Shepherds, line-bred descendants of Rin

20  Tin Tin IV", that would suggest to the American Kennel Club

21  that I own Rin Tin Tin IV, when, in fact, I don't, never

22  have, never said I did.

23          And that's why I was asking the attorneys if

24  it -- on stationery and things that are printed if it would

25  be okay to just say, "Rin Tin Tin, circle R, German

1 | Shepherds", with a line under it, "Line-bred descendants of
2 | Rin Tin Tin IV."  And the attorneys didn't want that.  They
3 | wanted that IV up at the top.

4 |       THE COURT:  Okay, let me stop you for a moment,
5 | and maybe the attorneys could just explain to the Court why
6 | you would disagree, because I was thinking as Ms. Hereford
7 | was talking that maybe it would be better if it said,
8 | "Descendants of Rin Tin Tin IV."

9 |       As I understand it, the dogs that you breed are
10 | descendants of Rin Tin Tin IV.  Am I incorrect?

11 |       MS. HEREFORD:  No, ma'am, you're correct.

12 |       THE COURT:  Okay.  So, if that is the case, is
13 | there a problem using that language, "Descendants of Rin Tin
14 | Tin IV", instead of just "Rin Tin Tin IV"?

15 |       MR. TIERNEY:  We don't have a problem with the
16 | sentence.  Your Honor, that's what the stipulation is.

17 |       THE COURT:  Okay.

18 |       MR. TIERNEY:  But she doesn't want to have "Rin
19 | Tin Tin IV" up on top and that's -- both, I think, her
20 | counsel and our side say that's what our deal was.  That's
21 | what the Court had ruled in terms of the need for the IV.
22 | Her concern is when she writes to the American Kennel Club
23 | and it's got the Roman IV, and we pointed out that she can
24 | use other stationery.  We've given her the right to use Rin
25 | Tin Tin, under license from Mr. Leonard.  She can write on

1   Daphne Hereford stationery.  This is a self-inflicted wound,
2   if, indeed, it is a problem.
3          THE COURT:  Okay.  Well, if I understand what
4   she's saying, and apparently counsel don't have any
5   objection to this, that she use the language "descendant of
6   Rin Tin Tin IV" --
7          MR. TIERNEY:  We don't have a problem with that.
8          THE COURT:   -- as opposed to just saying, "Rin
9   Tin Tin IV."  That sounds to me like what she's asking.  And
10  you don't have a problem --
11         MR. TIERNEY:  I think we agreed to that.  We
12  agreed it was, "Rin Tin Tin, circle R, IV German Shepherds",
13  beneath which, "Line-bred descendants of Rin Tin Tin IV."
14         THE COURT:  I don't know if, Ms. Hereford, you
15  have some difficulty with it that way?
16         MS. HEREFORD:  Well, the only difficulty I would
17  have would be -- what they want is the IV up here at the
18  top.
19         THE COURT:  And you would rather have what at the
20  top?
21         MS. HEREFORD:  And if it says, "Line-bred
22  descendants of Rin Tin Tin IV", that should explain it.
23  Having it at the top would suggest that the mark that I've
24  retained is for Rin Tin Tin IV, and it's not, and it would
25  suggest that I own IV, and I don't.  But if it says, "Line-

1   bred descendants of Rin Tin Tin IV" underneath, wouldn't
2   that be enough?  Why would we have to put two IV's, was my
3   question.

4          THE COURT:  Are you asking whether or not, instead
5   of at the top saying, "Rin Tin Tin, R circle, IV", that the
6   words be, "Descendants of Rin Tin Tin IV"?  Is that your
7   question?

8          MS. HEREFORD:  No, ma'am.  What I would like the
9   top to say is, "Rin Tin Tin, circle R, German Shepherds."
10  Underneath, "Line-bred descendants of Rin Tin Tin IV."

11         THE COURT:  Okay.

12         MS. HEREFORD:  Because they want the IV at the top
13  and the bottom.

14         THE COURT:  And your concern is if the IV is at
15  the top and the bottom, that somehow that will present a
16  problem for the --

17         MS. HEREFORD:  It would suggest to the American
18  Kennel Club and the GSCCA and the other numerous shepherd
19  clubs that I'm involved with that I own Rin Tin Tin IV and
20  own a trademark for Rin Tin Tin IV, and I don't.

