```
 1                  UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3        HONORABLE ANDRÉ BIROTTE, JR., U.S. DISTRICT JUDGE

 4

 5   MAX KLEVEN, AN INDIVIDUAL; RIN,   )
     INC., a CALIFORNIA CORPORATION,   )
 6                                     )
             PLAINTIFFS/COUNTERCLAIM - )
 7           DEFENDANTS,               )
                                       )
 8           vs.                       ) No. CV-13-02783-ABC (AGR)
                                       )
 9   DAPHNE HEREFORD, AN INDIVIDUAL;   )
     RIN TIN TIN, INC., A TEXAS        )
10   CORPORATION; BELLEAIR TRADING     )
     INTERNATIONAL, LLC., A FLORIDA    )
11   LIMITED LIABILTY COMPANY; DOES 1  )
     THROUGH 20, INCLUSIVE.            )
12                                     )
             DEFENDANTS/COUNTERCLAIM - )
13           PLAINTIFFS,               )
     _____)
14                                     )
     AND RELATED COUNTERCLAIM.         )
15   _____)

16

17             REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                 LOS ANGELES, CALIFORNIA

19                 MONDAY, OCTOBER 6, 2014

20                     10:14 A.M.

21

22            CHIA MEI JUI, CSR 3287, CCRR

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   APPEARANCES OF COUNSEL:

 2   FOR RIN, INC., AND MAX KLEVEN:

 3           LAW OFFICE OF DAVID L. GERNSBACHER
             BY:  DAVID L. GERNSBACHER, ATTORNEY AT LAW
 4           9107 WILSHIRE BOULEVARD, SUITE 450
             BEVERLY HILLS, CALIFORNIA 90210-5535
 5           (310) 550-0125

 6
     FOR BELLEAIR TRADING INTERNATIONAL, LLC:
 7
             FREDRICKSON AND BYRON, PA
 8           BY:  LORA M. FRIEDEMANN, ATTORNEY AT LAW
             200 SOUTH SIXTH STREET, SUITE 4000
 9           MINNEAPOLIS, MINNESOTA 55402-1425
             (612) 492-7000
10

11   FOR SHAMROCK ENTERTAINMENT, LTD.:

12           LAW OFFICES OF PETER J. ANDERSON, PC
             BY:  PETER J. ANDERSON, ATTORNEY AT LAW
13           100 WILSHIRE BOULEVARD, SUITE 2010
             SANTA MONICA, CALIFORNIA 90401
14           (310) 260-6030

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1                LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 6, 2014

 2                          10:14 A.M.

 3                             - - -

 4

 5          THE CLERK:  Calling Item Number 2, Civil

 6   Case 13-2783-AB, Max Kleven, et al., versus Daphne Hereford,

 7   et al.

 8       Counsel, please step forward and state your appearances.

 9          MS. FRIEDEMANN:  Good morning, Your Honor.

10   Lora Friedemann on behalf of the defendant, Belleair Trading

11   International.

12          THE COURT:  Good morning.

13          MR. ANDERSON:  Good morning, Your Honor.  Peter

14   Anderson on behalf of the plaintiff in intervention, Shamrock

15   Entertainment.

16          THE COURT:  Good morning.

17          MR. GERNSBACHER:  Good morning, Your Honor.  David

18   Gernsbacher on behalf of defendants -- on behalf of plaintiffs,

19   Rin Inc., and Max Kleven.

20          THE COURT:  All right.  Thank you.  So we have a

21   number of issues with respect to this case.  Obviously, the

22   first is the motion -- to amend the first amended final

23   pretrial conference order.

24       I have given you my tentative ruling.  Have you all had an

25   opportunity to take a look at that?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1            MS. FRIEDEMANN:  Yes, Your Honor.

 2            MR. ANDERSON:  Yes.

 3            THE COURT:  Why don't we start with that.  Does anyone

 4   wish to be heard first relative to the tentative?

 5       Just so you know, there are a number of procedural

 6   matters.  I know we have a trial date set, and I want to just

 7   try to lay things out as far as the court concerns, what I am

 8   looking for, leading up to that trial date.  So let's deal with

 9   the motion first.

10       Who would like to be heard?

11            MS. FRIEDEMANN:  Thank you, Your Honor.  It is our

12   motion, and I would like to be heard on that.

13       At the 30,000-foot level, this motion requires the Court

14   to choose between substance and procedure.  And we're on the

15   side of substance.

16       The exhibits and the defense that we want to present to

17   the Court are critical to the issues here and to getting the

18   decision right.

19       And the plaintiffs are doing procedure because Belleair's

20   prior counsel did not make these arguments.  They say the court

21   ought not consider them.

22       We submit that unyielding compliance with procedure, when

23   it results in a skewed presentation of the facts as it would

24   here, that the substance has to win out.  Otherwise, the

25   court's going to hear only half of the story, and my client
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    won't be able to fully defend itself in this case.

2         And Rule 16, as the court knows, does allow this court to

3    amend the final pretrial order if manifest injustice would

4    result, and we think that's what's happening here.

5         We certainly meant no disrespect to the Court in filing

6    our exhibit list and our amended proposed findings and

7    conclusions.  We knew, when we were engaged in this case and

8    saw that there were additional items, that we wanted to act as

9    quickly as we possibly could to give notice to the parties and

10   to the court.  And now we are here asking the Court to allow us

11   to amend the final pretrial order to address that evidence at

12   the trial.

13        I want to focus on the substance first.  And then I do

14   want to address the plaintiffs' procedural arguments and their

15   contention that they will need to postpone the trial and take

16   discovery.

17        So the exhibits that we're seeking to add to the case

18   substantively is they are critical.  One set of exhibits

19   include the file histories for the trademark registrations that

20   are at issue.  That's akin to the contract in a breach of

21   contract case.

22        Portions of those file histories are included in the

23   parties' joint exhibit list but not the complete histories, and

24   we will certainly want to refer to material that is part of the

25   file histories that isn't presently included.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1 | THE COURT:  Why is that important?  Can you share with |
| 2 | me that? |
| 3 | MS. FRIEDEMANN:  Certainly.  So the plaintiffs are |
| 4 | arguing that these trademark registrations should be canceled |
| 5 | due to fraud because of statements that were made in the file |
| 6 | histories and the events that took place, the specimens that |
| 7 | were submitted. |
| 8 | It's important to the Court that we have the complete |
| 9 | perspective on those file histories.  Both parties' experts |
| 10 | considered them.  So this is not something that's peripheral to |
| 11 | this case.  These are documents that are central to the case |
| 12 | and that both parties have had notice of certainly from the |
| 13 | outset. |
| 14 | THE COURT:  Okay. |
| 15 | MS. FRIEDEMANN:  The exhibits also include some |
| 16 | records that show that Warner Bros. has copyright ownership |
| 17 | interest in Rin Tin Tin movies from the 20's and 30's. |
| 18 | Of course, this case is largely about trademark rights in |
| 19 | Rin Tin Tin.  But the fact that there is a nonparty to this |
| 20 | case that owns copyrights in Rin Tin Tin movies is very |
| 21 | important to whether the plaintiffs can demonstrate that they |
| 22 | have any common law trademark rights. |
| 23 | And the reason is that trademarks are symbols of source |
| 24 | for the consuming public.  A trademark is something that |
| 25 | identifies a sole source to a consumer. |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1        But if there are two different parties like we have here

 2   who both have copyright interests in movies, it's very

 3   difficult for one of them to say, "Hey.  The consuming public

 4   recognizes me as the sole source of movies using Rin Tin Tin."

 5        So we need to have that evidence in front of the court.

 6   And again there is no surprise here.  The plaintiffs are well

 7   aware of the fact that they don't own those copyrights.  And

 8   again it's something that the experts considered.

 9        I will note that there hasn't been really a whisper made

10   in the plaintiffs' submissions that this information is

11   irrelevant or that somehow would be inadmissible under the

12   rules of evidence.  It's solely a procedural argument that is

13   being made.

14            THE COURT:  How much weight should the court give to

15   the procedural aspect?  I mean -- I am new here; so I'm jumping

16   into this case.  Discovery cutoff took place in July of this

17   year, and now we're in November or -- October, I should say,

18   and now we're saying we need to have all this additional

19   evidence.

20        Isn't there -- it strikes me as a bit of is there some

21   unfairness in the notion that now at the last minute we say,

22   "Oh.  We have all this other evidence that is absolutely

23   essential to our defense and we need it to move forward"?  How

24   should the court deal with that?

25            MS. FRIEDEMANN:  I certainly understand that,
```

```
 1    Your Honor.  And we're here because the prior counsel just
 2    didn't make these arguments, didn't present this evidence.  I'm
 3    not trying to justify that.  I think it's put my clients in an
 4    appalling position, but my client should not suffer the
 5    consequences of the inactions of prior counsel.
 6         The critical issue that the plaintiffs are arguing -- and
 7    I will skip to that.  It's their procedural argument.  They
 8    say, "Well, we are going to have to reopen discovery here and
 9    postpone the trial."
10         We think that falls under scrutiny.  They say they want
11    discovery from three different sources:  The first thing,
12    Belleair; second thing, Warner Bros.; the third being prior
13    counsel in the litigation that has taken place before between
14    these parties.
15         So with respect to my client, Belleair, these exhibits
16    that we're asking the Court to consider didn't come from
17    Belleair's files.  They're the set of correspondence that came
18    from Defendant Hereford and was produced in this case.
19         And the other materials are all materials that we located
20    through our own investigation -- counsel did once we got
21    engaged in this case.
22         So it's not something as though you could ask discovery of
23    Belleair and they would be able to testify to these exhibits.
24    They're not things within their knowledge.
25         The plaintiffs say they want to know what our contentions
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    are with respect to these exhibits, and we've laid that out.

2    That was one of the reasons that we did amend our proposed

3    findings and conclusions.

4         Our contentions with respect to the Warner Bros. evidence

5    and the collateral estoppel defense -- they're in there.  They

6    have been stated very clearly.

7         They then also argue they need discovery from Warner Bros.

8    No amount of discovery is going to change the fact that

9    Warner Bros. owns these copyrights.

10        So -- and the next -- there was a legitimate reason for

11   some discovery.  We've got time.  There's two months before

12   trial.  But what exactly they would expect to get from

13   Warner Bros. and how it would relate to the issues has not been

14   articulated.

15        And then the last category of discovery that they say they

16   need is discovery from counsel in the prior litigation.  And

17   that argument is really a red herring because the party that

18   was involved in the prior litigation is plaintiffs, their own

19   client, Mr. Kleven.

20        And the collateral estoppel defense flows directly from

21   the pleadings in that prior action and then the prior

22   cancellation proceedings in the trademark office.  Again, no

23   amount of discovery is going to change that.

24        We can look at the Complaint.  We can look at the

25   Settlement Agreement.  We can look at the dismissals with

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   prejudice, and what flows out of that is a collateral estoppel
 2   that really -- I mean, it's a legal issue that would narrow the
 3   issues in this case substantially.
 4           THE COURT:  Let me ask you this question,
 5   Miss Friedemann.  When you jump on the case and you know that
 6   there is a trial date, don't you sort of take the assumption
 7   that, "Look.  I am going to step into this case.  I know the
 8   lay of the land and I am ready to try the case"?  I just have a
 9   hard time, and I have a concern that if, in essence, someone
10   could jump into the case at the last hour and then all of a
11   sudden the trial gets continued and we get to re-engage in
12   these discovery battles unnecessarily.
13       I guess, weren't you or whoever else was involved in
14   taking on this case -- you knew that there was a trial date.
15   What were you thinking when you did that?
16           MS. FRIEDEMANN:  Your Honor, I am ready and look
17   forward to trying this case.  I just want all the tools in my
18   arsenal when I do it.  And I think that's the right result for
19   our client as well given that we've got two months before the
20   trial.  That's way more time than existed at the time that the
21   final pretrial order was issued.
22       There isn't a need for any discovery.  And so we certainly
23   have enough time here for the plaintiffs to know about our
24   issues, which they do.  There is no surprise about them.  These
25   are things that are public records that they were aware of and
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    that just isn't getting the right result when it requires that

2    the Court allow us to present this evidence.

3        THE COURT:  Help me understand this again.  You are

4    saying -- in essence, it sounds like you are saying that

5    nothing really will change.  We'll be ready to try the case.

6    But you have submitted new contentions of law in fact that are

7    substantially different than the prior contentions of law in

8    fact.  So there are some differences.  And to the extent that

9    you can, walk me through those differences and tell me why that

10   should not impact a trial date that's set for December.

11       MS. FRIEDEMANN:  One of the things that I have not

12   addressed yet for the Court is the collateral estoppel defense.

13   So there was a lawsuit between the plaintiff, Mr. Kleven, here

14   and our co-defendant, Daphne Hereford.  There have been

15   actually two prior lawsuits in this court:  One in 1996 and one

16   in 2006.

17       So the case in 2006 presented the identical issues that

18   are being presented in this litigation.  Just like this case,

19   Mr. Kleven sought to cancel trademark registrations, five of

20   the identical trademark registrations.  So we've got ten at

21   issue here.  Half of them have been litigated before.

22       There is a Settlement Agreement.  The case was dismissed

23   with prejudice.

24       That's a pretty clear legal issue.  As the court -- we've

25   got time for the court to take that up, and we can narrow the

```
 1    issues for trial.  There is no need for discovery on that.  The
 2    pleadings are what they are.
 3        I do have, by the way, for the court, if you are
 4    interested in receiving it, a copy of the Complaint from that
 5    2006 case.  It's not on ECF.  It's certainly something this
 6    court can take judicial notice of because it's a record of the
 7    court.  But I do have a copy since it's not easily available,
 8    if the Court would like that.
 9        You can see in looking at it that five of the trademark
10    registrations at issue are identified.  They're identified in
11    paragraph 55 on page 10 of the Complaint.  The plaintiff should
12    not be able to litigate that issue again.
13        With the Court -- can I provide a copy of the Complaint?
14            THE COURT:  Sure.  That's fine.  I am assuming
15    counsel, all opposing counsel, has copies of this Complaint?
16            MS. FRIEDEMANN:  Yes, but I have another copy for them
17    today.
18            MR. ANDERSON:  I wasn't involved in that case.
19            THE COURT:  I understand.
20        Let me hear from the plaintiffs, if I may, Counsel.
21            MS. FRIEDEMANN:  Thank you.
22            MR. ANDERSON:  Thank you, Your Honor.  The tentative
23    ruling in Your Honor's comments are spot on.  Counsel tries to
24    dismiss the situation as this procedural issue.  This case was
25    filed in April 2013.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    None of what they're trying to get in now were in

2    Belleair's initial disclosures.  None of what they are trying

3    to get in now were in the discovery responses.

4         We've provided to the Court with our opposition copies of

5    their discovery responses.  There isn't any of this in that.

6         Now, it comes to the court as a little bit of a procedural

7    misstep on Belleair's part.  They are asking the Court to amend

8    the -- actually asking the Court to amend the joint exhibit

9    list.  But they label it as a motion to amend the final

10   pretrial conference order.

11        The reason is simple.  If those documents were attached to

12   the exhibit list, they would be irrelevant in this case because

13   of the final pretrial conference order.  None of the issues

14   that they want to raise are covered by the final pretrial

15   conference order.

16        THE COURT:  What about the notion that counsel has

17   articulated that, look.  There was perhaps less skilled or

18   someone else involved who didn't think of the issues that

19   Miss Friedemann is now raising?  Is it a too-bad, too-sad sort

20   of thing?

21        MR. ANDERSON:  First of all, it's wrong.  Mr. Ginsburg

22   is a trial lawyer with much more experience than I have.  He

23   has represented Miss Hereford on trademark disputes over 20

24   years.  They in their own papers show that Mr. Erickson,

25   Belleair's principal, oversaw this case from its inception.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    We have shown that Mr. Erickson signed all the
2    verifications for all the discovery responses, even ones he
3    didn't need to sign, like responses to requests for production.
4    So they had able counsel.

5    The problem isn't an issue of able counsel versus new
6    counsel wanting to sweep cleaner.  What we've got is we've got
7    a judge who looked at this case and said "Plaintiffs have a
8    very strong case."

9    Everything fell apart for them then.  They then abandoned
10   that counsel.  They abandoned a year and a half of litigation.
11   They abandoned the memorandum of contentions of fact of law.
12   They abandoned their sworn discovery responses.  They abandoned
13   the final pretrial conference order which they tell this court
14   Mr. Erickson didn't know about but we submitted e-mails copying
15   Mr. Erickson on the final -- on approval of the final pretrial
16   conference order.  So first of all, their position is just
17   wrong.

18   Second of all, it is irrelevant.  You can't just, when a
19   case starts going south, go and get new counsel and have new
20   counsel come in and say, "Your Honor, my hands are tied.  I
21   want justice and the best result.  I really want to be able to
22   use all these things."

23   Their papers are replete with "We want to do this.  We
24   want to do that."  It doesn't work that way.  I don't know
25   about Minnesota, with all due respect to counsel, but here,

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   when you give initial disclosures that don't mention anything,

2   you don't get to come in after the pretrial conference order

3   and say "Your Honor, you didn't really like our case.  We'd

4   like to change it."

5        And getting back to the point about what they are really

6   trying to do is -- they need to do is change the final pretrial

7   conference order, their obligation was to submit a proposed

8   amended final pretrial conference order.  They didn't do that.

9        They didn't do it for the reasons we've pointed out in the

10  opposition.  A final pretrial conference order sets out in

11  binding fashion the party's contentions, the party's evidence

12  that they are going to submit, and the elements of all their

13  defenses.

14       If they had done that, they would have added pages to the

15  final pretrial conference order.  They would have -- Your Honor

16  would have been able to look and say, "Wait a second.  They're

17  changing everything."

18       They're trying to change the whole case.  They're trying

19  to change the whole case even though we've gone through

20  discovery; we've been pretried; we were on the verge of trial.

21  And then for no fault to the judge, we got moved, and we got a

22  new trial.  And they're trying to change everything just

23  because of what the judge said and new counsel doesn't change

24  it.

25       If I could just briefly on a couple of points --

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  If I could interrupt for just a second.

2    Counsel indicates that some of these issues are identical,

3    suggesting, I think, that there is no harm to the plaintiff on

4    this.  What's your response to that?

5          MR. ANDERSON:  Completely false.  Absolutely false.

6    For example, Warner Bros.  They say that everyone knows that

7    there is Warner Bros. movies.  She's talking about 26 movies --

8    24 of which are silent.  There is no evidence they're even in

9    distribution.

10         They rely on a case out of New York, district court case,

11   that says that, if more than one person owns the copyright, you

12   can't have a trademark.

13         In Fleischer, the case we cite, the ninth circuit, which

14   they don't mention in the reply papers -- the ninth circuit

15   says "That's not the law of this or any other circuit."

16         It's a factual issue.  You look at it.  You can't just say

17   because different people have copyright rights there can't be a

18   trademark.  That's the argument she's making to Your Honor this

19   morning.

20         The actual law is it's an intense factual issue.  They

21   never raise the Warner Bros. movies.  There is a good reason

22   for that.  They're all authorized by Lee Duncan who owned and

23   trained the original Rin Tin Tin.  So it's a dead end, in any

24   event, as we pointed out; and they don't respond to that

25   either.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    But if you were to allow them to raise that, then there is

2    a lengthy period of discovery to determine things like who owns

3    the Warner Bros. movies?  It's not necessarily Warner Bros. I

4    represent Warner Bros. records, and I can tell you they have no

5    affiliation with the Warner Bros. -- current Warner Bros.

6    company, motion picture company.

7        Also, over the last 70 years, multiple libraries have

8    changed hands.  Seven Arts is now MGM.  MGM now Sony.  Who

9    knows who owns these movies?

10       We have to do discovery to find out who owns the movies

11   that were released in the 1920's and 1931, '32.  Then we have

12   to figure out, once we figure out who those people are, we have

13   got to do discovery to figure out what contracts were signed.

14       Do they still have them?  What was Lee Duncan's

15   involvement?  Because Lee Duncan not only supplied the dogs for

16   those movies but trained them and was a consultant on these

17   movies.  Everyone knows this.  That's lore.

18       Now she's saying for a year and a half "We haven't asked

19   you to do it.  Now on the verge of trial, prove this.  Prove

20   what everyone else knows going back 100 years."

21       That's just one example.  On collateral estoppel -- and

22   this is very disturbing.  Collateral estoppel, as we've shown,

23   requires a prior decision on the merits.

24       The law is absolutely clear that a Rule 41 dismissal is

25   not a prior decision on the merits even if it's with prejudice.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    They, to try to make a collateral estoppel argument, say

2    that -- "Look, Your Honor.  You can see the judgment that was

3    attached to the plaintiffs' Complaint."

4    I guess they don't think you're going to look at it.  If

5    you look at it, you will see it's no judgment.  It's is a

6    notice of voluntary dismissal.

7    And the cases are clear that, when you have a Rule 41

8    settlement and -- then the only preclusive effect is the

9    preclusive effect as a result of the settlement.  It's not a

10   res judicata issue because there is no decision on the merits.

11   There is no trial.  There is no summary judgment ruling.  It's

12   another dead end.

13   But she says, "Well, it really doesn't hurt because

14   plaintiffs were parties to that."  Shamrock was not a party to

15   the present lawsuit.  I don't know anything about that other

16   than what I have seen in the papers.

17   So -- and counsel, Mr. Gernsbacher, wasn't counsel for

18   that case.  So if we're going to start opening discovery just

19   because she says, "Well, it's only a procedural issue," then

20   procedure matters.  And what it results -- and if the court

21   ignores the procedure, ignores the history of this litigation,

22   ignores where we are just because Belleair decided to get new

23   counsel, you get a manifestly unjust result.

24   You have an 81-year-old plaintiff.  And my client, the

25   principal, is 72 years old.  They've waited a year and a half

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   to try and get this case resolved, and we're on the verge of

 2   trial.  And we'd like to proceed to trial.

 3           THE COURT:  Thank you.

 4       Mr. Gernsbacher, do you have anything that you wish to

 5   add?

 6           MR. GERNSBACHER:  Briefly, Your Honor.

 7       Your Honor, I thought about what you had said earlier,

 8   that you are new to the case, just trying to get into this.

 9   Judge Collins was -- weathered this case for almost a year and

10   a half.

11           THE COURT:  I know that.

12           MR. GERNSBACHER:  Judge Collins ruled on a simple

13   ex parte application to add one deposition.  And she denied it.

14   She denied it even though in the same order -- and she knew

15   when she denied it that she was not going to be able to try the

16   case.  She had already been appointed to the State

17   Court of Appeals.  But she denied it.

18       And if the court needs a shortcut to where this case is or

19   where it should be, that's a great place to start because

20   Judge Collins lived through this case, made rulings on this

21   case, and denied the one ex parte application to take a

22   deposition of someone who was actually at the time a party.

23   So -- and did that again knowing she wasn't going to be able to

24   try the case.  And she called their motion "meritless."

25       The court, I believe, in the tentative is very respectful,
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   but I don't see any difference between this motion and the

2   ex parte application the judge described as being meritless.

3       Your Honor, it just doesn't make sense.  Also what doesn't

4   make sense is now I am hearing -- which is very interesting.

5   When we first saw the motion, the reason for writing the motion

6   was not that Mr. Ginsburg, former counsel, had done something

7   wrong or was incompetent or didn't bring up the right papers.

8       The reason -- please keep this in mind.  The basis for the

9   motion to amend was that there was a breakdown in

10   communication.

11       Just prior to the -- at the pretrial proceedings between

12   Mr. Ginsburg and Mr. Erickson -- that's the basis for their

13   motion.  Now it's changed some somewhat.  And of course it's

14   changed to say wait a minute.  You know, it is -- in

15   California, as in most states -- certainly in this court -- if

16   an attorney does something wrong, it better be really bad

17   before the -- to prevent the client from having to deal with

18   those consequences.

19       But that's -- we've never had a chance to argue that

20   because what we heard before was it was simply a breakdown in

21   communication.

22       Secondly, Your Honor, if it was a breakdown in

23   communication -- let's just assume that there was a breakdown

24   in communication -- and e-mails from Mr. Erickson belie that.

25   His execution of verifications belie that -- but let's assume

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    there was a breakdown in communication.

2        Your Honor, that breakdown in communication happened at

3    the tail end of a year and a half of litigation.  It could no

4    longer -- it could no more fix what defendants are now saying

5    is broken than it could do anything -- fly to the moon.  Why?

6    Because they've already submitted early on in the case their

7    disclosures.  They already responded to discovery.  They

8    already prepared documents and submitted exhibits.

9        So it would not have mattered even if there was a

10   breakdown in communication.  This is much more than something

11   procedural.  There are substantive issues, as co-counsel

12   addressed, the issues of the copyright, which is a red herring;

13   but it's going to require hundreds of hours of discovery

14   especially relating to movies that are over 70 or 80 years old.

15       There are -- you've seen some -- collateral estoppel.

16   There is no collateral estoppel.  Even if there were -- and

17   there's not -- it would not make a difference here in this case

18   because we have a cause of action for rescission where the

19   party -- the parties to that agreement that's been rescinded,

20   has defaulted.

21       Belleair is not a party of that agreement.  They have no

22   privy in that agreement.  So that's a fait accompli.

23       What we have here, Your Honor, is simply an attempt at the

24   last minute by new counsel, who didn't like what had happened

25   when the judge made its comments, wants to come in and rework

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    this case.
 2        And I have not seen one case in this district or any other
 3    district -- and that is cited, by the way, that under these
 4    circumstances -- this court has a fact-based inquiry to make
 5    when this motion is made.
 6        There is not one case cited under these kinds of
 7    circumstances, even remotely to these kinds of circumstances,
 8    where a district court or a court of appeal said, yes, the
 9    Court should do that, the Court should allow the amendment of
10    these cases.  Thank you.
11        THE COURT:  Miss Friedemann, I will give you one last
12    opportunity.  I will tell you because I am very concerned about
13    the long-standing history of this case.  Judge Collins made
14    some rulings on this case for the matter to be pretried.  It
15    would -- in some ways this might all have been moot because had
16    she not been put to the court of appeals this case would have
17    been tried and now, for lack of a better term -- and this is
18    not something against you personally, just there seems to be
19    some daylight and so, obviously, now you are doing what you
20    need to do to try to make some changes to what has -- to the
21    direction that the case was going.
22        But legally I just have some concerns about whether you
23    met -- you have laid out a sufficient basis for me to basically
24    open things up again and you say can still be resolved within
25    two months.
```

```
 1          From my limited time here, not much gets resolved very
 2    quickly in civil cases.  So I find it hard to believe it could
 3    be resolved within that two-month period.
 4          I am not inclined to move this trial date again.  We have
 5    some plaintiffs here that are senior in age, and the matter has
 6    been narrowly tailored and ready to be tried; so I am not
 7    inclined to move that date.  But I want to give you an
 8    opportunity one more time to be heard on this.
 9          MS. FRIEDEMANN:  Thank you, Your Honor.  And we're not
10    asking the Court to move that date.
11          Just a few things.  I disagree with a lot of what opposing
12    counsel said.  I am not going to try to address it all.
13          First, with respect to the collateral estoppel defense, a
14    dismissal with prejudice is a final ruling on the merits.  And
15    we can provide the Court with authority in support of that.
16          So -- and if not even for the dismissal with prejudice,
17    the Settlement Agreement is a binding agreement between the
18    parties that can't be relitigated.
19          With respect to Warner Bros. and -- so the argument we're
20    making isn't that -- actually doesn't matter who owns those
21    copyrights.  It's just that they don't; the plaintiffs don't.
22          And the case that we're relying on is from this Court, the
23    Tristar Pictures case, cited by plaintiffs.  What it says is
24    that you can't determine definitively, when two different
25    parties own copyrights, that there is no trademark.  It is a
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    fact question but certainly very relevant.

 2         So the fact that they don't own those copyrights is

 3    something that the court really ought to hear.

 4         Now, in the Court's tentative, it indicates why we're

 5    here.  Part of it was a communication breakdown.  But also it's

 6    because prior counsel simply didn't engage and participate in

 7    the process relating to that final pretrial order.

 8              THE COURT:  But counsel was engaged -- or presumably

 9    was engaged during the whole discovery process leading up to

10    that pretrial conference order.

11              MS. FRIEDEMANN:  Presumably so although the discovery

12    in this case was extremely limited.  There were no depositions

13    taken in this case, to my knowledge.

14         And so, when it came to the final pretrial order, you

15    know, counsel didn't present any exhibits.  They made no

16    contributions to the order.

17         After the plaintiff submitted their order, a legal

18    assistant submitted something on behalf of Belleair and

19    indicated "Sorry.  I was tasked with drafting this, but I

20    was -- had a medical emergency."

21         Belleair should not be penalized with that.  We have got

22    enough time here -- in fact, more time before this December 2nd

23    trial than we did at the time that pretrial order was issued --

24    that we would like to be able to make our contributions to the

25    order, and we think they've met the manifest injustice
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1    standard.

 2            THE COURT:  Thank you.  I will consider what counsel

 3    says, and I will take that portion of the matter under

 4    submission for the time being, but there are some other things

 5    that I wanted to get clear because I will tell you I am not

 6    moving the trial date.  The trial date is December 2nd.

 7        And I just want to make sure -- there are some things I

 8    noted in Judge Collins's order -- some things I wanted to

 9    modify, if I could.

10        I guess first off before that my understanding is that

11    Belleair is the only remaining defendant -- active defendant in

12    this case; correct?  And now -- was there an application for

13    judgment on the default?  Is that forth coming?

14            MR. GERNSBACHER:  No, it hasn't, Your Honor.  We are

15    contemplating doing something along those lines.  We will be

16    having a stipulation for entry of judgment.  And we would hope

17    to get -- if it does occur, we would hope to have that occur

18    well prior -- at least 15 to 30 days or more prior to the

19    December trial.

20            THE COURT:  Okay.  I just -- some things I noted in

21    reviewing the file.

22            MS. FRIEDEMANN:  Your Honor, can I be heard on that?

23            THE COURT:  Yes.

24            MS. FRIEDEMANN:  So I think it would be improper to

25    enter the judgment of default at this point.

                UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1            THE COURT:  Why is that?

 2            MS. FRIEDEMANN:  Because what the plaintiffs are

 3   trying to do is make factual findings against these defaulting

 4   parties and make them binding on my client.  There is very

 5   recent authority from the ninth circuit that says you can't do

 6   that.

 7            THE COURT:  Let me just interrupt.  I am sorry.

 8   Making it binding -- it's one thing to have the default

 9   judgment.  It's another to say whether it's binding on the

10   client.  Isn't that an evidentiary rule this court would have

11   to make?

12            MS. FRIEDEMANN:  What this case says -- it's the

13   Garamendi versus Henin case, 683 F.3d 1069 -- is the Court

14   should not enter judgment of default until this trial is over

15   against Belleair.

16        And that's in part because we, of course, want to argue

17   against all of the facts that they have asserted, even the ones

18   that pertain to our co-defendant.  So I would encourage the

19   Court to look at that case.  I think that needs to be put on

20   hold for the time being.

21            THE COURT:  Mr. Gernsbacher.

22            MR. GERNSBACHER:  Well, I think the court was just

23   asking what was going to happen.  If and when it is before --

24            THE COURT:  We can litigate that matter.  But -- and I

25   will look at that case.  I will look at the case you cited.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1    That's fine.

 2              MR. GERNSBACHER:  I don't think that --

 3              THE COURT:  We're not here to make that decision.

 4              MR. GERNSBACHER:  -- we should be prevented from

 5    submitting.

 6              THE COURT:  You can do whatever you like relative to

 7    that.

 8         The other thing I wanted to discuss is relative to the

 9    December 2nd trial date.  In reviewing the order, it appeared

10    to me that each side was going to have two hours of

11    cross-examination relative to cross-examination of a witness.

12         I have to tell you direct testimony was supposed to be

13    submitted by declaration.  I am leaning towards, unless there

14    is some issue I am not aware of, of just having live testimony

15    on that and adding an hour to each side relative to that.  But

16    I want to hear from both sides.

17         It just strikes me as odd.  The witness needs to be here

18    anyway.  I would rather hear their testimony live, but I want

19    to hear what you have to say about that.

20              MR. GERNSBACHER:  Your Honor, first off, we spent a

21    great deal of time preparing declarations, just sort of -- in

22    some ways it puts us at a disadvantage because we have the only

23    witnesses.  So that's an issue that we -- and --

24              THE COURT:  Why does it put you at a disadvantage?

25    Clearly, you prepared the witness.  You have submitted their

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    declaration.  They've reviewed that declaration.  They should
 2    be prepared to testify.  I mean, they're going to have to be --
 3    withstand cross-examination; correct?
 4             MR. GERNSBACHER:  I think the point was to keep the
 5    trial short.  Now, by adding an hour, it may not be enough
 6    time.  The declaration provides the Court with pretty much
 7    everything the Court needs to see as to the prima facie case.
 8    But, obviously, it's up to the Court to decide.
 9             MR. ANDERSON:  Just knowing that -- the length of the
10    declarations, I don't see that testimony being given live by
11    those witnesses in two or three hours.
12             THE COURT:  How long are the declarations?
13             MR. ANDERSON:  I remember the length.  I don't want to
14    guess at the page, but I remember there were details, and they
15    were lengthy because it was, basically, our prima facie case on
16    the cancellation issue.  Just a rough guess, if this were
17    turned into a live bench trial, I would say at least two days.
18             THE COURT:  Two days of direct testimony?
19             MR. ANDERSON:  Maybe -- let me say a day to a day and
20    a half, maybe two days.  But I will defer to --
21             MR. GERNSBACHER:  I would suggest, Your Honor, this
22    would end up taking about -- I'd say a good day and a half for
23    the direct testimony because it is fact-loaded information.
24       No one is -- in doing this, we're not preventing anyone --
25    court or opposing counsel -- keeping them from knowing
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1  anything.  In fact, it places all out -- it's a road map of the

 2  facts in this case.

 3      It's not that we're concerned about -- so much about our

 4  clients presenting -- or our witnesses presenting the case.  It

 5  has to do with just the time and the effort involved when it

 6  can be laid out for the court -- especially in a case where

 7  this court has not had an opportunity to hear substantively a

 8  number of the facts in the case, how we ended up being where we

 9  are today.

10      THE COURT:  I will consider it.  But like I said, you

11  have heard where I am learning towards this, but I will

12  consider in light of what you just mentioned.

13      The other question -- other points I want to raise before

14  we conclude here -- now, I understand -- have there been some

15  settlement negotiations in this matter?

16      Are we at a standstill relative to that?  We're ready to

17  go on December 2nd.  I just want to get a sense -- these are

18  some notes I have written down in just my review of the file.

19      MR. GERNSBACHER:  Your Honor, there has been extensive

20  settlement negotiations.  And no one has shut the door.  I

21  don't believe you have, and we haven't either, Your Honor.  But

22  it may very well be this is one of those cases where at least

23  some initial filings by a trier of fact may have to come in in

24  order to persuade one side or the other to move from where they

25  are.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1            THE COURT:  Okay.

 2            MR. GERNSBACHER:  And that's about the best I could do

 3   to sum up --

 4            THE COURT:  That's fine.  These are more just

 5   inquiries.  I am reviewing the files for the first time.  I

 6   just want to ask these questions.  Like I said, I am going to

 7   consider the arguments made here, but I want to make clear if I

 8   do ultimately stick with the tentative ruling, you know -- I

 9   want to make sure from defense counsel's side what we go

10   forward with is what has been adjudicated.

11       There will be no other efforts to add things to the

12   pretrial conference order -- you know, the witness list, I

13   guess, at that point.  Has there been a witness list filed by

14   defense?

15            MS. FRIEDEMANN:  No.  We would like to file one,

16   Your Honor.  It has been withdrawn for some reason, but we do

17   have witnesses that we would like to present.

18            THE COURT:  You are going to need to seek leave to do

19   so.  I am sure opposing counsel will have something to say

20   about that.  This is not the time or place for that, but I just

21   noted I didn't see any witness list from the from the defense.

22   So if you are going to do so, I suggest you doing so sooner

23   rather than later.

24            MS. FRIEDEMANN:  The parties, as the court probably

25   saw from reading the final pretrial order -- neither party had
```

1   identified their expert witnesses at that time.  So the

2   plaintiffs identified an expert witness, somebody not on their

3   witness list, and we have two expert witnesses that are

4   rebuttal to the plaintiffs' experts.  So I guess the plaintiff

5   needs to seek leave to have their expert --

6          THE COURT:  Let me ask Mr. Gernsbacher.

7          MR. GERNSBACHER:  We disagree with whether -- the

8   factual scenario laid out for the court as to whether they are

9   identified, et cetera.  There is some issues regarding that,

10  unfortunately, as with the rest of the case.

11      But I will tell you I appreciate opposing counsel's

12  acknowledgment on the record today that her -- that the

13  Belleair's experts are rebuttal experts because we've been

14  trying to find out from Belleair's counsel -- I've sent a

15  number of emails saying, "What are they?"

16      So now we understand that.  It may make that whole process

17  easier to deal with.  But, like I said, Your Honor, I think

18  there may be issues that are raised later on before trial

19  regarding the ability of these -- the right of these experts to

20  come in.

21          THE COURT:  Well, in light of -- what I'm going to

22  recommend -- we've got to put an end to this expert discovery,

23  and I am going to propose a November 3rd date to end discovery.

24      All of this will be issued in a minute order with the

25  ultimate ruling, in the next day or so.  But I want to make

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   sure just so you know -- I want to finalize this thing as we're

 2   getting closer to trial.

 3           MR. GERNSBACHER:  I appreciate that, Your Honor.  If

 4   there are -- we certainly want to take the depositions if there

 5   is any chance these experts are going to testify.  So we want

 6   to -- at least could it be that the depositions go forward or

 7   the discovery be completed by November 3 without prejudice to

 8   the positions of either side regarding the right to have those

 9   experts testify?

10           THE COURT:  I don't see any issue with that.

11       Is there any concern from Belleair's perspective?

12           MS. FRIEDEMANN:  That's fine, Your Honor.  They have

13   been available for deposition for weeks.

14           THE COURT:  Okay.  Let's move forward as expeditiously

15   as possible on that.  Let me just see if there is anything else

16   that I have down here.

17           MR. GERNSBACHER:  Should the Court reconsider from its

18   sense of how it wants to have this case tried and agree to have

19   it tried at least on direct testimony by declaration, we would

20   propose seven days before trial would be sufficient time to

21   submit the declarations, Your Honor.

22           THE COURT:  Right.  I was going to issue an order from

23   this court regarding the court trial with some proposed dates.

24   October 10th would be, depending on how the court rules, filing

25   of the proposed findings of facts and conclusions of law;
```

```
 1          Tuesday, November the 11th would be the time by which the

 2     parties would file the direct testimony in the form of

 3     declarations; and then Tuesday, November the 25th would be the

 4     date by which the parties would file and lodge the final joint

 5     exhibit and joint witness list.  Again, this will all be issued

 6     in a minute order.  But those are some of the dates that I was

 7     thinking of.

 8          You have an inquisitive look on your face, Mr.

 9     Gernsbacher.

10          MR. ANDERSON:  He's just thinking about what he wants

11     to ask.  Just to be clear, your reference -- Your Honor's

12     reference to a final exhibit list and witness list isn't a

13     suggestion that leave has been granted by anyone to change?

14          THE COURT:  No.  But I was reviewing the file, trying

15     to get up to speed, and I'm trying to figure out what dates we

16     will need if we are going forward with the December 2nd trial

17     date.

18          I haven't heard anything to suggest, even if I do rule

19     allowing the defense the submission, that it would change that

20     date.  So I am just trying to come up with some proposed dates

21     and let you all know this is what I'm thinking.

22          MR. ANDERSON:  I apologize if I misunderstood.  But if

23     Your Honor does allow defendants to change their submissions,

24     then, yes, we would not be able to meet a December 2nd trial

25     date.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  And I assume you will file a motion to
 2     continue, and we'll address that at that time.
 3              MR. ANDERSON:  Thank you, Your Honor.
 4              THE COURT:  Okay.
 5              MS. FRIEDEMANN:  Your Honor, I just have one -- with
 6     respect to the dates, the court probably noted that the final
 7     pretrial conference order indicates the parties are to file
 8     their proposed findings and conclusions seven days before the
 9     trial?
10              THE COURT:  Yes.  Under Judge Collins's order,
11     correct.
12              MS. FRIEDEMANN:  Yes.  And we do have an interest in
13     filing those and believe that that date would be appropriate.
14              THE COURT:  All right.  Well, again, I may make some
15     changes just because I have issued the order from this court,
16     and that might modify things a little bit.  But I will consider
17     that your request.
18              MR. GERNSBACHER:  Along those lines, Your Honor, if
19     that would be the date for filing the final contentions and
20     findings, we would also like that to be the date for filing the
21     declarations.  They sort of go hand and hand.  Certainly has in
22     the cases I have tried where direct testimony is handled by
23     declarations.
24              THE COURT:  So you want to file it seven days before
25     the trial?  Why not sooner?  I have got the impression they
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1    were ready to go.
 2              MR. GERNSBACHER:  There may be some modifications.
 3    But it's just one of those things where it's still better than
 4    getting it on the stand where you don't have seven days or five
 5    days or any days.
 6         But we certainly -- under the circumstances -- what I am
 7    trying to -- I think it sort of coincides with the findings of
 8    fact, and it gels them for everyone when they have those
 9    declarations, to save time, Your Honor.
10              MS. FRIEDEMANN:  But, Your Honor, if these are expert
11    declarations, I need more than seven days before trial in part
12    because my experts respond to their experts.
13         So for fact witnesses, I think that would work fine, but
14    if they're intending to actually give new opinions or something
15    in an expert declaration, that's -- certainly that's not enough
16    time.
17              MR. GERNSBACHER:  Your Honor, that's fine with us.  We
18    can split it up.  Witnesses -- lay witnesses --
19              THE COURT:  I will consider all these -- you will get
20    an order in the next day or so relative to the motion as well
21    as the dates in question.  I appreciate the time you both put
22    into this, Counsel, and look forward to seeing you soon.
23              MR. GERNSBACHER:  Thank you, Your Honor.
24              MS. FRIEDEMANN:  Thank you, Your Honor.
25                   (Proceedings concluded at 10:58 a.m.)
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1
 2                              --oOo--
 3                            CERTIFICATE
 4
 5        I hereby certify that pursuant to Section 753,
 6   Title 28, United States Code, the foregoing is a true and
 7   correct transcript of the stenographically reported proceedings
 8   held in the above-entitled matter and that the transcript page
 9   format is in conformance with the regulations of the
10   Judicial Conference of the United States.
11
12   Date:  November 12, 2014
13
14
15
16                    __/S/ CHIA MEI JUI_____
17                   Chia Mei Jui, CSR No. 3287
18
19
20
21
22
23
24
25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA