1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE ANDRÉ BIROTTE, JR., U.S. DISTRICT JUDGE

4

5   MAX KLEVEN, AN INDIVIDUAL; RIN,   )
    INC., a CALIFORNIA CORPORATION,   )
6                                     )
            PLAINTIFFS/COUNTERCLAIM - )
7           DEFENDANTS,               )
                                      )
8             vs.                     ) No. CV-13-02783-ABC (AGRx)
                                      )
9   DAPHNE HEREFORD, AN INDIVIDUAL;   )
    RIN TIN TIN, INC., A TEXAS        )
10  CORPORATION; BELLEAIR TRADING     )
    INTERNATIONAL, LLC., A FLORIDA    )
11  LIMITED LIABILITY COMPANY; DOES 1 )
    THROUGH 20, INCLUSIVE.            )
12                                    )
            DEFENDANTS/COUNTERCLAIM - )
13          PLAINTIFFS,               )
    _____)
14                                    )
    AND RELATED COUNTERCLAIM.         )
15  _____)

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                 LOS ANGELES, CALIFORNIA

18                MONDAY, NOVEMBER 17, 2014

19                    11:11 A.M.

20

21

22

23            CHIA MEI JUI, CSR NO. 3287, CCRR
        OFFICIAL COURT REPORTER, U.S. DISTRICT COURT
24          225 EAST TEMPLE STREET, ROOM 181-C
            LOS ANGELES, CALIFORNIA 90012
25                  (213) 894-2826

        UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   APPEARANCES OF COUNSEL:

 2   FOR RIN, INC., AND MAX KLEVEN:

 3          LAW OFFICE OF DAVID L. GERNSBACHER
            BY:  DAVID L. GERNSBACHER, ATTORNEY AT LAW
 4          9107 WILSHIRE BOULEVARD, SUITE 450
            BEVERLY HILLS, CALIFORNIA 90210-5535
 5          (310) 550-0125

 6
     FOR BELLEAIR TRADING INTERNATIONAL, LLC:
 7
            FREDRICKSON AND BYRON, PA
 8          BY:  LORA M. FRIEDEMANN, ATTORNEY AT LAW
            200 SOUTH SIXTH STREET, SUITE 4000
 9          MINNEAPOLIS, MINNESOTA 55402-1425
            (612) 492-7000
10
                     AND
11
            LEWIS BRISBOIS BISGAARD & SMITH LLP
12          BY:  DEBORAH F. SIRIAS, ATTORNEY AT LAW
            221 NORTH FIGUEROA STREET, SUITE 1200
13          LOS ANGELES, CALIFORNIA 90012
            (213) 250-1800
14
15   FOR SHAMROCK ENTERTAINMENT, LTD.:

16          LAW OFFICE OF KIRK M. HALLAM
            BY:  KIRK HALLAM, ATTORNEY AT LAW
17          201 SANTA MONICA BOULEVARD, SUITE 300
            SANTA MONICA, CALIFORNIA 90401
18          (310) 393-4006

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, NOVEMBER 17, 2014

 2                          11:11 A.M.

 3                             - - -

 4         THE CLERK:  Calling Item Number 3, Civil

 5   Case 13-2783-AB, Max Kleven, et al., versus Daphne Hereford, et

 6   al.

 7      Counsel, please step forward and state your appearances.

 8         MR. GERNSBACHER:  Good morning, Your Honor.  David

 9   Gernsbacher appearing for plaintiffs Max Kleven and Rin, Inc.

10         THE COURT:  Good morning, sir.

11         MR. HALLAM:  Good morning, Your Honor.  Kirk Hallam

12   appearing for Shamrock Entertainment.

13         MS. FRIEDEMANN:  Lora Friedemann appearing on behalf

14   of Defendant Belleair.

15         MS. SIRIAS:  Deborah Sirias appearing on behalf of

16   Defendant Belleair.

17         THE COURT:  Good morning.  So we are here on a motion

18   to serve and file a witness list and amended proposed findings

19   of fact and conclusions of law.  Let me give you a sense of

20   where I am on the matter, and we can try and proceed from

21   there.

22      With respect to the amended findings of fact and

23   conclusions of law, it just strikes me that the best course of

24   action would be to allow both parties to submit amended

25   proposed findings of fact and conclusions of law at the end of
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   the trial which will reflect the evidence that's adduced at the

2   trial.  That's the fairest way to deal with this.

3       With respect to the witness list -- I'm just going to be

4   candid.  I just don't think Belleair has shown good cause at

5   least as defined by the applicable legal standard; so I'm not

6   inclined to allow Belleair to submit a witness list.

7       When you talk about Max Kleven, for example, I thought the

8   last time we were here there was a decision that was made that

9   there would be no live direct testimony.  So it's a little odd

10  to understand how logistically, if I were to go your way on

11  this, how that would work when all of a sudden we now have live

12  testimony as it relates to Mr. Kleven on direct.

13      With respect to Mr. Erickson -- this is my view at this

14  stage, and I want to hear from the parties.  Again, I don't

15  think there has been a showing of good cause.  My understanding

16  is the plaintiffs have agreed -- at least thrown out the notion

17  of accepting a stipulation provided that Belleair agrees to

18  have Mr. Erickson sit for a deposition.

19      If the parties were inclined to do that, I am not going to

20  stand in the way of that, but I understand that Belleair has

21  some concerns with respect to that.

22      With respect to the rebuttal experts -- and again correct

23  me if I am wrong -- I thought the plaintiffs had withdrawn

24  their experts.  So I'm not sure why Belleair has a need to have

25  these experts -- you can strike me with that -- the rebuttal

1  experts would be moot at this stage.

2      So that's sort of where I am right now.  I am sure you

3  have something to say about that, Miss Friedemann; so I will

4  let you proceed first.

5      MS. FRIEDEMANN:  Thank you very much.  Your Honor's

6  suggestion with respect to the findings and conclusions is

7  fine.  So I will just move right to the witnesses and address

8  the experts first.

9      I think the Court is familiar with the sequence of events

10  here.  Judge Collins initially set a deadline in January of

11  2014 to disclose experts.  However, the parties agreed that

12  they would do that at a later period of time.

13      Judge Collins knew about that and indicated in the final

14  pretrial order that expert disclosures needed to be made prior

15  to trial and then later Your Honor set November 3rd as the

16  deadline for expert discovery.

17      Now, our experts were disclosed well before that deadline.

18  They were disclosed in August, and all opinions were disclosed

19  at that time.  We made the experts available for deposition,

20  and the plaintiffs elected not to depose them.

21      So they do give four different reasons why they say we

22  shouldn't be able to present these witnesses.  I will go right

23  to the one that Your Honor mentioned, and that is this

24  characterization of them as rebuttal experts.

25      I disagree with that characterization.  And I think the

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1  word is -- what is meant by "rebuttal" is somewhat fuzzy.

 2  People have different -- can have different meanings to that

 3  term.

 4          THE COURT:  What is your meaning?  I would be curious

 5  because it doesn't seem fuzzy to me.  Rebuttal expert --

 6  plaintiff puts on an expert.  The rebuttal expert is to rebut

 7  the assertions of the plaintiffs' experts.  So if there is no

 8  plaintiffs' expert, in my mind, there is nothing to rebut.  But

 9  I want to hear your view -- what your definition is of that.

10          MS. FRIEDEMANN:  Sure.  That's why we provided the

11  Court with the red lines of the expert Declaration so the Court

12  could see what was going on here.

13      Our experts in part offer opinions that relate to the

14  plaintiffs' claims in general, saying this is what the

15  plaintiffs are arguing.  This is why they lose.

16      And then in another part they responded directly to the

17  testimony of the plaintiffs' former expert, Miss Gronich.  They

18  said, "Here's what she says.  Here's why she's wrong."  So we

19  had both of those happening in that report itself.

20      Just because they've decided that they don't want to call

21  their expert doesn't mean we can't call ours.

22          THE COURT:  Why?

23          MS. FRIEDEMANN:  Well --

24          THE COURT:  What are they rebutting?  What are they

25  going to testify to?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1          MS. FRIEDEMANN:   They are going to explain why the

2    plaintiffs' case in chief fails based on the evidence that is

3    presented.

4          THE COURT:   But then let me ask you why didn't you

5    designate those experts in your case in chief, as witnesses?

6          MS. FRIEDEMANN:   That's what we're asking the Court to

7    do.

8          THE COURT:   I understand.   But why didn't you do that

9    earlier if you thought -- if I understood you correctly, your

10   experts were, for lack of a better term, sort of a "hybrid," if

11   you will, to rebut certain claims and to put forth certain

12   claims.   If that were the case, why not designate them as

13   experts as -- not as rebuttal experts but experts to put forth

14   in your case in chief?

15         MS. FRIEDEMANN:   I think that is what they are.   That

16   is what we are seeking to do, is to identify them as experts

17   that we will call in our case in chief.

18         When the parties did file their witness list in this case,

19   neither side had actually identified their experts to one

20   another at that point in time.

21         The parties had -- I was not counsel for Belleair at that

22   point.   But the parties had evidently agreed that the

23   disclosure of experts was going to be so close to the formerly

24   scheduled trial date that nobody had identified who they were.

25         And I will draw the Court's attention to Exhibit 4 to the

1   Gernsbacher Declaration, which is an e-mail exchange between

2   Mr. Gernsbacher and counsel for Belleair at the time.

3       It's two weeks from trial.  The witness lists have already

4   been filed, and they're saying, "We propose that we tell you in

5   a week which one -- we're still considering two experts, who

6   that is going to be."

7       So the reason that our witness list didn't identify these

8   people is because neither side did.  That was part of their

9   agreement.  They hadn't actually identified the experts to each

10  other at that point in time.

11      So the plaintiffs' exhibit list didn't list their experts

12  either.  So now what we have is a situation where the

13  plaintiffs want to try to avoid Belleair being able to call

14  these experts simply by saying they're not going to call

15  theirs.

16      I have not seen a case, not seen any authority that says

17  that they can make that decision for us, that they can decide

18  they don't want to call their expert and that means we can't

19  call our expert.

20          THE COURT:  I mean, it's a little more subtle than

21  that only in the sense that, if you designate your experts as a

22  rebuttal expert, it's not rebutting anything.  I mean, you

23  know, that's where I am having trouble.

24          MS. FRIEDEMANN:  I don't view them as rebuttal

25  experts.  These are experts we want to put on as our

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   affirmative experts.
 2        When the plaintiffs made it clear to us they were not
 3   intending to call their expert, what we did is we took the
 4   opinions that had already been disclosed -- we said, "Clearly
 5   they can't" -- we've already filed their direct testimony
 6   declarations per the court's order.  They no longer refer to
 7   her because she's not testifying.
 8        We didn't change the opinions.  We simply made all the
 9   parts that were saying Miss Gronich is wrong; this is why.  We
10   took out the references to "Ms. Gronich," and we just explained
11   why the plaintiffs' case is wrong.
12        Those opinions were disclosed.  They have known about them
13   for well over three months with the opportunity to conduct
14   depositions of these experts.
15        So there is no prejudice in allowing the experts to
16   testify at this trial.  And they don't -- they're timely
17   whether the Court would consider them to be either affirmative
18   experts or rebuttal experts.  I think they're affirmative
19   experts.
20            THE COURT:  I may be wrong on this.  I will have to
21   look at the transcript again.  I thought counsel -- it may have
22   been you that said "We have two expert witnesses that are
23   rebuttal to plaintiffs' experts."  So is it -- couldn't the
24   plaintiffs -- aren't they entitled to rely on that assertion
25   and now feel like, "Wait a minute.  You said they were rebuttal
```

```
 1   experts.  Now you are saying that you are going to put them on
 2   in your case in chief.  That's going to alter our strategy,
 3   more preparation, et cetera."  What say you to that?
 4           MS. FRIEDEMANN:  We did have some communications among
 5   counsel that were -- where questions were asked whether they
 6   were rebuttal experts or not.  I don't think I ever
 7   characterized them as rebuttal experts in those discussions but
 8   rather said there is this hybrid.  They're responding to your
 9   case.  They're in part offering affirmative opinions and in
10   part responding to your expert.  If the transcript says I used
11   the worth "rebuttal" when I was here, I'm sure I did.  We
12   weren't having this discussion here.
13       To preclude us from calling expert witnesses because I
14   used a term "rebuttal" that -- in a way that I didn't mean it
15   in that the Court and apparently opposing counsel is now trying
16   to slam that meaning down my throat -- that is not what I
17   intended.
18           THE COURT:  Your intention, just so I am clear, was
19   that you -- this is an expert that will not rebut but do what?
20           MS. FRIEDEMANN:  The expert is going to be offering
21   affirmative opinions.  The plaintiffs have the burden of proof
22   here.  And they're seeking to cancel trademark registrations.
23       Our experts are going to explain why the grounds upon
24   which plaintiffs are seeking cancellation do not apply and they
25   haven't met their burden of proof.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1        We are, I think, entitled to do that because they have had
 2   notice of these experts for well more than 90 days, 90 days
 3   that are provided in the federal rules, and have had the
 4   opportunity to conduct their depositions.
 5        We ought to be able to present them even if they choose
 6   not to present their own expert.
 7            THE COURT:  Okay.
 8            MS. FRIEDEMANN:  Then let me address the fact
 9   witnesses.  On this, as the Court knows, Belleair's prior
10   counsel filed a witness list, then withdrew it.
11        In the final pretrial order, however, Judge Collins seems
12   to treat the witness list as operative.  The order actually
13   refers to that list.  And then furthermore -- and I think this
14   ought to be dispositive of this -- on page 27, starting at
15   line 18 of that final pretrial order, Judge Collins actually
16   indicates -- well, it's in the order -- that Belleair will rely
17   on testimony from Mr. Erickson and Mr. Kleven.
18        I'll quote it.  It's talking about the defenses will
19   offer.  Says --
20            (Reading:)  In brief, the key evidence Belleair
21            relies upon for each affirmative defense,
22            waiver, estoppel, and laches, to the Complaint
23            of Plaintiffs Kleven and Rin, Inc., are, colon,
24            testimony of Dwight Erickson for Belleair
25            showing Belleair's good faith purchase of the
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1               marks, its use of the marks in commerce, and

2               testimony of Plaintiff Kleven and Plaintiff

3               Shamrock in intervention principal, Tierny.

4        So it says in the final pretrial order that we are going

5   to be offering testimony from these two people.

6               THE COURT:  Assuming what you are saying is accurate

7   for this -- well, how would that logistically work in light of

8   the agreement that there is going to be no live, direct

9   testimony?  This is something that you all agreed to.

10       You are going to say not you; you didn't agree it to.  I

11  get that.  But I don't know if you can rely on that over and

12  over again.  There was an agreement.  And when you stepped into

13  this trial, you knew that there were certain agreements to have

14  no live, direct testimony.

15       In fact, when I raised this, I think the room gasped when

16  I said I wanted to have live testimony because there was some

17  reluctance to that.  I think the opinions might have changed

18  thereafter.  So how would you logistically do that?  Let's

19  assume that I agreed with you and said, "Okay.  Mr. Kleven can

20  testify"?

21              MS. FRIEDEMANN:  Sure.  Well, as the Court knows, he

22  is an opponent.  We can't get a Declaration from Mr. Kleven.

23              THE COURT:  Right.

24              MS. FRIEDEMANN:  However, the procedure that the Court

25  implemented requires witnesses to be present to be

1    cross-examined.  He would be an adverse witness.  So we would

2    simply call him and cross him as an adverse witness.

3         And I think that that's absolutely consistent with what is

4    happening with the other witnesses who will also be present and

5    cross-examined live.

6              THE COURT:  One thing that I am just still unclear

7    with -- I'd like your assistance.  You rely heavily -- or you

8    state on numerous occasions either orally or in writing that

9    there was a witness list and that, for reasons unknown to you,

10   that witness list was withdrawn.

11        Are you saying that you have no idea -- how do we not know

12   that this was a strategic decision?  The reason I am asking is

13   how can this Court make a determination of whether there was

14   good cause or not if I don't know -- I have no idea what

15   happened as to the withdrawal of the witness list?

16             MS. FRIEDEMANN:  Sure.  I actually did ask former

17   counsel about this, why that witness list was withdrawn.

18        The explanation I got was that because the parties were

19   doing a joint exhibit list that our exhibit list was withdrawn

20   and then that he had understood that, because the witnesses

21   were already on the plaintiffs' witness list, that the witness

22   list was also withdrawn.

23             THE COURT:  Why not submit a Declaration to that

24   effect from prior counsel?  This is literally the first time I

25   am hearing this.  And it would strike me that that might be

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   relevant to this decision and that you would want to put forth
 2   some evidence to help the Court make this determination as to
 3   whether there is indeed good cause.
 4            MS. FRIEDEMANN:  Well, we didn't do that, Your Honor.
 5   We didn't present that Declaration.  And I will be very candid
 6   with the Court.  It's in part because I heard other
 7   explanations as well.  So I frankly don't know which one is the
 8   right one.
 9            THE COURT:  I appreciate your candor.
10            MS. FRIEDEMANN:  I'm not going to submit a Declaration
11   that I don't know if it's true.
12            THE COURT:  I appreciate your candor.
13        Anything else?
14            MS. FRIEDEMANN:  I think that you have heard me on
15   these issues.  I suspect I will want to respond on the experts.
16   That is an issue is that critically important to us.
17        As the Court knows, what we're dealing with here is do we
18   get to present any experts at this trial?  The Court has
19   already rejected our request to add some exhibits; so I don't
20   have that evidence.
21        I need some evidence, Your Honor, and I think it's, in a
22   fair trial, absolutely we should be able to call some
23   witnesses, especially witnesses that they've known about for as
24   long as they have.
25            THE COURT:  All right.  Thank you, Miss Friedemann.
```

```
 1        Mr. Gernsbacher, if I can hear from you.  What say you to
 2   the notion that -- aren't we just talking about semantics as it
 3   relates to the expert?  You have known about them.  Perhaps
 4   either the court reporter is mistaken -- although I highly
 5   doubt that -- or Miss Friedemann was not -- she simply didn't
 6   mean what was stated when she said "rebuttal"; it was simply
 7   just to address the claims that were coming forth by plaintiff.
 8        MR. GERNSBACHER:  First off, Your Honor, I have been
 9   here throughout the whole case.  I was there when Belleair's
10   former counsel did what he did and didn't do what he did.  And
11   I can entrust -- I can provide the Court -- although I think we
12   have -- but I will make sure I do now provide the Court with
13   information that counsel for Belleair -- new counsel can't
14   provide -- cannot provide, cannot competently provide.
15        But first let me point out why we're here is because from
16   day -- from almost the beginning -- it's not just Belleair's
17   former counsel.  We are here because documents were not filed
18   timely, orders were disregarded, court rules were just
19   forgotten about.
20        We are here simply because there have been -- there has
21   been a history of defendant in this case not doing what it was
22   supposed to do when it was supposed to do it or doing something
23   else that it was not supposed to do.  That's why we're here.
24        And there has been no showing, Your Honor, nowhere in the
25   papers of any of the grounds for why Belleair should be
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   relieved of any of this.

2       It was his doing -- and certainly just for -- let's talk

3   about the witness list, Your Honor.  They've known about the

4   absence of the witness list since, I think, seven days after

5   they became -- they were in the case.

6       And as this Court noted in its last ruling on very much

7   the same issues, Erickson -- Mr. Erickson, Belleair's

8   principal, had been communicating with counsel and was well

9   aware of what was going on.

10      THE COURT:  What do you say with respect to the

11  citation that Miss Friedemann -- to Judge Collins's order on

12  page 27 which at least suggests that there would be testimony

13  by these individuals?

14      MR. GERNSBACHER:  That was -- if the Court -- I can

15  tell -- fill in that one because the filings by both sides

16  which was incorporated in that was -- that particular provision

17  or that part of the Court's -- that order, was based upon

18  things that Mr. -- Belleair's former counsel had indicated.

19  That was it.

20      And we were still left with it.  And this issue came up.

21  This issue came up repeatedly from the time -- it first came up

22  somewhat implicitly in our conference with Mr. Ginsburg,

23  Belleair's former counsel, when he took the position -- we

24  strongly believe that it was a strategic decision when he took

25  the position that Belleair didn't have to do anything, that it

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   could just sit back because he did not think that plaintiff
 2   could meet its burden.
 3        There was no discussion of that withdrawal of the witness
 4   list as has been indicated by plaintiffs -- on -- Belleair's
 5   current counsel.  There was no discussion about not -- filing a
 6   joint witness list.
 7        We had filed -- yet another mistake.  We already filed our
 8   witness list, Your Honor.  We filed it when it was supposed to
 9   be filed.  We didn't get a witness list from Belleair until
10   almost two weeks later.  And it was withdrawn a few days after
11   that.
12        THE COURT:  But, sir, what's the prejudice to you if
13   the Court allows these two witnesses that, presumably, you have
14   known about them; you know what they have to say.  I am sure
15   you will demonstrate your exceptional cross-examination skills
16   and have your day with them.
17        MR. GERNSBACHER:  First off, Your Honor, it's not
18   accurate that we've known what they were going to say.
19        The first time we were provided with any information about
20   Mr. Erickson testifying on behalf of Belleair was in discovery
21   responses to -- submitted two weeks before the discovery
22   cutoff.
23        THE COURT:  Don't we have a ten-page Declaration from
24   Mr. Erickson?  Am I wrong?  So you have that.
25        MR. GERNSBACHER:  Right, Your Honor.  And I think to
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    ameliorate that, your Honor, we should be -- at least be

2    allowed to take Mr. Erickson's deposition especially under

3    these circumstances.

4         Remember, we've not done anything that has caused all this

5    to happen.  We didn't file documents late.  We did not withdraw

6    documents.  We have not tried to have this Court reconsider

7    orders that were clear on its face.

8         Certainly under these circumstances and given the late

9    notice of Mr. Erickson and the failure to disclose him in their

10   Rule 26 disclosures or supplement those disclosures, certainly

11   we should be entitled to depose Mr. Erickson.

12        THE COURT:  What about the experts?  What's the harm

13   and prejudice to you?  Those you have known about for a little

14   bit of time.

15        MR. GERNSBACHER:  Right.  Well, I guess I go back to

16   the issues -- then why do we have these rules?  Why are there

17   any of these rules and procedure?  Why don't we just have a

18   situation where people just designate things when they want

19   to --

20        THE COURT:  The rationale from Belleair's counsel is

21   that, "Look.  These were hybrid experts and that they were

22   going to be used in our case in chief, and we need to present

23   something.  We're entitled to present a defense because we

24   think we have one."

25        MR. GERNSBACHER:  First off, let's look at the context

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   of all this.  One, we're talking about a one-day trial, a
 2   five-hour trial where the parties are limited in time.  Two,
 3   we're talking about -- and while I don't want to address it
 4   substantively, in some respects I need to.  The opinions of
 5   both sides -- we're not talking about a jury trial.  We're not
 6   talking about intricate fact situations or standard of care,
 7   how a machine works or doesn't.
 8        What the experts say in the Declarations -- and we would
 9   have been objected to it anyway -- would be they're simply
10   applying what they perceive to be the facts to the law.  That's
11   exactly what the Court's province is, Your Honor.  These are
12   simply lawyers.
13        Indeed, if you were to look at this expert Declarations --
14   you put some citations in there -- they're simply briefs.
15        We wanted to streamline this process, Your Honor, given
16   that the Court has the ability and should and will ultimately
17   be the one to ensure from its view the applicable facts are
18   covered by the applicable law and to figure out how that ends
19   up -- we were giving the Court the opportunity to do that.
20   Make no mistake about it.  This hybrid thing, this thing about
21   experts coming -- being both direct and rebuttal -- this is the
22   first time I have ever heard that.  It's certainly not in the
23   papers.  That was never done.
24        Let me explain to you very briefly the history of the
25   experts.  What happened was that early on before Belleair's new
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1    counsel was involved, Belleair's former counsel, Mr. Ginsburg,

 2    purported to designate a witness, had nothing to do with -- not

 3    the persons that the new attorneys have designated.  And the

 4    designation was not only defective.  It didn't contain the

 5    report or a statement or Declaration.  But it also was not

 6    served on Shamrock.

 7        The arrangement that -- and she wasn't there, but I was.

 8    The arrangement that was discussed with Mr. Ginsburg about

 9    naming the expert later had simply to do with Shamrock naming

10    its expert because it was late served and giving Mr. Ginsburg

11    the opportunity to cure his expert.

12        That's why, even in the communications that Belleair's

13    counsel now talks about, they're -- it's talking about

14    plaintiffs' counsel, us, referring to when we're going to

15    choose one of two.

16        There is no question about what they are choosing.  We

17    knew that.  They just had to make -- Mr. Ginsburg had to clean

18    it up and do a real designation, a proper designation.  That

19    never happened.

20        Then months after these initial experts were supposed to

21    be designated, we get a designation by Belleair of two new

22    expert witnesses who come in and file reports -- submit reports

23    based on documents and issues that were not even part of this

24    case and still are not, Your Honor.

25        All they've done is gone through and cut out the reference

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    to exhibits that this Court long ago said they could not use.

2    But otherwise their opinions are the same.  They're making

3    references to purported factual circumstances to this thing,

4    and they're doing exactly what I have said they're doing.

5    They're simply applying the facts to the law.

6        But what happened, Your Honor, is they do these things.

7    And at the initial discussion with Belleair's counsel, with

8    Miss Friedemann, she indicated these were rebuttal witnesses.

9        And during that same conversation, Your Honor -- because I

10   never thought this would come up.  I thought there was no

11   question about it -- during that same conversation,

12   Miss Friedemann explained that they were rebuttal because they

13   were designated in the -- within the timing, which is reflected

14   in Belleair's moving papers about how they were designated

15   after plaintiff had designated its witness within that time

16   period which allows for rebuttal.

17       But just to make sure, I sent an e-mail to

18   Miss Friedemann -- that's also an exhibit in our opposition --

19   "You said this.  Please let us know if that's not correct."

20   She did not.

21       And then at the hearing, Your Honor, she again says

22   they're rebuttal witness -- expert witnesses.  Your Honor, I

23   have been practicing law for quite a bit, probably longer than

24   Miss Friedemann.  I'm an old guy.  But I know what rebuttal is,

25   and we all do.  It's a term of art that we've all used.  And it

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    has a very specific meaning.

2         To say that it's fuzzy, to say that it's touchy-feely

3    simply doesn't work.  Plaintiff specifically requested that

4    they do that, that the defendant provide -- let us know if

5    these two witnesses are not going to be rebuttal.  It says so

6    in the e-mail.  No response, none.  And, in fact, that e-mail

7    exchange is not disputed in Belleair's reply.

8              THE COURT:  All right.  Thank you, Mr. Gernsbacher.

9         Miss Friedemann, I will let you have the last word for a

10   few minutes if you have anything you wish to address.

11             MS. FRIEDEMANN:  Just on this issue about whether

12   they're rebuttal experts or not, I actually don't think it

13   matters because I think we ought to be able to present these

14   experts regardless of the characterization.

15        I dispute the -- Mr. Gernsbacher's characterization of

16   our -- the call that he mentions.  I remember that.  I remember

17   thinking -- all right.  He's trying to call these "rebuttal"

18   experts -- and I'm not.  I made sure that we made the

19   distinction about the hybrid.

20        But regardless -- so if they're affirmative experts, they

21   should come in.  There are more than 90 days before opportunity

22   to depose them.  If they're rebuttal experts, they were

23   disclosed also in a timely way, within 30 days of their expert.

24   And I still haven't heard any authority that says we can't also

25   call that expert even though they decided not to call theirs.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1              THE COURT:  But assuming -- on that scenario, what

 2    would you call that expert -- to rebut what?

 3              MS. FRIEDEMANN:  Well, the opinions simply become

 4    affirmative opinions.

 5              THE COURT:  But you can't do that in a jury trial.

 6    When you call rebuttal witnesses, they have to rebut something.

 7    You just can't bring them forth to bring forth evidence that

 8    you thought you should have brought in the -- during the

 9    regular portion of the trial.

10              MS. FRIEDEMANN:  Sure.  But the whole purpose for

11    these -- sort of the Rule 26 disclosures is discovery.  It's

12    not about kind of -- we're not at the trial stage yet.  It's

13    simply making sure that they have notice of what these experts

14    are going to say.

15         So I think it's very important for the Court to look at

16    the red lines that we've provided for these experts so that you

17    can see -- okay.  When they were first disclosed, they were

18    this hybrid.  They were certain affirmative opinions and in

19    part then responding to their expert.

20         Now, without changing the substance of those opinions at

21    all, we simply took out the references to their expert.

22    They're the same opinions.  They're very relevant to the case.

23    And there is no prejudice at all in letting us proceed with

24    them.  If they had concerns about these experts, they could

25    have deposed them.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1          THE COURT:  How relevant is prejudice in this
 2    determination?  Isn't the standard good cause?  I'm not sure --
 3    we've talked about prejudice.  You've highlighted it.  But
 4    isn't the standard good cause?  And to the extent that you --
 5    I'd be curious as to your thoughts about what is the
 6    relationship between those two:  Prejudice and good cause?  I'm
 7    not sure I see it, but I may be missing something.
 8          MS. FRIEDEMANN:  I'm not sure that the standard is
 9    good cause.  The way I read the federal rules, if this expert
10    was disclosed 90 days before the trial, which they were, they
11    should be in.
12          And then what we're talking about is just were they listed
13    on the witness list or not?  And that, I mean, really is a
14    technicality in light of the fact that the question is -- the
15    witness list is there so that there is disclosure of the
16    intention to rely upon the expert.  They have that.
17          And so whether the standard is good cause to file the
18    witness list or whether it's prejudice, I'm not sure it matters
19    because I think we meet them both because the disclosure was
20    clearly made of our intention to rely upon this testimony; and
21    our opponents had the opportunity and still do to prepare to
22    cross-examine them at trial.  They've got their testimony
23    already since it's all written out.
24          THE COURT:  Couple more questions, if I may.
25          Getting back to the Kleven testimony -- you did not depose
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1   him.  Your proposal is to call him as an adverse witness.  Do

2   you even have a proffer of what you think the testimony is

3   going to be?  I mean -- again, I am just trying to get my head

4   around the logistics of this.  You are asking to call someone

5   we've not deposed, just put him on the stand and see what

6   happens?

7        MS. FRIEDEMANN:  Well, I don't want to reveal all of

8   my secrets if the Court is going to allow us to call

9   Mr. Kleven.  But one of the main subjects of this testimony

10  will be the 2006 Settlement Agreement between Mr. Kleven and

11  Ms. Hereford and Mr. Leonard.

12       That is central to all of our defenses of waiver,

13  estoppel, and laches because in that agreement Mr. Kleven

14  acknowledged Ms. Hereford's right in the marks that are at

15  issue.

16       So it's a very important document.  It is among the

17  exhibits that will all be -- according to my understanding of

18  the procedure, will all be offered and admitted at trial, and

19  so we do want to question him about that particular document.

20       THE COURT:  Okay.  Another question -- I don't think

21  we've flushed this out -- I just want to confirm -- plaintiffs

22  have indicated that they would agree to Erickson's testimony if

23  you make him available for deposition.  And I am assuming your

24  answer to that is, no, you do not want to make him available?

25       MS. FRIEDEMANN:  No.  In part -- correct.  My answer

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

 1  is no.  We're trying this case in two weeks, and that would be

 2  a tremendous distraction.

 3          THE COURT:  So you would rather -- if faced with the

 4  choice of not calling him or calling him as allowed to --

 5  contingent upon plaintiffs being allowed to depose him, where

 6  would you stand?

 7          MS. FRIEDEMANN:  I would have to talk to my client.

 8  The client would get to make that decision about whether

 9  Mr. Erickson would be deposed so he could testify or that we

10  simply wouldn't call him.

11          THE COURT:  Okay.

12          MR. HALLAM:  Your Honor, may I be heard very briefly

13  on behalf of my client?

14          THE COURT:  Yes.

15          MR. HALLAM:  I would just point out a couple things,

16  Your Honor.  First of all, with respect to Your Honor's --

17  might have called it a "tentative" with respect to the

18  opportunity of the parties to file amended proposed findings of

19  fact and conclusions of law at the conclusion of the case,

20  while we don't object to that as a compromise procedure, I

21  would like to point out that the defendants are attempting to

22  use new proposed findings of fact and conclusions of law to

23  interject new issues and new claims into this case, which they

24  have been precluded from doing by this Court's prior rulings

25  and Judge Collins's prior rulings.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

1    And I would just ask that, if Your Honor does issue a
2  decision or an opinion with respect to those proposed findings
3  of fact and conclusions of law, that Your Honor makes clear
4  that they are not to be used to interject new claims or new
5  issues that are not currently in the pretrial conference order
6  and the existing papers before the Court.

7    Secondly, with respect to the testimony of Mr. Erickson,
8  Your Honor asked, "Haven't we seen his Declaration which we
9  were given one week ago?" Yes, we have, Your Honor.

10    But Mr. Erickson's Declaration raises more questions for
11  us than it answers.  It raises new issues.  It raises new
12  documents that we have not been privy to, have not been
13  disclosed; and it is essential, therefore, that, if
14  Mr. Erickson is allowed to testify, that we be allowed to take
15  his deposition and be allowed to do it certainly within the
16  next week.

17    We are two weeks from trial, Your Honor, and those would
18  be my comments.

19         THE COURT:  Thank you.  I think I have heard from you
20  all.  I will be issuing a tentative within the next day or so,
21  and we will move forward with the trial set in two weeks; so I
22  will see you in a couple weeks.

23         MS. FRIEDEMANN:  May I ask a question about the trial?
24         THE COURT:  Yes.
25         MS. FRIEDEMANN:  Will you take opening statements?

1    THE COURT:  I will let you know on the morning of.  I

2  mean, based on the -- what's the right word?  Counsel had a lot

3  to say in this matter.  I will likely take opening statements,

4  but I will probably limit -- put a time limit on it because I

5  want to get to the heart of the matter.

6    MS. FRIEDEMANN:  Thank you.

7    THE COURT:  Thank you.

8    MR. HALLAM:  Thank you, Your Honor.

9    (Proceedings concluded at 11:48 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

--oOo--

CERTIFICATE


     I hereby certify that pursuant to Section 753,

Title 28, United States Code, the foregoing is a true and

correct transcript of the stenographically reported proceedings

held in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the

Judicial Conference of the United States.


Date:  November 21, 2014




          _/S/ CHIA MEI JUI _____

          Chia Mei Jui, CSR No. 3287












UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA