David L. Gernsbacher   Cal. Bar No. 89596
E-Mail: dgernsbacher@dlglaw.com
LAW OFFICES OF DAVID L. GERNSBACHER
9107 Wilshire Blvd Ste 450
Beverly Hills CA 90210-5535
Tel:  (310) 550-0125
Fax: (310) 550-0608

Attorney for Plaintiffs and Counter-Defendants
MAX KLEVEN and RIN, INC.

Kirk M. Hallam   CA Bar No. 108975
E-Mail: kmhallam@aol.com
LAW OFFICES OF KIRK M. HALLAM
201 Santa Monica Blvd Ste 300
Santa Monica CA 90401-2224
Tel:  310-393-4006
Fax:  310-564-7623

Attorney for Intervenor
SHAMROCK ENTERTAINMENT, LTD.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| MAX KLEVEN, an individual; RIN, INC., a California corporation,<br><br>            Plaintiffs,<br><br>      vs.<br><br>DAPHNE HEREFORD, an individual; RIN TIN TIN, INC., a Texas Corporation; BELLEAIR TRADING INTERNATIONAL, LLC, a Florida limited liability company DOES 1 through 20, inclusive<br><br>            Defendants.<br><br>AND COUNTERCLAIMS AND CLAIMS IN INTERVENTION | Case No. CV13-02783 AB (AGRx)<br><br>NOTICE OF ERRATA RE TRIAL DECLARATION OF DAVID L. GERNSBACHER<br><br>Trial:<br>    Date: December 2, 2014<br>    Time: 8:30 a.m.<br><br>Courtroom of the Honorable<br>André Birotte Jr.<br>United States District Judge |

NOTICE IS HEREBY GIVEN as follows:

1. On November 10, 2014, Plaintiffs filed in this action the Trial Declaration of David L. Gernsbacher (Court Doc. 150-8) in lieu of reading in open court certain discovery requests and responses as part of Plaintiffs' case in chief.

2. Said Declaration unintentionally omitted the "Definitions" section of the discovery referenced therein set forth in said discovery.

3. This Notice corrects the omission, as follows:

    a. Attached hereto as Exhibit 1 and incorporated herein by this reference is a true and correct copy of the "Definitions" set forth in Plaintiffs' First Set of Requests for Admissions propounded upon Defendant Belleair Trading International, LLC ("Belleair") (referenced in paragraph 4 of my Trial Declaration).

    b. Attached hereto as Exhibit 2 and incorporated herein by this reference is a true and correct copy of the "Definitions" set forth in Shamrock's First Set of Interrogatories propounded upon Defendants (referenced in paragraph 5 of my Trial Declaration).

    c. Attached hereto as Exhibit 3 and incorporated herein by this reference is a true and correct copy of the "Definitions" set forth in Shamrock's First Request for Production propounded upon Defendants (referenced in paragraph 6 of my Trial Declaration).

Dated: December 1, 2014

          /s/ David L. Gernsbacher
David L. Gernsbacher, Esq.
LAW OFFICES OF DAVID L. GERNSBACHER
Attorney for Plaintiffs and Counter/Defendants
MAX KLEVEN and RIN, INC.

# EXHIBIT 1

("Responding Party"), in accordance with the definitions and instructions set forth below, admit the truth of the matters set forth in these Requests for Admissions (the "Requests").

## DEFINITIONS

1. As used herein, the term "PLAINTIFFS" means Plaintiffs Max Kleven and Rin, Inc. and any of their officers, directors, employees, agents and representatives and all persons acting or purporting to act on their behalf.

2. As used herein, the term "HEREFORD" means Defendant Daphne Hereford and any other persons or entities acting on her behalf, including but not limited to her predecessors, affiliates, brokers, intermediaries, attorneys, accountants, consultants, advisors, trustees, agents, officers, directors, and employees.

3. As used herein, the term "RTT INC." means Defendant Rin Tin Tin Incorporated aka Rin Tin Tin, Inc. and any other persons or entities acting on its behalf, including but not limited to its predecessors, affiliates, brokers, intermediaries, attorneys, accountants, consultants, advisors, trustees, agents, officers, directors, and employees.

4. As used herein, the term "DOCUMENT(S)" is used in the broadest possible sense permitted under the Federal Rules of Civil Procedure and means, the original and, where the original is not within Responding Party's control or custody, the duplicate of any written, printed, typed, drawn, recorded, graphic or photographic matter of any kind or nature, however produced or reproduced, whether sent or received or neither, data, papers, and books, transcriptions, pictures, drawings or diagrams of every nature, whether transcribed by hand or by some mechanical, electronic, photographic or other means, as well as sound reproductions of oral statements, including all drafts and copies bearing notations, marks or matter not found on the original and/or duplicate including, but not limited to, all writings, contracts, agreements, insurance policies, policy jackets and endorsements, treaties, representations, warranties, certificates, opinions, letters or other forms of correspondence or communications, including but not limited to, envelopes, notes, telegrams, cables, telex and fax messages, reports, notes, notations and memoranda of/or related to telephone conversations or conferences, reports, notes, transcripts, studies, analyses, evaluations, test

results, books, records, journals, ledgers, invoices, statements, accounts, lists, comparisons, questionnaires, surveys, summaries, desk calendars, appointment books, diaries, articles, press releases, magazines, newspapers, booklets, pamphlets, circulars, bulletins, notices, instructions, specifications, manuals, agendas, minutes, and transcriptions of all meetings, outlines, notes, transcripts and all transcriptions of all speeches, photographs, microfilms, tapes or other recordings, punch cards, magnetic tapes, discs, drums, print-outs and other data compilations from which information can be obtained (translated if necessary through detection or decoding devices into useable form) and ELECTRONICALLY STORED INFORMATION (as defined in paragraph 6, below).

5. "ELECTRONICALLY STORED INFORMATION" means any Information on operational systems including accounting, financial, distribution, or manufacturing systems; E-mail; Instant Messages (IM); Web pages; text messages; cell phone data; Excel spreadsheets and underlying formulae; metadata; computer databases (i.e., Access); erased, fragmented or damaged data; Blackberry data; and anything stored on computer or other electronic means located on or in, but not limited to cache memory; optical disks; magnetic tapes/back-up tapes; magnetic disks (hard drive, floppy disks, etc.); PDAs, Blackberries and Palm Pilots; cell phones; IM tools; or USB drives.

6. As used herein, the term "RTT TRADEMARKS" means any and all of that certain United States Trademark Registration No.: 1763135 for the stylized mark RIN TIN TIN for: *Live German shepherd puppies* in International Class 031; that certain Unites States Trademark Registration No.: 2384745 for the mark RIN TIN TIN CANINE AMBASSADOR CLUB for: *promotion of responsible dog ownership through programs presented to schools and groups* in International Class 041; that certain Unites States Trademark Registration No.: 2538312 for the mark RIN TIN TIN for: *Mail order fan club service providing materials promoting the breeding, training, raising and showing of the authentic RIN TIN TIN German Shepherd dog lineage* in International Class 041; that certain Unites States Trademark Registration No.: 2969852 for the mark RIN TIN TIN for: *Printed publications, namely, magazines, pamphlets, books and comic books about German Shepherd dogs; activity and*

*coloring books, posters, stickers, business cards, and cards in the nature of greeting cards and trading cards in international class 016; Playing cards in international class 028; and Entertainment services in the nature of an ongoing TV series in the field of variety and motion pictures featuring a German Shepherd dog as a live or animated character* in International Class 041; that certain Unites States Trademark Registration No.: 3111161 for the mark RIN TIN TIN for: *Printed publications, namely, children's books* In International Class 016; that certain United States Trademark Registration No.: 3215700 for the mark RIN TIN TIN in International Class 018 for *Dog clothing; Dog collars; Dog leashes, Dog shoes; Handbags; Purses; Tote bags*; and International Class 021 for *Bowls, Brushes for pets; Cups; Mugs; Pet brushes; Pet feeding dishes*; and International Class 025 for *Caps; Hats; Jackets; Muffs; Scarves; Slippers; Sweat shirts; T-shirts*; and International Class 028 for *Board games; Dog toys; Plush toys; Puzzles; Soft sculpture plush toys*; that certain United States Trademark Registration No.: 3380788 for the mark RIN TIN TIN for: *dog food* in International Class 031; that certain Unites States Trademark Registration No.: 3582436 for the mark RIN TIN TIN for: *Live German Shepherd dogs of Rin Tin Tin lineage* in International Class 031; and *Animal exhibitions and live animal performances featuring a German Shepherd dog* in International Class 041; that certain Unites States Trademark Registration No.: 3789458 for the mark RINTY for: *Animal Exhibitions and Live Animal Performances Featuring a German Shepherd Dog* in International Class 041; that certain United States Trademark Registration No.: 4263551 for the mark RIN TIN TIN for: *Entertainment services in the field of motion pictures featuring a German Shepherd dog* in International Class 041.

7. As used herein, the term "RIN TIN TIN MOVIE(S)" means one or more motion pictures in which there is a German shepherd dog character named Rin Tin Tin or Rinty.

8. As used herein, the term "RIN TIN TIN TV SHOW(S)" means one or more television show episodes in which there is a German shepherd dog character named Rin Tin Tin or Rinty.

9. As used herein, the term "RIN TIN TIN RADIO SHOWS" means on or more radio show episodes in which there is a German shepherd dog character named Rin Tin Tin or Rinty.

10. As used herein, the term "ORIGINAL RIN TIN TIN" means the German shepherd dog found by Lee Duncan on a World War I battlefield in Flirey, France that Lee Duncan named "Rin Tin Tin."

11. As used herein, the term "TRADEMARKS ASSIGNMENT" means the purported assignment, transfer, sale, conveyance, tender, delivery, acceptance and/or receipt of any purported interest (legal, equitable or otherwise) in and/or to all or any portion of TRADEMARK REGISTRATION NO.: 3215700 and TRADEMARK REGISTRATION NO.: 3380788 (as those terms are defined in paragraphs 12 and 13, respectively, above) to BELLEAIR (as that term is defined in paragraph 4, above).

12.

13. As used herein, the term "COMPLAINT" means the Complaint in this action filed on April 19, 2013.

14. As used herein, the terms "COMMUNICATION" or "COMMUNICATIONS" mean any oral or written communication of any kind, including, by way of example but not by way of limitation, face-to-face conversation, telephone conversation, Skype or other electronic or web-based communication format, emails, faxes, text messages, letters, meetings, memoranda, or transmittals of documents. Said terms also includes the review, by any person, of documents within the possession, custody or control of another person.

15. As used herein, the terms "RELATE TO" or "RELATING TO" any given subject as used herein mean, in any way, directly or indirectly, in whole or in part, analyzing, attending, canceling, concerning, confirming, considering, constituting, containing, describing, discussing, embodying, endorsing, evidencing, explaining, identifying, memorializing, mentioning, modifying, negating, pertaining to, qualifying, reflecting, representing, revoking, stating, summarizing, supporting, terminating, underlying, or referring to the given subject.

16. As used herein, the term "PERSON(S)" shall mean and include without limitation,

individuals, corporations, firms, divisions, associations, agencies, partnerships, or other entities.

## INSTRUCTIONS

1. Each matter is admitted unless, within 30 days after service of these Requests, Responding Party serves a written answer or objection addressed to the matter, signed by Responding Party or its attorney.

2. If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why Responding Party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that Responding Party qualify an answer or deny only a part of the matter of which an admission is requested, it shall specify so much of it as is true and qualify or deny the remainder.

3. Responding Party may not give lack of information or knowledge as a reason for failure to admit or deny unless it states that it has made reasonable inquiry and that information known or readily obtainable by it is insufficient to enable it to admit or deny.

4. If Responding Party does not admit an item, it shall:

   a. produce to Plaintiffs all DOCUMENTS concerning the requested admission in its possession, custody or control;

   b. state, with particularity, the factual basis upon which its response is based; and

   c. identify each and every person with knowledge of the requested admission.

5. In complying with Instruction No. 4. a., above, Responding Party shall:

   a. furnish all DOCUMENTS or things in Responding Party's possession, custody or control, known or available to Responding Party, regardless of whether such DOCUMENTS or things are possessed directly by Responding Party or Responding Party's agents, employees, representatives, investigators, or by Responding Party's attorneys or their agents, employees, representatives or investigators;

   b. produce to the extent possible any DOCUMENT or thing that cannot be produced in full, indicating what DOCUMENT or portion of such DOCUMENT or thing is being withheld and the reason such DOCUMENTS are being withheld;

Exhibit 1

# EXHIBIT 2

Intervenor Shamrock Entertainment, Ltd., propounds the following Interrogatories to plaintiffs Max Kleven and Rin, Inc., and defendants Daphne Hereford, Rin Tin Tin, Inc., and Belleair Trading International, LLC, to be answered by each of them separately and under oath within the time allowed by Federal Rule of Civil Procedure 33.

## PRELIMINARY STATEMENT

The following preliminary statement and definitions apply to each of the Interrogatories hereinafter set forth and are deemed to be incorporated therein.

1. "Shamrock" means intervenor Shamrock Entertainment, LTD.

2. "Request for Admission" refers to the Requests contained in the Request for Admissions directed to you and served with these Interrogatories.

3. The following Interrogatories are continuing Interrogatories so as to require prompt supplemental answers pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, such supplemental answers to be provided promptly when required by the Federal Rules of Civil Procedure, this Court's Local Rules and/or Orders entered in this action.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately for each of the Requests for Admission that you did not unequivocally admit, please state all facts upon which you based your denial of the Request for Admission.

**INTERROGATORY NO. 2:**

If you contend that you have used the phrase "Rin Tin Tin" as a mark in commerce, please set forth all facts upon which you base that contention, including the dates and nature of each use.

**INTERROGATORY NO. 3:**

If you contend that you acquired rights to use the phrase "Rin Tin Tin" as a mark in commerce, please set forth all facts upon which you base that contention.

Exhibit 2

# EXHIBIT 3

|   |   |
|---|---|
| 1 | Pursuant to Federal Rule of Civil Procedure 34, intervenor Shamrock |
| 2 | Entertainment, Ltd., requests that plaintiffs Max Kleven and Rin, Inc., and |
| 3 | defendants Daphne Hereford, Rin Tin Tin, Inc., and Belleair Trading International, |
| 4 | LLC, each produce for inspection and copying at The Law Office of Peter J. |
| 5 | Anderson, A Professional Corporation, 100 Wilshire Boulevard, Suite 2010, Santa |
| 6 | Monica, California 90401, at 2:00 p.m. on February 3, 2014, the following |
| 7 | documents in the possession, custody or control of (or otherwise available to) to |
| 8 | him, her, it or them. |

### DEFINITIONS

1. "Shamrock" means intervenor Shamrock Entertainment, LTD.

2. "You" and "your" mean the party responding to this Request for Production.

3. "Plaintiffs" means plaintiffs Max Kleven and Rin, Inc.

4. "Defendants" means defendants Daphne Hereford, Rin Tin Tin, Inc., and Belleair Trading International, LLC.

5. The "*Leonard v. Hereford* Settlement" means the settlement put on the record on January 8, 1996, in the action filed in 1994 against defendants Daphne Hereford and Rin Tin Tin, Inc. for trademark infringement and other claims, in the United States District Court, Case No. CV 94-2281 CBM.

6. The "Rin Tin Tin Story Movie Rights" means the exclusive rights to produce and distribute motion pictures and television series based upon the life of Lee Duncan and the original dog named Rin Tin Tin and James W. English's 1949 copyrighted book titled The Rin Tin Tin Story, including merchandising rights in connection with those motion pictures and television series.

7. The "*Rin Tin Tin: K-9 Cop* Rights" means the rights to the television series titled *Rin Tin Tin: K-9 Cop* in the United States and *Katts and Dog* in Canada and elsewhere, including the right to authorize new televisions programs and motion pictures based upon the *Rin Tin Tin: K-9 Cop* television series and the

1  merchandising rights in connection with that series or those new programs and
2  motion pictures.
3      8.    "*The Adventures of Rin Tin Tin* Rights" means Leonard's share of
4  profits from the television series titled *The Adventures of Rin Tin Tin*.
5      9.    "Request for Admission" refers to the Requests contained in the
6  Request for Admissions directed to you and served with this Request for Production.
7      10.    "Interrogatory" refers to the Interrogatories contained in the
8  Interrogatories directed to you and served with this Request for Production.
9      11.    "Document" and "documents" include but are not limited to those items
10 that Rule 34(a) of the Federal Rules of Civil Procedure identifies as being within the
11 meaning of the word "documents," and "writings," "recordings" and "photographs,"
12 as those words are defined in Rule 1001 of the Federal Rules of Evidence, and
13 include, without limitation, e-mails, text messages, letters, notes (whether
14 handwritten or otherwise), memoranda, post-its, buck slips, receipts, contracts, letter
15 agreements, drafts and other writings by which letters, words or numbers, or their
16 equivalent, are set down by handwriting, typewriting, printing, photostating,
17 photographing, magnetic impulse, mechanical or electronic recording, or other form
18 of data compilation, still photographs, video tapes, and motion pictures, and all
19 means by which information can be stored by way of video or audio tape, microfilm,
20 microfiche, computers, hard disks, floppy disks, compact disks, and other similar
21 means.
22     12.    The terms "and," "or" and "and/or" shall be interpreted so as to be the
23 most inclusive.
24     13.    The singular number as used herein also means the plural, and the
25 masculine gender as used herein also means the feminine or neuter, and vice versa.
26     14.    You are required to produce the original of each of the following
27 documents; if the original of a document is not in your possession, custody or
28 control or otherwise available to you, then you are required to produce any exact

copy of the original which is in your possession, custody or control or otherwise available to you. <u>In addition to the foregoing</u>, you are <u>also</u> required to produce (a) every copy of each of the following documents which is not identical to the original (*e.g.*, a copy which bears handwritten or other notations, date stamps, received stamps, "bcc" notations, facsimile transfer notations or other marks not appearing on the original) and (b) every note, "post-it," facsimile transfer cover page and other document which accompanied or is or was affixed to any of the following documents.

15. If any document or documents within this Request for Production come into your possession, custody or control after your initial response to this Request for Production, you are required to promptly supplement your response and produce the document or documents pursuant to, without limitation, Federal Rule of Civil Procedure 26(e)(1).

## DOCUMENTS TO BE PRODUCED

**REQUEST NO. 1:**

Please produce all discovery requests issued by you or on your behalf in this action.

**REQUEST NO. 2:**

Please produce all discovery responses issued by you or on your behalf in this action.

**REQUEST NO. 3:**

Please produce all documents produced by you in this action, whether in response to discovery or as part of your initial or supplemental disclosures in this action.

**REQUEST NO. 4:**

Please produce all documents produced to you in this action by a non-party to this action pursuant to a subpoena or otherwise.

///

Exhibit 3

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California and my business address is 9107 Wilshire Boulevard, Suite 450, Beverly Hills, CA 90210. I am over the age of 18 and not a party to this action.

On November 10, 2014, I served the foregoing document described TRIAL DECLARATION OF DAVID L. GERNSBACHER, on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope at Santa Monica, California, addressed as follows:

Daphne Hereford
Individually and as President
Rin Tin Tin, Inc.
P.O. Box 27
Crockett, TX 75836
(with a copy by e-mail to Daphne@Hereford.com)

I caused such envelope with postage thereon fully prepaid to be placed in the United States mail. I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. Correspondence for mailing is deposited with the United States Postal Service on that same day in the ordinary course of business. The foregoing document was sealed and placed for collection and mailing on the foregoing date, following the firm's ordinary practices. I am aware that on motion of any party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in the affidavit.

Executed on November 10, 2014 at Los Angeles County, California. I declare under penalty of perjury that the above is true and correct.

   /s/ David L. Gernsbacher