21         THE COURT:  Okay.  And we know that that's not the
22  case.

23         MS. HEREFORD:  Yes, ma'am.

24         THE COURT:  So you're thinking that it's
25  misleading to others?

1          MS. HEREFORD:  Yes, ma'am, because I don't own the

2     dog.

3          THE COURT:  If that should be the case, maybe the

4     resolution is to just either attach a copy of this portion

5     of the agreement, or send a letter along with it that says

6     that this is the agreement or the understanding.  I don't

7     know how to actually resolve the problem.

8          MS. HEREFORD:  Does the IV have to be at the top

9     and underneath in two places?

10          THE COURT:  The way that it's stated it sounds

11     like that that's what counsel had in mind.  I think the

12     answer to that is yes.

13          MS. HEREFORD:  And that can't be changed?

14          THE COURT:  Well, if -- it's an agreement, and so

15     if both sides agree to have it changed, then it could be

16     changed.  They've structured the agreement this way and

17     apparently the attorneys believe that this is the proper way

18     to do it and the closest that they can come to an agreement.

19          MS. HEREFORD:  Okay, thank you, ma'am.

20          THE COURT:  But if you want to write out on a

21     piece of paper -- why don't you write down what you would

22     like, how you would like for it to appear?

23          MS. HEREFORD:  Yes, ma'am.

24       (Pause.)

25          THE COURT:  Now, I'll look at it, but why don't

25

1   you show it to Plaintiff's counsel first so they can see
2   what it is that -- and this is what you would like to appear
3   on the stationery?

4          MS. HEREFORD:  Yes, ma'am.

5          THE COURT:  Okay.  Is it your belief that you'll
6   be able to use the present stationery that you already have,
7   just with making a modification consistent with this
8   agreement?

9          MS. HEREFORD:  Yes, ma'am.

10          THE COURT:  Okay.  We're not trying to change your
11   agreement and the Court understands what the counsel agreed
12   to.  I guess the question now is -- what the Defendant is
13   asking is, could she use the language as she has written it
14   on the paper, as opposed to the language that counsel stated
15   on the record?

16          MR. TIERNEY:  Your Honor, we would not agree, and
17   this is the same point I raised with the Court before.  It's
18   the essence of our bargain.  It is the truth, because her
19   dogs are descendants of the fourth.  They are not Rin Tin
20   Tin dogs.  They were never in any Rin Tin Tin movie or TV
21   show.

22          THE COURT:  Well, it sounds like that's what she
23   wants.  She wants the language to read, "Descendant of Rin
24   Tin Tin IV."

25          MR. TIERNEY:  Well, your Honor, she wants two

26

1    lines.  She wants a top line, which is the first line that
2    people look at, and sometimes the only line.

3              THE COURT:  Okay, and tell me what that line says.
4              MR. TIERNEY:  "Rin Tin Tin German Shepherds",
5    without the Roman IV.

6              THE COURT:  Okay.

7              MR. TIERNEY:  And that's the mischief and that's
8    the problem.

9              THE COURT:  Yes, all right.

10             MR. TIERNEY:  And we had agreed --

11             THE COURT:  Suppose that first line said, "Rin Tin
12   Tin, descendant of" -- whatever -- IV.

13             MR. TIERNEY:  It doesn't work, your Honor.  It
14   doesn't work.

15             THE COURT:  Okay.  All right.  Then I would say to
16   Ms. Hereford, counsel have worked on this many hours today.
17   So I think it has to be the way that both sides have agreed
18   and so it has to -- would be written that way.

19             MS. HEREFORD:  Does that then, your Honor, change
20   the mark to, "Rin Tin Tin, circle R, IV"?

21             THE COURT:  I don't know what you mean when you
22   say, "Does it change the mark?"

23             MS. HEREFORD:  Because the trademark says, "Rin
24   Tin Tin, live German Shepherds."  So that would make it,
25   "Rin Tin Tin, German Shepherds."  So now does the mark

27

1  change to, "Rin Tin Tin IV", Roman Numeral IV?

2      THE COURT:  No, it doesn't change the mark.

3      MS. HEREFORD:  So I can't use the words, "Rin Tin

4  Tin", with "German Shepherds", without the Roman Numeral IV?

5      THE COURT:  Is that the understanding of counsel?

6      MR. HANKIN:  Your Honor, if I may be heard on

7  behalf of Defendant's counsel, which I think is a third

8  party in this action at this moment?  Your Honor, when we

9  negotiated with Plaintiff's counsel, we agreed in principle

10 to certain terms.  When we went to discuss it with our

11 client, who is the only person who could settle this

12 case -- we can't -- she raised an issue to what was A, what

13 became C, the one that we've been discussing this whole

14 afternoon.

15      I want to make it clear to the Court, which I

16 think she may not understand, Plaintiff's counsel -- excuse

17 me, Defendant's counsel did not agree that this must be

18 done, that the IV must be put in fact.  Quite to the

19 contrary.  There's four trademark attorneys on Defendant's

20 side and every one of us believes that Rin Tin Tin, circle R

21 is her trademark and the one that she is retaining and not

22 giving to Leonard.

23      So, no, your Honor, we don't agree with this.

24 However, in the hopes of settling this lawsuit we've been

25 trying all afternoon to convince our client that this is an

1   acceptable settlement.

2          Plaintiff's counsel is insisting on the IV in

3   every instance.  But, your Honor, it's our belief under

4   trademark law in the United States that unless your Honor

5   cancels her trademark or changes it, that she would have a

6   right to use, "Rin Tin Tin, circle R".

7          Now, if she gives up that right as part of the

8   settlement, then your Honor need do nothing with the

9   trademark office.  She is giving a contractual obligation

10  under penalty of contempt.

11         But it is not my personal opinion -- let me strike

12  that.  It's not my legal opinion, as a trademark lawyer,

13  that she has to do this or even should do it.  It is only

14  for the hopes of settling this lawsuit and to satisfy your

15  Honor's requirements -- that we're faced with a summary

16  judgment ruling which may go against us and we don't know

17  how your Honor will rule.

18         So, I tried to convince my client that this is

19  something that she may want to entertain, but it is not my

20  legal opinion of what should happen or even must happen

21  under the trademark laws of the U.S.  It's Plaintiff's --

22         THE COURT:  All right.  Let me try to approach it

23  that way then.  First, I think it's important that Ms.

24  Hereford understand the language that's to be used and the

25  easiest way for her to understand this is when there is the

1  written agreement so that you can see what the words are and

2  then you'll better understand what you're to do.

3          For purposes of what you do between this moment

4  and the written agreement actually being finalized, filed

5  with the Court, and receive the approval of the Court,

6  counsel should write down for her the language that should

7  be used consistent with the agreement.

8          Now, let's then move to the agreement.  Counsel

9  have set forth the terms of the agreement, in other words,

10  those things that will settle the case.  You will have to

11  indicate to me whether these terms are acceptable to you.

12  If you accept the terms, then you are bound by the terms.

13  As they've indicated, a part of the agreement is the

14  complaint will be dismissed with prejudice, the counter

15  claim will also be dismissed with prejudice.  There will no

16  longer be a case before the Court because the parties have

17  agreed to settle it.

18          And this is not different from any settlement

19  agreement.  When parties settle a case there's a give and

20  take.  Each side gives up something that they might have

21  hoped that they would be able to obtain if the case had gone

22  to trial and if there had been a judgment in their favor.

23          The unknown, of course, is: what would the

24  judgment be?  Would you prevail or not?  Rather than run the

25  risk of having the Court rule on this or having a jury have

30

1   to make findings -- and those findings could be against you,
2   in which case you're mark would be cancelled and you would
3   not even be able to have the benefit of the bargain that the
4   attorneys have agreed to this afternoon.

5          With that understanding then, parties are often
6   willing to settle a dispute.  If you agree to the terms and
7   conditions of the settlement, then you are bound by those
8   terms and conditions.

9          So, first, the inquiry that the Court would make
10  of you is: do you have an understanding of the terms and
11  conditions of the settlement?

12         MS. HEREFORD:  Yes, ma'am.

13         THE COURT:  And, understanding them, are you
14  willing to agree to those terms and conditions, knowing that
15  the case -- the complaint will be dismissed and the counter
16  claim will be dismissed with prejudice?

17         MS. HEREFORD:  Yes, ma'am.  The only problem I had
18  was with the IV and if they're going to force me to do it,
19  then I guess I don't have a choice.

20         THE COURT:  Well, you do have a choice, but at
21  this point what you need to do is to decide if you're
22  willing to accept the agreement.  Yes, you have a choice.
23  Your choice is to accept it or to not accept it.  If you
24  don't accept it, then, of course, there is no agreement and
25  then we go back where we were earlier this morning --

1      MS. HEREFORD:  No, ma'am, I wouldn't do that.

2      THE COURT:   -- for the Court to rule on the

3   summary judgment motion and then, depending upon how the

4   Court rules on that, there may or may not be other issues

5   that need to be resolved.

6      MS. HEREFORD:  I understand, but, yes, ma'am, I'll

7   abide by it.

8      THE COURT:  Okay.  And you understand that by

9   accepting the terms and conditions that the complaint will

10  be dismissed without -- with prejudice, and that the counter

11  claim will be dismissed with prejudice as well?

12     MS. HEREFORD:  Yes, ma'am.

13     THE COURT:  That there will be no trial in the

14  case.

15     MS. HEREFORD:  Yes, ma'am.

16     THE COURT:  And are there other matters that

17  counsel that the Court should ask of the Defendant before we

18  proceed?

19     MR. LARKIN:  I don't believe so, your Honor.

20     THE COURT:  Okay.  Anything else that the

21  Plaintiffs believe need be placed on the record in the way

22  of questions or responses?

23     MR. TIERNEY:  No, your Honor.

24     THE COURT:  No.  Now, the Plaintiff isn't here and

25  so the Court can't ask the same questions of the Plaintiff.

1   So, for the record, I would just indicate that Plaintiff's
2   counsel apparently believe that you are -- you have the
3   authority to settle the case under the terms and conditions
4   that have been set forth on behalf of the Plaintiff.

5           MR. TIERNEY:  Yes, that's my understanding, your
6   Honor.

7           THE COURT:  Okay.  Is there anything else that
8   either side then needs to place on the record at this time?

9           MR. LARKIN:  I don't believe so, your Honor.

10          THE COURT:  Ms. Hereford, any other questions that
11  you feel need to be answered for you on the record?

12          MS. HEREFORD:  No, ma'am.

13          THE COURT:  Okay.  Would counsel then advise the
14  Court -- the Court has indicated that she would accept the
15  terms and conditions of the -- of the settlement agreement,
16  to make the findings as counsel have stated them for the
17  record.  Would you just state for the record the procedure
18  that you expect to use in order to finalize this agreement,
19  and when you expect that those will be filed with the Court?

20          MR. LARKIN:  Your Honor, we believe that the
21  agreement will be finalized and the matter will be settled
22  within the next two weeks.  We would propose to have a
23  private settlement agreement which I've agreed to take the
24  laboring oar on, which will result, among other things, in a
25  stipulation to the entry of a final judgment by consent,

33

1    which the Court will review and, if approved, will sign.
2    And I would anticipate being able to get that document
3    filed, formally terminating the case within the next two
4    weeks.
5             THE COURT:  Okay.  And at this time counsel would
6    like for the Court then to deem all motions submitted
7    pending the signing off by the Court of the agreement?
8             MR. LARKIN:  Yes, that would be fine, your Honor.
9             MR. TIERNEY:  Yes, your Honor.
10            THE COURT:  Okay.  That is the motion for summary
11   judgment, the motion to withdraw as counsel, and then the
12   pretrial conference would be rescheduled if there's a need
13   to reschedule it.
14            MR. LARKIN:  That's fine, your Honor.
15            THE COURT:  Anything else to be placed on the
16   record?
17            MR. TIERNEY:  Your Honor, can I have a question
18   answered?
19            THE COURT:  Yes.
20            MR. TIERNEY:  How long will it take the recorder
21   to prepare a transcript?
22            THE COURT:  The reporter can answer that best for
23   you.  These transcripts are not prepared in-house, so it is
24   not the court recorder that actually prepares them.  They
25   are sent out for preparation and she can answer that for

1  you.

2      Now, she will probably also tell you that a tape

3  can be obtained very quickly.  So, if you wanted a tape just

4  to assist you -- it's not the official record, but you could

5  use it to assist you in preparing the document.  That's just

6  a matter of her making a copy of the portion of the tape

7  that you would wish.  And I'll let you speak to her about

8  that, but I know that that can be done very quickly.

9      MR. TIERNEY:  Fine, your Honor, thank you.

10      THE COURT:  Just before you leave, I would, again,

11  thank counsel for your assistance in this matter.  I think

12  that the interest, the best interest, of all have been

13  served here.  I think it was in the best interest of the

14  individual parties to settle the case and you have done so

15  and I do congratulate you.

16      I think it's in your best interest to settle it as

17  well.  You should leave here today feeling that you have

18  rendered a service to clients, that you have certainly been

19  of assistance to the Court, that you have saved yourself the

20  time that you would spend in preparing and trying, if that

21  should have been necessary, and of course you saved the cost

22  and expense that would be incurred.

23      MR. HANKIN:  Your Honor, we thank you for your

24  efforts in this, as well as the chamber staff indulging us

25  in staying late this evening.

35

1          THE COURT:  All right.  Thank you very much.

2     You're excused at this time.

3          MR. TIERNEY:  Thank you, your Honor.

4       (Proceedings concluded at 5:37 p.m.)

5

6          I certify that the foregoing is a correct

7     transcript from the electronic sound recording of the

8     proceedings in the above-entitled matter.

9

10    _____        4-27-96

      Transcriber                    Date

11

      FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

12    _____

13    L. L. FRANCISCO, President
      Echo Reporting, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B





# EXHIBIT C



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV13- 2783 ABC (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

THE LAW OFFICE OF KEVIN M. WELCH
KEVIN M. WELCH (SBN 254565)
P.O. Box 494, Hermosa BEach, CA 90254
Tel: (310) 929-0553; FAx (310) 698-1626
Email: Kevin@kmwlawoffice.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAX KLEVEN, an individual; RIN, INC., a California corporation, <br><br> PLAINTIFF(S) <br><br> v. <br><br> DAPHNE HEREFORD, an individual; RIN TIN TIN, INC., a Texas Corporation; BELLEAIR TRADING INTERNATIONAL, LLC, a Florida limited liability company DOES 1 through 20, inclusive, <br><br> DEFENDANT(S) | CASE NUMBER <br><br> CV13-02783 -ABC (AGRx) <br><br><br> **SUMMONS** |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __Kevin M. Welch_____, whose address is __507 2nd Street, Hermosa Beach, CA 90254_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___APR 1 9 2013_____

By: _____
                    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| MAX KLEVEN, an individual; RIN, INC., a California corporation, | DAPHNE HEREFORD, an individual; RIN TIN TIN, INC., a Texas Corporation; BELLEAIR TRADING INTERNATIONAL, LLC, a Florida limited liability company; DOES 1 through 20, inclusive, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |
|---|---|
| THE LAW OFFICE OF KEVIN M. WELCH; KEVIN M. WELCH (SBN 254565) P.O. Box 494, Hermosa Beach, CA 90254 Tel: (310) 929-0553; Fax (310) 698-1626 Email: Kevin@kmwlawoffice.com | Unknown |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** at least 5,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
17 U.S.C. Sections 101 et seq.; 15 USC. 1114, 1125(a)-Infringement of U.S. Copyrights and Trademarks

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☒ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** CV13-02783

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☐ NO   ☒ YES

If yes, list case number(s):   Related Cases: 2:94-cv-02281-CBN-JR; 2:06-cv-00785-CBM-JTL; and 2:06-cv-03699-CAS-JWL

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas, Florida |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: 4/19/2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |